IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF CONNECTICUT
HARTFORD DIVISION

| | |
|---|---|
| MICHELLE GOKTEPE,<br><br>Plaintiff,<br><br>v.<br><br>VICTOR LAWRENCE, d/b/a/ LEXINGTON LAW FIRM,<br><br>Defendant. | **DECLARATION OF RHIANNON LAWRENCE IN SUPPORT OF MOTION FOR PROTECTIVE ORDER**<br><br>Case No. 3:03CV0089<br><br>Honorable Judge Kravitz |

Rhiannon Lawrence, under penalty of perjury, deposes and says:

1. I am the attorney administrator for Lexington Law Firm.

2. I have personal knowledge of the matters set forth herein.

3. Lexington Law Firm provides various types of legal representation to clients, including litigation.

4. Lexington Law Firm specializes in consumer law, representing consumers with regard to fair credit reporting.

5. Over the course of many years, Lexington Law Firm has developed a system for representing clients who have items on their credit reports that are incorrect, incomplete, or unverifiable.

6. Lexington Law Firm has identified subroutines that paraprofessionals or computer programs can adequately perform under a lawyer's supervision.

7. In its business processes, Lexington Law Firm uses its own trade secrets, as well as trade secrets owned by others and licensed to Lexington Law Firm.

8.    Because of its use of trade secrets, Lexington Law Firm is able to provide personalized legal services to large numbers of clients.

9.    Because of its use of trade secrets and ability to serve relatively large volumes of clients, Lexington Law firm is able to provide personalized legal services to credit repair clients at an affordable rate.

10.    Because of its use of trade secrets, Lexington Law Firm is the leader in representing consumers who have been victims of aggressive and illegal credit reporting, both in terms of the number of consumers served and in terms of the number of false, misleading or unverifiable entries removed from credit files.

11.    Lexington Law Firm has extensive practices and procedures to prevent the disclosure of the trade secrets it employs.

12.    Lexington Law Firm holds the identities of its fair credit reporting clients to be privileged.

13.    Many statistics regarding Lexington Law Firm's business, including its volume and the location of its clients, are treated as confidential commercial information.

14.    Lexington Law Firm does not have an affiliate network nor does it manage an affiliate network.

15.    Counsel for Ms. Goktepe, Joanne S. Faulkner also specializes in consumer law, including fair credit reporting.

16.    Ms. Faulkner is a prominent member of the National Association of Consumer Advocates (NACA).

17.    Ms. Faulkner is listed in the 2002 NACA directory as experienced in the handling of fair

credit reporting matters, precisely the area in which Lexington Law Firm practices. Exhibit A.

18.   Ms. Faulkner is a Contributing Author of a book regarding fair credit reporting.  Exhibit B.

19.   Ms. Goktepe hired Lexington Law Firm to represent her regarding erroneous items in her credit file.

20.   Ms. Goktepe told Lexington Law Firm that certain information in her credit file maintained by TransUnion, one of the three major credit bureaus, was false.

21.   Lexington Law Firm sent one or more letters to TransUnion on Ms. Goktepe's behalf that notified TransUnion that the information was false.

22.   Soon after filing this lawsuit, Ms. Faulkner filed another lawsuit on behalf of Ms. Goktepe against TransUnion.

23.   In the lawsuit against TransUnion, Ms. Goktepe claims that TransUnion violated the Fair Credit Reporting Act by failing to remove the false information contained in Ms. Goktepe's credit file after TransUnion received notice that the information was false..

24.   Thus, Ms. Faulkner represents Ms. Goktepe in the same matter as she was represented by Lexington Law Firm.

25.   Ms. Faulkner competes with Lexington Law Firm for fair credit reporting clients.

26.   During approximately the last year, Ms. Faulkner has engaged in a campaign of unfair competition and interference with Lexington Law Firm's business relationships, including the filing of this law suit.

27.   About the same time that Ms. Faulkner filed this lawsuit, another prominent member of

3

NACA, Daniel Edelman, filed a similar and equally hypertechnical lawsuit in the Northern District of Illinois. Case No. 03 C 0987.

28. The pleadings in the two suits have been, at times, nearly identical, with both Ms. Faulkner and Mr. Edelman citing the same cases, citing to overruled cases, and making the same argument verbatim. Cf. Exhibit C at 4 and Exhibit D at 7, Exhibit C at 6-7 and Exhibit D at 11-12, Exhibit C at 15-16 and Exhibit D at 13-14.

29. During the course of this litigation, Ms. Faulkner has misquoted court rules, misquoted and mis-cited cases, cited cases that are not good law, refused to serve pleadings on Lexington Law Firm's primary counsel, forwarded an attorney planning meeting report to the Court to which she knew Lexington Law Firm had objections, and has otherwise proceeded with malice.

30. In early 2003, I joined NACA along with all the attorneys and some other employees of Lexington Law Firm.

31. We joined NACA to increase our skills as consumer advocates, to build relationships with other consumer advocates, and to obtain the prestige that accompanies membership. See, NACA Mission Statement, Key Issues, Accomplishments, Member Benefits, Exhibit A.

32. Not all members of NACA are lawyers or law firms, including myself.

33. Some members of NACA are credit repair organizations.

34. As part of achieving its objectives in joining NACA, Lexington Law Firm, its attorneys, and other employees wanted to be listed in the NACA directory along with other NACA members.

4

35.    Victor Lawrence and Spencer Bingham and I applied to join NACA in late 2002 or early 2003.

36.    In March, 2003, I approached NACA and offered to have Lexington Law Firm be a sponsor of the directory.

37.    I spoke with Phyllis Rhoderer, Administrative Director of NACA.

38.    I told Ms. Rhoderer that Lexington Law Firm was interested in contributing $5,000, the largest amount for which NACA solicited.

39.    In a later conversation in March, 2003, Ms. Rhoderer told me that two members of NACA had told NACA officers that they were apprehensive about Lexington Law Firm's sponsorship and even membership.

40.    Ms. Rhoderer told me that the directory had not been printed.

41.    In May, 2003, NACA printed its directory without Lexington Law Firm's sponsorship and without any of Lexington Law Firm's attorneys or employees being listed.  Exhibit A.

42.    NACA's failure to  accept the sponsorship would have been inexplicable but for the other evidence that Ms. Faulkner and Mr. Edelman had been engaged in a campaign against Lexington Law Firm.

43.    The National Consumer Law Center (NCLC), among other activities, holds conferences and conventions and is affiliated with NACA.

44.    I enrolled all of Lexington Law Firm's attorneys to attend NCLC's "12th Annual Consumer Rights Litigation Conference," to be held October 24-27, 2003 in Oakland, California.  I received confirmation that we had been accepted to the conference.

45.    I also purchased airline tickets, hotel accommodations and made ground travel

arrangements for Lexington Law Firm's attorneys and their spouses to attend the convention.

46.     Mr. Robert Hobbs, Deputy Director of NCLC and Director/Treasurer of NACA, called me on the telephone.

47.     Mr. Hobbs told me that Lexington's attorneys would not be allowed to attend the conference.

48.     Mr. Hobbs told me that Lexington's attorneys would not be allowed to attend because two members of NACA had complained that they didn't want Lexington's attorneys there.

49.     On September 22, 2003, I was present when Mr. Lawrence called Mr. Hobbs on a speaker phone to ascertain what was going on and to try to work out any problems.

50.     Mr. Hobbs told Mr. Lawrence that Lexington Law Firm would not be allowed to attend the conference.

51.     Mr. Hobbs claimed that Lexington Law Firm's attorneys would not be allowed to attend because of its "high" volume and because two NACA members had filed lawsuits against Lexington Law Firm. The only two members of NACA who have filed lawsuits against Lexington Law Firm are Ms. Faulkner and Mr. Edelman.

52.     Mr. Hobbs indicated that if Ms. Faulkner or Mr. Edelman were sued by a NACA member, they would not be excluded from the conference. He did not explain this double standard.

53.     Mr. Hobbs stated that it would be "disruptive" for Lexington Law Firm to attend the conference.

54.    Ms. Faulkner, Lexington Law Firm's direct competitor for fair credit reporting clients,

has participated with Mr. Edelman in a concerted campaign against Lexington Law Firm

to prevent its association with national consumer rights associations and has acted toward

Lexington Law Firm with malice merely because Lexington Law Firm  more efficiently

and mor effectively  represents clients than she can.

DATED this __4__ day of November, 2003.

Rhiannon Lawrence

Blake S. Atkin
Lonn Litchfield
ATKIN & HAWKINS, P.C.
Attorneys for Victor Lawrence
136 South Main Street, 6th Floor
Salt Lake City, UT 84101
Tel. (801) 533-0300
Fax (801) 533-0380

Richard H.G. Cunningham # CT15195
12 Kenilworth Drive East
Stamford, CT 06902
Tel. (203) 348-9958
Fax (203) 324-6039

7

## CERTIFICATE OF SERVICE

I hereby certify that true and correct copies of the foregoing DECLARATION OF

RHIANNON LAWRENCE IN SUPPORT OF MOTION FOR PROTECTIVE ORDER was

mailed first class, postage prepaid on this the 4th day of November, 2003 to the following:

Joanne S. Faulkner
123 Avon St.
New Haven, CT 06511-2422

8

# EXHIBIT "A"



# 2002
# MEMBERSHIP
# DIRECTORY

## THE NATIONAL ASSOCIATION OF CONSUMER ADVOCATES

1730 Rhode Island Ave. NW, Ste. 805
Washington, DC 20036
Ph. 202-452-1989    Fax 202-452-0099
www.naca.net



# NATIONAL ASSOCIATION OF CONSUMER ADVOCATES

# MISSION STATEMENT

NACA's mission is to promote justice for all consumers by maintaining a forum for communication, networking, and information sharing among consumer advocates across the country and by serving as a voice for its members and consumers in the ongoing struggle to curb unfair and abusive business practices that adversely affect consumers.

# TABLE OF CONTENTS

Mission Statement . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . IFC

NACA Donors . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

Alphabetical Listing of NACA Members . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5-42

Geographical Listing of NACA Members . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 43-46

NACA Rules of Engagement . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 47

NACA Members Areas of Interest . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 48-176

## NACA BOARD OF DIRECTORS
## 2002

### OFFICERS

*Chair*
Richard J. Rubin

*Co-Chair*
Stephen Gardner

*Secretary*
Cathy Lesser Mansfield

*Treasurer*
Robert Hobbs

### DIRECTORS

Nancy Barron

J. Paul Bland, Jr.

Robert Bramson

Bernard Brown

Michael Donovan

Aurora Dawn Harris

Kathleen E. Keest

## STAFF LISTING

**Ira Rheingold**
*Executive Director*
email: Ira@naca.net

**Phyllis J. Roderer**
*Administrative Director*
email: Phyllis@naca.net



## THE NATIONAL ASSOCIATION OF CONSUMER ADVOCATES

*1730 Rhode Island Ave. N.W., Ste. 805*
*Washington, DC 20036*
*Ph. 202-452-1989  •  Fax 202-452-0099*
*www.naca.net*

**The National Association of Consumer Advocates** is a non-profit organization designed to promote justice for all consumers by maintaining a forum for information sharing among consumer advocates across the country. Our mission is to serve as a voice for consumers in the ongoing struggle to curb unfair and abusive business practices, especially in the areas of finance and credit.

We believe that consumers, particularly those of modest means, are inadequately protected from unscrupulous business practices in connection with the extension of credit and the collection of debts.

- Financial institutions, from finance companies to mortgage brokers to credit card issuers, take advantage of the complexity of commercial transactions to impose exorbitant charges on consumers.

- These corporations are motivated too often solely by the bottom line, without regard to the morality or even legality of their practices.

- The unfortunate result is that consumers are deprived of huge sums by these companies through fraudulent and deceptive practices in connection with the extension of credit.

# NACA'S KEY ISSUES:

- Predatory mortgage lending, including equity stripping, charging excessive and unreasonable fees, and other unreasonable conditions imposed on homeowners by mortgage lenders and brokers;

- Automobile issues, including the sale of defective vehicles or "lemons," odometer and wrecked car fraud, lemon laundering in which defective vehicles are re-sold, and "forced-placed" insurance;

- Challenging mandatory arbitration clauses in contracts of adhesion which impair and impede consumers' access to justice;

- Unlawful and abusive practices in the extension of credit and credit insurance abuses, such as "packing" costly life, disability, unemployment, and property insurance onto loans;

- Unfair and abusive debt collection practices such as purporting to act with legal authority, threatening force or violence, or engaging in conduct that is prohibited by law;

- Unfair credit reporting practices, which include failing to correct erroneous statements, or failing to acknowledge that disputes exist;

- Abusive practices by financial and credit card institutions, such as churning of loans, overcharging customers, imposing junk fees on mortgages or excessive late or over limit fees.

# NACA'S ACCOMPLISHMENTS:

- NACA takes an active role in advocating consumer interests before the Courts, Congress and Administrative agencies. We advocate in support of pro-consumer legislation and regulatory action and in opposition to erosion of existing rights. We have filed *amicus* briefs in a number of leading consumer protection cases before the United States Supreme Court and other courts across the country.

- NACA staff and members worked extensively with the Department of Housing and Urban Development and the Department of the Treasury Joint Predatory Mortgage Lending Task Force. We were successful in demonstrating the nature and dimensions of predatory practices such as equity stripping, flipping, packing of insurance products, and hidden balloon payments. NACA's Executive Director served as a member of the Task Force.

- Many of the witnesses at Task Force hearings cross the country were NACA members. Our members also represented most of the victim witnesses who testified at the hearings. We made a significant contribution to the success of those hearings and to the strength of the recommendations for reform.

- NACA's Executive Director and NACA members testified before the Senate Committee on Banking, Housing and Urban Affairs regarding "Predatory Mortgage Lending Practices: Abusive Uses of Yield Spread Premiums."

- NACA members were leading witnesses at a hearing on predatory mortgage lending held by the House of Representatives Banking and Financial Services Committee. Our members were commended by the Committee for what was described as some of the most informative and moving testimony the Committee had heard in years.

- NACA, together with other consumer groups and the D.C. Office of Banking and Financial Services, organized a Capitol Hill forum on predatory mortgage lending to document the scope of the problem and call for national solutions. Sen. Charles Schumer, as well as several members of the House of Representatives, participated in the event.

- NACA drafted an amendment to the Federal Arbitration Act that would ban predispute arbitration clauses in consumer contracts. Our draft was incorporated in legislation introduced in both Houses of Congress. We also testified in opposition to mandatory binding arbitration clauses at a hearing before the Senate Judiciary Committee, Subcommittee on Administrative Oversight and the Courts.

- NACA played a significant role in drafting legislation, co-sponsored by Sen. Dianne Feinstein, Sen. Carl Levin, and Sen. Richard Bryan, that would provide consumers adequate protection against the unsuspecting purchase of a rebuilt wrecked or severely damaged car. We also worked successfully to defeat the passage of controversial special interest legislation which would have allowed such cars to continue unchecked.

- NACA has filed *amicus* briefs on behalf of consumers in more than a dozen cases challenging the enforceability of mandatory, binding arbitration clauses, including *Greentree v. Randolph* in the United States Supreme Court. These clauses are unilaterally imposed on consumers by financial institutions in standardized, adhesionary contracts as a way to preclude class actions, prevent the ordering of injunctive relief or the award of punitive damages, and thereby avoid any effective oversight of lucrative, deceptive, fraudulent and unfair business conduct.

- NACA filed two *amicus* briefs in *Culpepper v. Insland Mortgage Corp.*, in which the 11th Circuit Court of Appeals held that a yield spread premium was illegal because it is a referral fee prohibited under the Real Estate Settlement Procedures Act, does not fit within any statutory exception, and violates the governing statute and regulations.

- NACA filed *amicus* briefs in three cases that held that the Fair Debt Collection Practices Act does not contain a requirement that the obligation creating the debt arise from a credit transaction and concluded that the collection of a dishonored check is subject to the Act.

- NACA filed an *amicus* brief before the United States Supreme Court in *Heintz v. Jenkins*. In winning, consumers obtained a unanimous opinion holding that attorneys doing collection work are covered by the Fair Debt Collection Practices Act.

- NACA published the comprehensive "Standards and Guidelines for Litigating and Settling Consumer Class Actions" 176 F.R.D. 375 (1998) in an effort to ensure that the occasional and limited misuse of the class action device does not lead to restrictions on the ability of this procedure to challenge abusive business practices. The paper addresses the propriety of class actions when individual recoveries are small, the questionability of coupon settlements, settlements when other class actions are on file, additional compensation to named plaintiffs, the scope of class member releases, *cy pres* awards, attorneys fees, and improved notice of settlement.

# MEMBER BENEFITS:

In addition to being a part of an active and effective national consumer-interest organization comprised of consumer advocates, legal services attorneys, law professors, law students, State Attorney Generals and their staffs, and private attorneys whose primary focus is the protection and representation of consumers, NACA members receive:

- Litigation support and consultation services from NACA's Executive Director.

- An Annual NACA Directory, organized by members' areas of interest, which is a valuable resource for members to obtain assistance and advice from each other or to refer business.

- NACA's Newsletter, published six times annually, provides substantive articles on key issues such as predatory lending, automobile fraud, fair debt and fair credit. It includes thoughtful reviews of current topics as well as practice pointers.

- Access to the NACA Website, found at www.naca.net. The website contains NACA publications, articles, briefs, links to consumer sites, a library for NACA members and more.

- Discounts on the purchase of consumer law manuals published by the National Consumer Law Center.

- Invitations to several conferences each year. The topical conferences bring together the best and brightest consumer law experts to provide training on novel and tested legal theories and strategies for obtaining economic justice for consumers.

- Assistance from NACA's Issues Committee. Committee members can be a source of assistance with high-impact cases by providing advice and/or *amicus curae* briefs.

- Access to a number of targeted e-mail groups hosted by NACA. E-mail issues include class actions, insurance, the Fair Debt Collection Practices Act, mortgage fraud and more.

# NACA DONORS

## PLATINUM CLUB
### $5,000
Michael P. Malakoff

## GOLD CLUB MEMBERS
### $2,500

| | | |
|---|---|---|
| Elizabeth Joan Cabraser | Robert S. Green | William M. Krieg |

## BENEFACTORS
### $1,250

| | | |
|---|---|---|
| Nancy Barron | Sharon Grace | John T. Murray |
| Tracey D. Conwell | Bryan Kemnitzer | Richard T. Phillips |
| Jeff Crabtree | Alan Mansfield | James C. Sturdevant |
| Nate Fata | C. Knox McLaney III | |

## PATRONS
### $500

| | | |
|---|---|---|
| William M. Audet | Patricia Donahue | Daniel G. McCallum |
| Frederick M. Baron | Cary L. Flitter | David J. Philipps |
| Michael J. Bidart | Raymond G. Ingalsbe | John Roddy |
| O. Randolph Bragg | Thomas J. Lyons, Jr. | David Stivers |
| Mark A. Chavez | Kenneth L. Mann | A. Thomas Stubbs |

## SPONSORS
### $250

| | | |
|---|---|---|
| Terry J. Adler | W. Howard Gunn | Phillip Warren McCallum |
| Paul Arons | J. Patrick Hennessy | Robert G. Methvin, Jr. |
| M. Scott Barrett | Brian Kelly Herrington | Ann Miller |
| Bradley Ian Berger | Doug Hirsch | Sidney L. Moore |
| F. Paul Bland, Jr. | Michael B. Hyman | Bruce F. Morriss |
| William H. Blessing | Kathleen E. Keest | Andrew J. Ogilvie |
| Robert M. Bramson | W. Craig Kenney | Ron Parry |
| Hyung S. Choi | Norman K.K. Lau | Henry J. Price |
| William H. Crowder | Douglas D. Law | Bruce Priddy |
| Thomas Dean Domonoske | David A. Leen | Daniel A. Ragland |
| Michael D. Donovan | Christopher M. Lefebvre | Hallen D. Rosner |
| Richard N. Feferman | Charlotte L. Leong | Lee S. Shalov |
| James B. Fishman | Seth R. Lesser | James Shedden |
| Andrew S. Friedman | Wayne Lewis Lesser | Larry Sokoloff |
| Philip Friedman | Pauline S. Lewis | Steven B. Solomon |
| John Cole Gayle, Jr. | Louis R. Lint | Mark H. Steinbach |
| Eric H. Gibbs | B. Daniel Lynch | David F. Sugerman |
| Robert A. Goldstein | Roger. L. Mandel | |

# ALPHABETICAL LISTING

**Langone, Chris**
The Langone Law Firm
25 E. Washington St., Ste. 1805
Chicago, IL 60602
Ph: 312-782-2000
Fax: 312-782-2022
langone@interaccess.com
*Member Since: 11/4/96*

**Lau, Norman K.K.**
Norman K.K. Lau, A Law Corporation
820 Mililani St., Suite 401
Honolulu, HI 96813
Ph: 808-523-6767
Fax: 808-523-6769
normlau@aloha.net
*Member Since: 11/1/00*

**Laughlin, Mark C.**
Frasser Stryker Meusey Olson Boyer
& Bloch, PC
409 South 17th Street
Omaha, NE 68102
Ph: 402-341-6000
Fax: 402-341-8290
mlaughlin@fraserstryker.com
*Member Since: 12/27/99*

**Lavalle, Nye**
Americans Against Mortgage Abuse
3491 Buckhead Loop, Ste. #1605
Atlanta, GA 30326
Ph: 404-844-4000
nyelavalle@aol.com
*Member Since: 11/1/00*

**Law, Douglas D.**
Rosner & Law
2643 Fourth Avenue
San Diego, CA 92103
Ph: 619-232-5844
Fax: 619-232-4125
rosnerandlaw.com
*Member Since: 6/3/99*

**Le Vine, Ronald I.**
Ronald I. Le Vine, Esq.
210 River St. Ste. 24
Hackensack, NJ 07601
Ph: 201-489-7900
Fax: 201-489-1395
ril210@aol.com
*Member Since: 1/1/02*

**Leech, Gordon R.**
Attorney at Law
400 Executive Center Dr., Ste. #201
West Palm Beach, FL 33401
Ph: 561-686-6323
Fax: 561-686-6324
grleech@attorneygordonleech.com
*Member Since: 7/1/00*

**Leen, David A.**
David A. Leen & Assoc. PLLC
520 East Denny Way
Seattle, WA 98122
Ph: 206-325-6022
Fax: 206-325-1424
david@davidleen.com
*Member Since: 6/14/94*

**Lefebvre, Christopher M.**
Cl. Lefebvre & Ch. Lefebvre, P.C.
Box 479 (Two Dexter Street)
Pawtucket, RI 02860
Ph: 401-728-6060
Fax: 401-728-6534
Lefeblaw@aol.com
*Member Since: 8/18/95*

**Leonard, Margaret M.**
Legal Aid Bureau, Inc.
229 Hanover St.
Annapolis, MD 21401
Ph: 410-263-8330
Fax: 410-269-8916
mmleonard@aol.com
*Member Since: 10/14/96*

**Leong, Charlotte L.**
P.O. Box 2514
San Ramon, CA 94583
clleong1@netscape.net
*Member Since: 8/22/00*

**Lesser, Seth R.**
Bernstein Litowitz Berger ... LLP
1285 Avenue of the Americas, 33d Fl.
New York, NY 10019
Ph: 212-554-1442
Fax: 212-554-1444
seth@blbglaw.com
*Member Since: 10/15/96*

**Lesser, Wayne Lewis**
Wayne Lewis Lesser, Attorney
2165 Filbert Street
San Francisco, CA 94123
Ph: 415-563-2111
Fax: 415-673-0900
wllesser@pacbell.net
*Member Since: 9/28/99*

**Levin, David B.**
Krohn & Moss, Ltd.
120 W. Madison Street, 10th Floor
Chicago, IL 60602
Ph: 312-578-9428
Fax: 312-578-9433
dlevin@consumerlawcenter.net
*Member Since: 6/1/98*

**Levine, Andrea**
Better Business Bureau
845 Third Ave.
New York, NY 10022-6601
*Member Since: 3/1/01*

**Levine, Jonathan K.**
Kaplan, Fox, LLP
805 Third Ave.
New York, NY 10022
Ph: 212-687-1980
Fax: 212-687-7714
*Member Since: 8/1/00*

**Lewis, Eleanor J.**
Wolf Lewis, LLP
330 Livingston Ave.
New Brunswick, NJ 08901
Ph: 732-545-9292
Fax: 732-545-1030
eleanor_lewis@hotmail.com
*Member Since: 3/17/00*

**Lewis, Michael T.**
Lewis & Lewis, Attys at Law
P.O. Drawer 1600
Clarksdale, MS 38614
Ph: 662-627-4477
Fax: 662-627-2267
lewislaw@gmi.net
*Member Since: 6/15/98*

**Lewis, Pauline S.**
Lewis & Lewis, P.A. Attys at Law
P.O. Drawer 1600
Clarksdale, MS 38614
Ph: 601-627-4477
Fax: 601-627-2267
lewislaw@gmi.net
*Member Since: 6/15/98*

# FAIR CREDIT REPORTING CONTACTS

| State | City | First Name | Middle Name | Last Name | Work Phone | Fair Credit Reporting | May NACA Members Contact? | Consumer Contact Allowed? |
|---|---|---|---|---|---|---|---|---|
| CO | Boulder | Gary | | Merenstein | 303-447-0914 | Interested | Yes | Yes |
| CT | Groton | Zenas | | Zelotes | 860-448-6140 | Experienced | Yes | Yes |
| CT | New Haven | Joanne | S. | Faulkner | 203-772-0395 | Experienced | Yes | Yes |
| CT | New Haven | Gary | P. | Sklaver | 203-772-2180 | Experienced | Yes | Yes |
| CT | Rocky Hill | Daniel | S. | Blinn | 860-571-0408 | Experienced | Yes | Yes |
| CT | Willimantic | Cheryl | diane | Feuerman | 860-456-1761 | Experienced | Yes | Yes |
| DE | Dover | Walter | | Davis | 302-672-7945 | Advanced | Yes | Yes |
| DC | Washington | Scott | N. | Bergman | 301-592-1441 | Advanced | Yes | Yes |
| DC | Washington | Bravitt C. | | Manley, Jr. | 202-312-2001 | Interested | Yes | Yes |
| DC | Washington | Ira | | Rheingold | 202-452-1989 | Interested | Yes | Yes |
| DC | Washington | Phyllis | | Roderer | 202-452-1989 | Experienced | Yes | Yes |
| DC | Washington | Michael | | Tankersley | 202-588-1000 | Experienced | Yes | Yes |
| DC | Washington | William | T. | Vukowich | 202-662-9107 | Interested | Yes | No |
| DC | Washington | Thomas | C. | Willcox | 202-638-7541 | Interested | Yes | Yes |
| FL | Fort Lauderdale | Rebecca | J. | Covey | 954-763-4300 | Experienced | Yes | Yes |
| FL | Fort Myers | Thomas | S. | Heidkamp | 941-275-7797 | Interested | Yes | Yes |
| FL | Fort Myers | Mary | P. | Viles | 941-334-3933 | Interested | Yes | Yes |
| FL | Ft. Lauderdale | Howard A. | | Kusnick | 954-472-1047 | Advanced | Yes | Yes |
| FL | Ft. Lauderdale | Robert | W. | Murphy | 954-763-8660 | Interested | Yes | Yes |
| FL | Miami | Leo | | Bueno | 305-818-9129 | Interested | Yes | Yes |
| FL | Miami | Manuel | A. | Garcia-Linares | 305-373-4000 | Experienced | Yes | No |
| FL | Miami | Michael | P. | Schiff | 305-856-2036 | Experienced | Yes | Yes |
| FL | Miami | Robert | D. | Shapiro | 305-373-1099 | Advanced | Yes | Yes |
| FL | Orlando | Alana | C. | Brenner | 407-648-4464 | Experienced | Yes | Yes |
| FL | Orlando | Steven | M. | Fahlgren | 407-852-1711 | Advanced | Yes | Yes |
| FL | Orlando | Donald | E. | Petersen | 407-648-9050 | Interested | Yes | Yes |
| FL | Palm Beach Gardens | Raymond | G. | Ingalsbe | 561-775-3505 | Interested | Yes | No |
| FL | Palm Beach Gardens | Julie | J. | Kline | 561-622-6520 x8723 | Interested | No | No |
| FL | St. Petersburg | David | J. | Gruskin | 727-321-1918 | Interested | Yes | Yes |
| FL | Tallahassee | Susan | Dianne | Thompson | 850-668-4226 | Experienced | Yes | Yes |
| FL | West Palm Beach | Gordon. | R. | Leech | 561-686-6323 | Experienced | Yes | Yes |
| GA | Atlanta | Charles | M. | Baird | 404-287-2383 | Advanced | Yes | Yes |
| GA | Atlanta | Mark | E. | Budnitz | 404-651-2135 | Interested | Yes | No |
| GA | Augusta | John | B. | Long | 706-722-0771 | Experienced | Yes | Yes |
| GA | Columbus | Gary | O. | Bruce | 706-596-1446 | Experienced | Yes | Yes |
| GA | Decatur | William | J. | Brennan, Jr. | 404-377-0705 | Experienced | Yes | Yes |
| GA | Decatur | A.Thomas | | Stubbs | 404-378-3633 | Experienced | Yes | Yes |
| HI | Honokaa | George | J. | Zweibel | 808-775-1087 | Experienced | Yes | Yes |
| HI | Honolulu | Thomas | R. | Grande | 808-524-7500 | Interested | Yes | Yes |
| HI | Honolulu | Norman | K.K. | Lau | 808-523-6767 | Interested | Yes | Yes |
| IL | Chicago | O. Randolph | | Bragg | 312-372-8822 | Experienced | Yes | Yes |
| IL | Chicago | Daniel | A. | Edelman | 312-739-4200 | Experienced | Yes | Yes |
| IL | Chicago | Jerome | S. | Lamet | 312-939-2221 | Experienced | Yes | Yes |
| IL | Chicago | Chris | | Langone | 312-782-2000 | Advanced | Yes | Yes |
| IL | Chicago | Jonathan | | Nachsin | 312-327-1777 | Experienced | Yes | Yes |
| IL | Chicago | Michelle | D. | Orton | 312-939-2221 | Experienced | Yes | Yes |

# FAIR CREDIT REPORTING CONTACTS

| State | City | First Name | Middle Name | Last Name | Work Phone | Fair Credit Reporting | May NACA Members Contact? | Consumer Contact Allowed? |
|-------|------|-----------|-------------|-----------|-----------|----------------------|---------------------------|---------------------------|
| SC | Hilton Head | Richard | J. | Ritter | 843-681-3586 | Interested | Yes | Yes |
| SC | N. Charleston | C. Steven | | Moskos | 843-797-5297 | Experienced | Yes | Yes |
| SC | Spartanburg | James | John | Raman | 864-582-6840 | Advanced | Yes | No |
| SC | Surfside Beach | Nate | | Fata | 843-238-2676 | Experienced | Yes | Yes |
| TN | Germantown | Kevin | A. | Snider | 901-751-3777 | Interested | Yes | Yes |
| TN | Memphis | Irving | | Zeitlin | 901-526-5840 | Interested | Yes | Yes |
| TX | Austin | Mandi | Lee | Matlock | 512-447-7707 | Interested | Yes | No |
| TX | Austin | Heather | K. | Way | 512-447-7707 | Interested | Yes | Yes |
| TX | Corpus Christi | James T. | | McMillen | 361-887-7200 | Experienced | Yes | Yes |
| TX | Corpus Christi | L. Scott | | Smith | 361-883-9963 | Experienced | Yes | Yes |
| TX | Dallas | Stephen | | Gardner | 214-954-0663 | Advanced | Yes | No |
| TX | Dallas | Craig | | Jordan | 214-855-9355 | Advanced | Yes | Yes |
| TX | Dallas | Stewart | Ransom | Miller | 214-748-1234 | Experienced | Yes | Yes |
| TX | Dallas | Jimmie | R. | Phagan | 972-716-3640 | Advanced | Yes | Yes |
| TX | Dallas | Bruce | | Priddy | 972-732-0316 | Experienced | Yes | Yes |
| TX | Denton | Jeff | | Springer | 940-387-0404 | Interested | Yes | Yes |
| TX | Edinburg | Tracey | | Whitley | 956-383-9673 | Interested | Yes | No |
| TX | Fort Worth | Benjamin | F. | Dover | 817-441-6060 | Interested | Yes | Yes |
| TX | Ft. Worth | Bud | | Hibbs | 817-589-4284 | Advanced | Yes | Yes |
| TX | Houston | Richard | M. | Alderman | 713-743-2165 | Advanced | Yes | Yes |
| TX | Houston | Mark | L. | Aschermann | 713-942-0808 | Experienced | Yes | Yes |
| TX | Houston | Michael | | Redman | 713-222-8300 | Interested | Yes | Yes |
| TX | Houston | Richard | | Tomlinson | 713-627-7747 | Experienced | Yes | Yes |
| TX | Houston | Russell | | Van Beustring | 713-973-6650 | Advanced | Yes | Yes |
| TX | San Antonio | Peter | | Torres, Jr. | 210-737-2672 | Experienced | Yes | Yes |
| UT | Salt Lake City | Lester | A. | Perry | 801-272-7556 | Experienced | Yes | Yes |
| UT | Salt Lake City | Jon | H. | Rogers | 801-532-6272 | Experienced | Yes | Yes-$40 fee |
| VA | Fredricksburg | David | | Rubinstein | 540-373-0558 | Experienced | Yes | Yes |
| VA | Manassas | Thomas | R. | Breeden | 703-361-9277 | Experienced | Yes | Yes |
| VA | Petersburg | Dale | W. | Pittman | 804-861-6000 | Experienced | Yes | Yes |
| VA | Richmond | James | W. | Speer | 804-782-9430 | Interested | Yes | Yes |
| VA | Roanoke | Henry | L. | Woodward | 540-344-2008 | Experienced | Yes | Yes |
| WA | Olympia | Bruce | | Neas | 360-943-6260 | Interested | Yes | Yes |
| WA | Poulsbo | R. Stuart | | Phillips | 360-598-6232 | Experienced | Yes | Yes |
| WA | Seattle | Christopher | E. | Green | 206-325-2801 | Advanced | Yes | Yes |
| WA | Seattle | Ian | A. | Rodihan | 206-223-7700 | Experienced | Yes | Yes |
| WA | Spokane | Michael | K. | Kinkley | 509-484-5611 | Experienced | Yes | Yes |
| WA | Spokane | Alan | | McNeil | 509-323-5791 | Interested | Yes | Yes |
| WA | Tacoma | Richard | D. | Brady | 253-573-1207 | Interested | Yes | Yes |
| WA | Wenatchee | Judith | | Lurie | 509-664-5101 | Experienced | Yes | No |
| WV | Charleston | Norman | | Googel | 304-558-8986 | Interested | Yes | Yes |
| WI | Houlton | Anne | A. | Bergman | 715-549-6313 | Interested | Yes | Yes |
| WI | Madison | William | P. | Dixon | 608-255-5200 | Interested | Yes | Yes |
| WI | Madison | Marsha | M. | Mansfield | 608-282-6200 | Interested | Yes | Yes |
| WI | Madison | Stephen | | Meili | 608-263-6283 | Experienced | Yes | Yes |
| WI | Milwaukee | Charles | H. | Barr | 414-226-2080 | Experienced | Yes | Yes |

EXHIBIT "B"

# Fair Credit Reporting

*With CD-Rom*

*The Consumer Credit and Sales Legal Practice Series*

*Fifth Edition*

Anthony Rodriguez
Carolyn L. Carter
Willard P. Ogburn

Contributing Authors:    Joanne S. Faulkner
Elizabeth De Armond
Richard Rubin
Chi Chi Wu

## National Consumer Law Center

77 Summer Street, 10th Floor, Boston, MA 02110
www.consumerlaw.org

EXHIBIT "C"

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF CONNECTICUT

MICHELLE GOKTEPE

v.                                          CASE NO. 3:03CV 0089 (CFD)

VICTOR LAWRENCE d/b/a/
        LEXINGTON LAW FIRM                  April 9, 2003

## PLAINTIFF'S OPPOSITION TO DEFENDANT'S
## RULE 12 MOTION TO DISMISS

Defendant moved to dismiss under Fed. R. Civ. P. 12(b)(2), (5) and (6). Doc.

No. 7. Defendant posits several arguments for dismissal: improper service; lack of

personal jurisdiction; and inapplicability of the alleged credit repair statutes to a

lawyer. The motion is without merit and should be denied.

### Background[1]

Plaintiff sued defendant for violation of federal and state credit repair laws.

Defendant runs a credit repair clinic called the Lexington Law Firm from his Salt Lake

City Utah office. He purports to have some 80,000 clients, and advertises that he has

removed hundreds of thousands of items from his clients' credit reports.

---

[1] Plaintiff attaches documents obtained from the Internet in support of various assertions in this memorandum.
The documents are admissions against defendant's interest within Fed. R. Evid. 804(b)(3) and amenable to
judicial notice under Rule 201. Twentieth Century Fox Film Corp. v. Marvel Enterprises, Inc., 220 F. Supp. 2d
289, 296 n.9 (S.D.N.Y. 2002); Ligon v. Doherty, 208 F. Supp. 2d 384, 386 (E.D.N.Y. 2002); New Trier
Mortgage Corp. v. HUD, __ F. Supp. 2d __, 2002 WL 32065642 *2 (N.D. Ohio 2002); Grimes v. Navigant
Consulting, Inc., 185 F. Supp. 2d 906, 913 & n.7 (N.D. Ill. 2002); Hendrickson v. EBay, Inc., 165 F. Supp. 2d
1082, 1984 n.2 (C.D. Cal. 2001).

> Enter the credit repair clinic. Congress had recognized the
> abuses by many of the newly emerging credit repair clinics
> well before it finally enacted the CRO Act in 1996. In 1988,
> Representative Frank Annunzio described these businesses as
> "kin to `get rich quick' schemes. They promise fast results
> and new-found wealth in the form of available credit."

FTC v. Gill, 265 F.3d 944, 949 (9th Cir. 2001) (sanctions against lawyer operating

credit repair clinic in violation of Credit Repair Organizations Act ("CROA").

> As Americans' reliance on credit has increased, so-called
> "credit repair clinics" have emerged, preying on individuals
> desperate to improve their credit records. These organizations
> typically promise they can have any negative information
> removed permanently from any credit report . . . for a fee. On
> September 30, 1996, Congress enacted the Credit Repair
> Organizations Act ("CRO Act"), 15 U.S.C. §§ 1679-1679j, to
> ensure that the clinics provide potential customers with the
> information needed to decide whether to employ the services
> of such an organization and "to protect the public from unfair
> or deceptive advertising and business practices by credit
> repair organizations." 15 U.S.C. § 1679(b).

Id. at 947. See also "Scam Alert" from the AARP Bulletin for March 2003, attached,

which notes that the FTC, the BBB, and "nearly all state attorneys general" warn

consumers against credit repair clinics.

Defendant asks this Court to immunize him from suit in Connecticut even

though he claims to have entered into a retainer agreement with a Connecticut resident,

and accepted her money -- earned in Connecticut -- as payment. Lawrence Aff. ¶ 17.

2

## I. DEFENDANT WAS PROPERLY SERVED

Defendant was served pursuant to Fed. R. Civ. P. Rule 4(c): "Service may be effected by any person who is not a party and who is at least 18 years of age."    The Secretary of State was personally served as defendant's legal agent for service. Conn. Gen. Stat. §52-59b(c). Pursuant to Rule 4(e)(2), service was properly made ". . .by delivering a copy of the summons and of the complaint to an agent authorized by appointment or by law to receive service of process."

Defendant makes only three claims: First, the process was served by an indifferent person. That is permitted by Rule 4. Second, he claims the process was not mailed to the "last known address." Defendant operates under a registered d/b/a at the office address in Utah to which the process was directed. Def. Mem. at 1; see also trade name registration, attached. His claim that process should have been directed to his home address is specious and without support. The d/b/a's "place of abode" equivalent was the address where it did business. Third, he misreads the statute by claiming that the Secretary of State must endorse the summons under state law service requirements. Rather, the process server must endorse the fact that she served the secretary of state. The last page of defendant's Ex. A shows this endorsement. A copy of the filed actual return of service, which shows service on the secretary of state *and* on the defendant, is attached.

As stated above, federal service requirements were fully met. Defendant, a lawyer, was properly served and had proper notice of this suit, despite his efforts to

04/10/2003  00:05  2033489958    R CUNNINGHAM    PAGE  05

Received Fax :    APR 10 2003 3:12PM    Fax Station : ATKIN & HAWKINS P.C.    p. 5

make it appear otherwise by appealing to inapplicable or nonexistent state law requirements. His motion to dismiss based on lack of service should be denied.

## II. THIS COURT HAS PERSONAL JURISDICTION OVER A UTAH LAWYER WHO CLAIMS TO REPRESENT A CONNECTICUT CLIENT

Defendant claims that plaintiff, a Connecticut resident, retained him as a lawyer to negotiate credit repair with credit bureaus, and that he accepted the retainer. That admission alone renders him subject to personal jurisdiction in Connecticut. See, e.g., Myers v. Bennett Law Offices, 238 F.3d 1068 (9th Cir. 2001), ruling that personal jurisdiction over a Utah law firm may be exercised in Arizona where the law firm acted entirely outside Arizona to order a credit report on an Arizona resident.

Defendant's incomplete and self-serving affidavit paints a limited and partial picture of his business. He does not reveal that he advertises his "nationwide" credit repair clinic extensively on the internet, and pays "affiliates" to link to his web site (see attached for an example).[2] He does not reveal that he signs up his clients (including plaintiff) through his interactive site on the internet. He does not reveal that he communicates with his clients (including plaintiff) through internet e-mail. Attached is a copy of the retainer agreement which clients enter at the web site by clicking on the

---

[2] In contrast, ¶ 14 of Lawrence's Affidavit claims that the Firm does not solicit business "from" any intermediary. Likewise, ¶ 6 mentions the firm's "solid reputation" without mentioning that the Utah Attorney General filed suit against it; or that Mr. Lawrence's discipline "for disbursing personal injury settlement proceeds in disregard of [an] assignment and lien on a portion of the proceeds" was affirmed by the Utah Court of Appeals in 1996, Case No. 950668-CA.

4