appropriate buttons. Attached are electronic communications sent by defendant to plaintiff in Connecticut.

Moreover, if one downloads the "results" from defendant's Lexington Law Firm Web site, one will find that he has removed multiple tradelines (credit bureau entries) of several local Connecticut enterprises from individuals' credit reports – which means he is dealing with many more Connecticut residents than just this plaintiff. From 7/1/02 to 9/30/02 – before he did anything to try to "repair" plaintiff's credit -- defendant removed multiple tradelines relating to SNET, Webster Bank, People's Bank, United Illuminating, Credit Bureau of Connecticut, US Bankruptcy Court of New Haven CT, Connecticut State, EFGTECH /Connecticut, Ansonia collections, and other apparently local entities. His credit repair activities thus have a direct effect on the Connecticut economy, Connecticut entities and Connecticut individuals.

A. Standard applied.

> In Ball v. Metallurgie Hoboken-Overpelt, S.A., 902 F.2d 194, 197 (2d Cir. 1990), the Second Circuit clarified the procedure by which a plaintiff must respond to a jurisdictional challenge such as the one presented here. The Second Circuit first noted that 'the nature of the plaintiff's obligation varies depending on the procedural posture of the litigation.' Id. If the jurisdictional challenge is made before discovery has been conducted, the plaintiff can defeat the motion to dismiss simply by making a good faith allegation of jurisdiction. See id. At such an early stage of the litigation, the plaintiff's prima facie showing may be established solely by reference to the jurisdictional allegations in the complaint.

Musso v. Seiders, 194 F.R.D. 43, 48 (D. Conn. 1999).

04/10/2003 00:05 2033489958 R CUNNINGHAM PAGE 07
Received Fax : APR 10 2003 3:12PM Fax Station : ATKIN & HAWKINS P.C. p. 7

Thus, to survive a motion to dismiss for lack of personal jurisdiction, plaintiff need only allege facts constituting a prima facie showing. All pleadings and affidavits are construed in plaintiff's favor. PDK Labs, Inc. v. Friedlander, 103 F. 3d 1105, 1108 (2d Cir. 1997); A.I. Trade Finance Inc. v. Petra Bank, 989 F.2d 76 (2d Cir. 1993); Marine Midland Bank, N.A. v. Miller, 664 F.2d 899 (2d Cir. 1981) (plaintiff need only make a prima facie showing of jurisdiction, regardless of any contradictory showing by defendant).

## B. THE LONG ARM STATUTE SUPPORTS PERSONAL JURISDICTION

Defendant discusses whether he transacts business in Connecticut. He also discusses whether he committed a tortious act outside the state. He does not, however, address the jurisdictional basis which pertains: defendant committed a tortious act within the state within §52-59b(a)(2).

Plaintiff does not claim that jurisdiction is based on doing business in Connecticut. Instead, she claims that defendant's credit repair activity aimed at taking money from this Connecticut resident is a tortious act within Connecticut. That precise issue has been resolved in plaintiff's favor by several federal and state cases. Russey v. Rankin, 837 F. Supp. 1103, 1105 (D.N.M. 1993) (FDCPA; "Because TCA's written correspondence is the nucleus of the alleged wrongful conduct rather than just an ancillary contact with the forum, it was reasonable to anticipate being hailed into New Mexico court on claims based upon the letter"); Sluys v. Hand, 831 F. Supp. 321

04/10/2003 00:05 2033489958 R CUNNINGHAM PAGE 08
Received Fax : APR 10 2003 3:12PM Fax Station : ATKIN & HAWKINS P.C. p. 8

(S.D.N.Y. 1993) (FDCPA; (plaintiff's claim is based upon the letters sent into N.Y.); Paradise v. Robinson and Hoover, 883 F. Supp. 521, 525-26 (D. Nev. 1995) (FDCPA; the letter is the precise subject matter of the lawsuit); Bils v. Nixon, Hargrave, Devans & Doyle, 880 P.2d 743 (Ariz. App. 1994) (FCRA violation occurred in N.Y. but was aimed at Ariz. resident); Lachman v. Bank of La., 510 F. Supp. 753, 758 (N.D. Ohio 1981) (FCRA and FDCPA; continued contact after plaintiff moved to Ohio).

The above cases, and others cited below, agree that even a single purposeful contact, without any physical presence in the forum, satisfies constitutional concerns. For example, venue is proper in the state where a dunning letter is received, even where the letter was not aimed at the state but merely forwarded by the postal service. Bates v. C & S Adjusters, Inc., 980 F.2d 865 (2d Cir. 1992). Judge Newman explained that any harm to the debtor occurs upon receipt of the letter. Id. at 868. That harm forms the basis of personal jurisdiction in this case. Personal jurisdiction is founded on defendant's credit repair activities on behalf of the Connecticut plaintiff that violated the CROA. The Bates analysis supports the exercise of long-arm jurisdiction as a result of defendant's tortious conduct whose effects were intended to be felt in Connecticut.

1. Violation of the Consumer Credit Protection Act is a Tort.

Violation of a consumer protection statute is a tortious act for the purpose of long-arm statutes. E.g., Hyde v Hibernia Nat. Bank, 861 F.2d 446, 450 (5th Cir.

04/10/2003 08:05 2033489958 R CUNNINGHAM PAGE 09

Received Fax : APR 10 2003 3:12PM Fax Station : ATKIN & HAWKINS P.C. p. 9

1988) (each transmission of an erroneous consumer report is a separate and distinct tort under the Fair Credit Reporting Act ("FCRA"); . Kobs v. Arrow Service Bureau, Inc., 134 F.3d 893, 898 (7th Cir. 1998) (FDCPA); Tolentino v. Friedman, 46 F.3d 645, 652 (7th Cir. 1995) (FDCPA); Sibley v. Fulton DeKalb Collection Service, 677 F.2d 830, 834 (11th Cir. 1982); Barber v. Kimbrell's, Inc., 577 F.2d 216, 225 (4th Cir. 1978) (truth in lending act); Norton v. Local Loan, 251 N.W. 2d 520 (Iowa 1977) (single collection call); Stupar v. Bank of Westmont, 352 N.E.2d 29 (Ill. App. 1976) (single repossession); Arterbury v. American Bank & Trust Co., 553 S.W.2d 943 (Tex. App. 1977) (single repossession): Restatement (2d) Torts §285 (tort standards of conduct may be established by legislative enactment); Prosser & Keeton on Torts (5th ed. 1984) §35 (violation of statute can be a tortious act); § 36 at 229-30 (if the statute is applicable and a breach established, the issue of negligence is conclusively determined; directed verdict would be appropriate).

Thus if, as alleged, defendant did not meet the standards of the CROA, he has committed a tortious act in Connecticut, where the effects were suffered by the plaintiff.[3]

[3] By entering into a retainer agreement to represent a Connecticut individual for the purpose of credit repair, and accepting plaintiff's money, defendant did not merely violate the CROA, he committed the crime of unauthorized practice of law. Conn. Gen. Stat. §51-88(a). Plaintiff will discuss this further below.

04/10/2003 08:05 2033489958 R CUNNINGHAM PAGE 10

Received Fax : APR 10 2003 3:12PM Fax Station : ATKIN & HAWKINS P.C. p. 10

2. <u>Violation of the CROA by communications to, from, and on behalf of a Connecticut resident is a tort in Connecticut</u>

Under general tort principles, defendants' tortious act was committed within Connecticut, to which his effort was targeted, where the e-mails or phone calls were received, and where the harm occurred. E.g., <u>Burt v. Board of Regents of Univ. of Neb.</u>, 757 F.2d 242 (10th Cir. 1985) (letter solicited by plaintiff, place of tort in Colo. where letter received); <u>Thorington v. Cash</u>, 494 F.2d 582 (5th Cir. 1974) (same); <u>Polish v. Threshold Technology Inc.</u>, 340 N.Y.S.2d 354 (Sup. Ct. 1974) (tortious act occurred where the person read the single fraudulent letter sent into state; no tortious act would have occurred if the letter had not reached its target).

3. <u>Even a single purposeful act results in Connecticut jurisdiction.</u>

Even a single tortious act can be a sufficient basis for personal jurisdiction under the Constitution as well as the specific terms of the long arm statute. <u>Hess v. Pawloski</u>, 274 U.S. 352 (1927); <u>Buckley v. New York Post Corp.</u>, 373 F.2d 175, 179, 181 (2d Cir. 1967) (corporate jurisdiction) ("We would thus perceive no constitutional problem in Connecticut's summoning the New York Post to answer in its courts for a tort--other than defamation--alleged to have been committed in Connecticut upon a Connecticut resident even if that had been a wholly isolated event"); <u>Teleco Oilfield Services Inc. v. Skandia Ins. Co. Ltd.</u>, 656 F. Supp. 753, 758 (D. Conn. 1987) (failure to provide reasonable explanation promptly); <u>Rusack v. Harsha</u>, 470 F. Supp. 285, 291 (M.D. Pa. 1978) (by sending copies of the

04/10/2003 08:05 2033489558 R CUNNINGHAM PAGE 11
Received Fax : APR 10 2003 3:12PM Fax Station : ATKIN & HAWKINS P.C. p. 11

letter into Pennsylvania the defendant has "in a sense, purposefully availed himself of the opportunity of conducting an activity in the state of Pennsylvania"); Froess v. Bulman, 610 F. Supp. 332, 336-37 (D.R.I. 1984) (purposefully initiated contact with state resident); Cf. Zartolas v. Nisenfeld, 184 Conn. 471, 474, 475, 440 A.2d 179 (1981) (single purposeful contact).

4. Even a single purposeful act satisfies constitutional concerns

Not only is defendant subject to jurisdiction in Connecticut; personal jurisdiction here is well within traditional notions of fair play and substantial justice, as Judge Walker ruled in Kernan v. Kurz-Hastings, Inc., 175 F.3d 236, 242-45 (2d Cir. 1999), and as Judge Cabranes ruled in both Ensign-Bickford Co. v. ICI Explosives USA Inc., 817 F. Supp. 1018, 1028-31 (D. Conn. 1993), and David v. Weitzman, 677 F. Supp. 95, 97-98 (D. Conn. 1987). Consumer Credit Protection Act cases agree. Myers v. Bennett Law Offices, 238 F.3d 1068 (9th Cir. 2001) (FCRA); Liu v. DeFelice, 6 F. Supp. 2d 106 (D. Mass. 1998) (defendant subject to Mass. jurisdiction when it accessed Mass. resident's credit report, despite fact that defendant was out of state entity and it accessed credit reports from foreign entities as well. No actual "contact" with Mass. but as harm was suffered by Mass. resident and this result was foreseeable to defendant, personal jurisdiction attained); Russey v. Rankin, 837 F. Supp. 1103, 1105 (D.N.M. 1993) (FDCPA; "Because TCA's written correspondence is the nucleus of the alleged wrongful conduct rather than just an ancillary contact with the forum, it was reasonable to anticipate being hailed into New Mexico court on claims based upon the

04/10/2003 00:05 2033489958 R CUNNINGHAM PAGE 12
Received Fax : Apr 10 2003 3:12PM Fax Station : ATKIN & HAWKINS P.C. p. 12

letter"); Sluys v. Hand, 831 F. Supp. 321 (S.D.N.Y. 1993) (FDCPA; (plaintiff's claim is based upon the letters sent into N.Y.); Paradise v. Robinson and Hoover, 883 F. Supp. 521, 525-26 (D. Nev. 1995) (FDCPA; the letter is the precise subject matter of the lawsuit); Bils v. Nixon, Hargrave, Devans & Doyle, 880 P.2d 743 (Ariz. App. 1994) (FCRA violation occurred in N.Y. but was aimed at Ariz. resident); Lachman v. Bank of La., 510 F. Supp. 753, 758 (N.D. Ohio 1981) (FCRA and FDCPA; continued contact after plaintiff moved to Ohio). In Lachman, the court noted that the purpose of acts regulating debt collection would be frustrated if consumers had to travel long distances to prosecute their claims. Id. at 758.

In Norton, supra, the court ruled that a single phone call met the "minimum contacts" test. Similarly, in Stupar, 352 N.E. 2d at 33; and Arterbury, 553 S.W. 2d at 948, 949, the courts ruled that a single repossession met the "minimum contacts" test.

Under Supreme Court cases, there is no need to base jurisdiction on a physical presence in the state as long as the activity is directed to the state. In Calder v. Jones, 465 U.S. 783 (1982), the California state court had jurisdiction over Florida journalists whose actions were intentionally aimed at a California resident, and the brunt of the harm, emotional distress, was suffered in California. "[T]hey knew that the brunt of the injury would be felt by respondent in the State in which she lives and works . . . ." 465 U.S. at 789-80.

04/10/2003 08:05 2033489958 R CUNNINGHAM PAGE 13

Received Fax : APR 10 2003 3:12PM Fax Station : ATKIN & HAWKINS P.C. p. 13

In Keeton v. Hustler Magazine, Inc., 465 U.S. 770 (1984), the New Hampshire District Court had personal jurisdiction where a nonresident plaintiff sued an out-of-state magazine publisher for libel, because some copies of the magazine were distributed in New Hampshire. New Hampshire had an interest in redressing injuries which occurred within the State, protecting both residents and nonresidents from falsehoods. In Burger King Corp. v. Rudzewicz, 471 U.S. 462 (1985), the Supreme Court noted that it was appropriate for Florida to exercise jurisdiction over a person who had never been there. The defendant had intentionally negotiated with the Florida corporation, and his activities caused foreseeable injuries to the Florida corporation.

> Jurisdiction in these circumstances may not be avoided merely because the defendant did not *physically* enter the forum State. Although territorial presence frequently will enhance a potential defendant's affiliation with a State and reinforce the reasonable foreseeability of suit there, it is an inescapable fact of modern life that a substantial amount of business is transacted solely by mail and wire communications across state lines, thus obviating the need for physical presence within a State in which business is conducted. So long as a commercial actor's efforts are "purposefully directed" toward residents of another State, we have consistently rejected the notion that an absence of physical contact can defeat personal jurisdiction there.

Id. at 476. In language directly applicable to this case:

> A State [such as Connecticut] generally has a "manifest interest" in providing its residents with a convenient forum for redressing injuries inflicted by out-of-state actors. . . . Moreover, where individuals "purposefully derive benefit" from their interstate activities . . . it may well be unfair to allow them to escape having to account in other States for consequences that arise proximately from such activities; the Due Process Clause may not readily be wielded as a territorial shield to avoid

04/10/2003 08:05 2033489958 R CUNNINGHAM PAGE 14

Received Fax : APR 10 2003 3:12PM Fax Station : ATKIN & HAWKINS P.C. p. 14

> interstate obligations that have been voluntarily assumed. And because "modern transportation and communications have made it much less burdensome for a party sued to defend himself in a State where he engages in economic activity," it usually will not be unfair to subject him to the burdens of litigation in another forum for disputes relating to such activity.

Id. at 473-74. As the Court further noted, "Jurisdiction is proper, however, when the contacts proximately result from actions by the defendant himself that create a 'substantial connection' with the forum State." Id. at 475.

Under well-established authority, then, this Court may constitutionally exercise personal jurisdiction over defendant, who intentionally entered into and benefited from a retainer agreement from this plaintiff, his Connecticut client.

5. Defendant's interactive internet site establishes personal jurisdiction

Defendant omits crucial facts from his affidavit. As shown by the attached, defendant solicits business nationwide through his own and his affiliates' interactive web sites. His clients push an electronic button to hire him. He deducts from their bank accounts or charges their credit cards to obtain payment in advance of repairing credit, an unequivocal violation of the CROA. Gill, 265 F.3d at 956.

In Bird v. Parsons, 289 F.3d 865 (6th Cir. 2002) the Sixth Circuit ruled that a Washington company with a website that can be accessed by customers in Ohio can be sued in Ohio. Several judges in this District would to agree that an interactive web site shows that defendant is actively soliciting business in Connecticut and is subject to jurisdiction under our long arm statute. Inset Systems, Inc. v. Instruction Set, Inc., 937 F. Supp. 161 (D. Conn. 1996) (AVC) (asserting jurisdiction over the defendant was

04/10/2003 00:05 2033489958 R CUNNINGHAM PAGE 15
Received Fax : APR 10 2003 3:12PM Fax Station : ATKIN & HAWKINS P.C. p. 15

consistent with Due Process concerns because the availability of the web site in Connecticut (as well as the other forty-nine states) indicated to the Court that ISI was actively soliciting business in Connecticut); Edberg v. Neogen Corp., 17 F. Supp.2d 104 (D. Conn. 1998) (GLG) (no jurisdiction where passive web site and no evidence that any Connecticut user relied on the site or entered into a transaction because of it); E-Data Corp. v. Micropatent Corp., 989 F. Supp. 173 (D.Conn. 1997) (JBA) (no jurisdiction where defendant's Web site allowed users to purchase and download photography images, but no evidence of any Connecticut user); American Homecare Federation, Inc. v. Paragon Scientific Corp., 27 F. Supp. 2d 109, 113 (D. Conn. 1998) (WWE) (knowing and repeated transmission of computer files supports personal jurisdiction). The crucial factor, missing in the cases which declined to exercise jurisdiction, is present here: this Connecticut plaintiff suffered economic injury and entered into a contract for credit repair as a result of defendant's extensive internet activities. Harris v. Wells, 832 F. Supp. 31, 34 (D. Conn. 1993); Cody v. Ward, 954 F. Supp. 43, 44 (D. Conn. 1997) (RNC) (nonresident's transmission of fraudulent misrepresentations to a Connecticut resident by telephone and electronic mail for purpose of inducing him to enter a contract subjects the nonresident to suit in Connecticut). "Connecticut has a strong interest in adjudicating this dispute and the plaintiff has an obvious interest in obtaining convenient and effective relief, which would be impaired if he were required to sue the defendant in [Utah.]" Id. at 47.

Defendant successfully aimed his tortious conduct at this Connecticut resident through his interactive internet site, e-mail and telephone contact. She is entitled to sue him here; this Court is entitled to exercise personal jurisdiction over him.

04/10/2003 00:05 2033489958 R CUNNINGHAM PAGE 16
Received Fax : APR 10 2003 3:12PM Fax Station : ATKIN & HAWKINS P.C. p. 16

## III. THE CROA APPLIES TO DEFENDANT

A. The statute on its face applies to lawyers

Defendant ignores the plain language of the CROA and instead appeals to policy arguments that the CROA does not apply to lawyers. The plain language of the statute applies to precisely what defendant purports to be doing, and contains specific exceptions, none of which apply to this defendant.

> (3) Credit repair organization. -- The term 'credit repair organization'--
>
> (A) means any person who uses any instrumentality of interstate commerce or the mails to sell, provide, or perform (or represent that such person can or will sell, provide, or perform) any service, in return for the payment of money or other valuable consideration, for the express or implied purpose of--
>
> (i) improving any consumer's credit record, credit history, or credit rating; or
>
> (ii) providing advice or assistance to any consumer with regard to any activity or service described in clause (i); and
>
> (B) does not include--
>
> (i) any nonprofit organization . . .
>
> (ii) any creditor (as defined in section 103 of the Truth in Lending Act),(5) . . ; or
>
> (iii) any depository institution (as that term is defined in section 3 of the Federal Deposit Insurance Act) or any Federal or State credit union (as those terms are defined in section 101 of the Federal Credit Union Act), or any affiliate or subsidiary of such a depository institution or credit union.

Where the language employed by Congress is clear, the text controls and no further inquiry is permitted. Estate of Cowart v. Nichols Drilling Co., 505 U.S. 469, 475 (1992). There is no exception in the CROA for attorneys.

Congress undoubtedly learned its lesson from its experience with the Fair Debt Collection Practices Act, which initially contained an express attorney exemption. When it repealed the exemption for attorneys in 1986, Congress considered and rejected

04/10/2003 08:05 2033489958 R CUNNINGHAM PAGE 17
Received Fax : APR 10 2003 3:12PM Fax Station : ATKIN & HAWKINS P.C. p. 17

arguments that existing mechanisms for curbing lawyers' misbehavior are adequate and that application of the FDCPA to litigation would be burdensome. Congress expressly found "that current law does not adequately protect consumers from attorney debt collection abuses and that repeal of the attorney exemption to the Fair Debt Collection Practices Act is an appropriate way to reduce the amount of this abuse," H.R. Rep. No. 405 at 7, reprinted in 1986 U.S.C.C.A.N. at 1758.

The Federal Trade Commission, the enforcement authority for the CROA, has consistently applied the CROA to attorneys. FTC v. Gill, 265 F.3d at 956; FTC Press Release, *Fort Lauderdale Attorney Agrees to Settle Deceptive Credit Repair Charges,* copy attached.

Defendant's policy argument, "that lawyers are fully regulated by the states in which they practice," Def. Mem. at 16, does not overcome the plain language of the CROA which contains no express exemption for lawyers.

B. Defendant is not a lawyer outside of Utah

Even if there were an exemption for attorneys, defendant is not licensed to practice law anywhere except Utah, and is not regulated by any state except Utah. Defendant's Web site claims that the four-lawyer firm has some 80,000 clients and removes entries from their clients' credit reports at the rate of 28,000 per month. Defendant cannot possibly be meaningfully involved as a lawyer, at that astonishing rate. E.g., Nielsen v.

04/10/2003 00:05 2033489958 R CUNNINGHAM PAGE 18
Received Fax : Apr 10 2003 3:12PM Fax Station : ATKIN & HAWKINS P.C. p. 18

Dickerson, 307 F.3d 623 (7th Cir. 2002) and cases cited therein. Lexington Law Firm's operation is nothing more than a credit repair clinic using the facade of being a lawyer.

Defendant's web site touts the "advantages of using a law firm." "We enforce your rights under the various federal laws." Its internet ad is deceptive: Mr. Lawrence admits in his affidavit that the firm does not act as a lawyer: "Were we to initiate legal action in [other] states we would be required to associate local counsel." (Aff. ¶ 16.) Unlike defendant, lawyers who actually represent clients follow through with lawsuits in the clients' home states against the credit bureaus and furnishers of information.

Advertising his legal services constitutes the unauthorized practice of law. Statewide Grievance Committee v. Zadora, 772 A. 2d 681, 684 (Conn. App. 2001); Haymond v. Statewide Grievance Committee, 723 A.2d 821 (Conn. App. 1997), *aff'd*, 723 A.2d 808 (Conn. 1999).

Defendant purports to have entered into a retainer agreement with this Connecticut plaintiff (without associating local counsel) and considers her his client. He thereby admits that he is engaged in the unauthorized practice of law. Conn. Gen. Stat. §51-88(a): "A person who has not been admitted as an attorney under the provisions of section 51-80 shall not . . . (4) hold himself out to the public as being entitled to practice law, (6) assume, use or advertise the title of lawyer, attorney . . . or an equivalent term, in such manner as to convey the impression that he is a legal practitioner of law, or (7) advertise that he . . . owns, conducts or maintains a law office, or office or place of business of any kind for the practice of law." His activity is not only a crime, under that section, but he is "deemed in contempt of court." §51-88(c). Defendant urges that the Court immunize him

04/10/2003 00:05 2033489958 R CUNNINGHAM PAGE 19
Received Fax : APR 10 2003 3:12PM Fax Station : ATKIN & HAWKINS P.C. p. 19

from the CROA because he is an attorney. However, his "nationwide" unauthorized practice shows little respect for the strong interest of each state in regulating lawyers. Ohralik v. Ohio State Bar Ass'n, 436 U.S. 447, 459 (1978).

Defendant's Web site promises to "impose legal opinions when and if necessary." In re Peterson, 163 B.R. 665, 672 (Bankr. D. Conn. 1994) (giving legal advice is the practice of law, citing Spanos v. Skouras Theatres Corp., 364 F.2d 161, 165 (2d Cir. 1966) and requiring disgorgement of fees). No matter how much effort an unlicensed attorney puts into a case, he cannot recover for his services because he is not admitted in Connecticut. Biller Assoc. v. Rte. 156 Realty Co., 725 A.2d 398, 406 (Conn. App. 1999), *aff'd,* 746 A.2d 785 (Conn. 2000); Perlah v. S.E.I. Corporation, 29 Conn. App. 43, 612 A.2d 806, 808-09 (1992); Taft v. Amsel, 23 Conn. Supp. 225, 180 A.2d 756 (1962).

C. Connecticut laws apply to defendant.

Defendant claims that since he is licensed in Utah, he is protected from application of Connecticut laws which expressly exempt "any person licensed to practice law in this state." His contention that this Court should allow him immunity flies in the face of sound public policy. The state statutes are meant, in part, to *prevent* the unauthorized practice of law. They have survived constitutional challenge. Silver v. Woolf, 694 F.2d 8, 12 (2d Cir. 1982) ("Some provisions of the Connecticut [collection agency] statute are explicitly aimed at preventing the illegal practice of law and otherwise regulate the relationship of collection agencies to Connecticut attorneys");

04/10/2003 00:05 2033489558 R CUNNINGHAM PAGE 20
Received Fax : APR 10 2003 3:12PM Fax Station : ATKIN & HAWKINS P.C. p. 20

Sharinn & Lipshie v. Woolf, Civil No. 95-265 (AVC) (D. Conn. 1996) (Doc. No. 29), upholding requirement that out of state lawyers must be licensed under the Consumer Collection Agency Act despite vigorous constitutional challenge).

CONCLUSION

Since plaintiff's complaint states a claim for relief and this Court has jurisdiction, defendant's Motion to Dismiss should be denied.

THE PLAINTIFF

BY______________________
JOANNE S. FAULKNER ct04137
123 Avon Street
New Haven, CT 06511-2422
(203) 772-0395
j.faulkner@snet.net

04/10/2003 00:05 2033489958 R CUNNINGHAM PAGE 21

Received Fax : APR 10 2003 3:12PM Fax Station : ATKIN & HAWKINS P.C. p. 21

# EXHIBIT "D"

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

RECEIVED APR CLERK

| | | |
|---|---|---|
| CHRISTOPHER IOSELLO, Plaintiff, | ) | 03 C 0987 |
| v. | ) | Judge Ronald A. Guzman |
| LEXINGTON LAW FIRM, a corporation, and VICTOR LAWRENCE,[1] Defendants. | ) | Magistrate Judge Michael T. Mason |

**PLAINTIFF'S RESPONSE TO DEFENDANT'S**
**MOTION TO DISMISS PLAINTIFF'S COMPLAINT**

## I. INTRODUCTION

During 2002, plaintiff, a resident of Illinois, contracted with defendant Victor Lawrence d/b/a Lexington Law Firm, located in Utah, for credit repair services, via Internet, mail and telephone. The contract did not comply with the requirements of the Credit Repair Organizations Act ("CROA"), because it failed to include various federally required notices and disclosures. Plaintiff paid $110 to defendant for credit repair services pursuant to the contract. Plaintiff requested his money back, but the request went unanswered and plaintiff filed this lawsuit. A refund was later made, after this lawsuit was filed.

> Enter the credit repair clinic. Congress had recognized the abuses by many of the newly emerging credit repair clinics well before it finally enacted the CRO Act in 1996. In 1988, Representative Frank Annunzio described these businesses as "kin to `get rich quick' schemes. They promise fast results and new-found wealth in the form of available credit." (FTC v. Gill, 265 F.3d 944, 949 (9th Cir. 2001).)
>
> As Americans' reliance on credit has increased, so-called "credit repair clinics"

[1] The defendant in this matter appears to be Victor Lawrence d/b/a "Lexington Law Firm." As such, the caption may contain a misnomer as to defendant. Throughout this memorandum, defendants are thus referred to as "defendant."

> have emerged, preying on individuals desperate to improve their credit records. These organizations typically promise they can have any negative information removed permanently from any credit report . . . for a fee. On September 30, 1996, Congress enacted the Credit Repair Organizations Act ("CRO Act"), 15 U.S.C. §§ 1679-1679j, to ensure that the clinics provide potential customers with the information needed to decide whether to employ the services of such an organization and "to protect the public from unfair or deceptive advertising and business practices by credit repair organizations." 15 U.S.C. § 1679(b). (Id. at 947.)

Defendant moves to dismiss the complaint on the following grounds: (1) that the defendant was not properly served; (2) this Court lacks personal jurisdiction over the defendant; and (3) the CROA does not, or should not, apply to attorneys performing credit repair services. For the reasons stated below, these arguments are without merit.

## II. STANDARD OF DECISION

The allegations of the complaint are to be taken as true unless controverted by the defendant's affidavits. Turnock v. Cope, 816 F.2d 332, 333 (7th Cir. 1987). Any conflicts in affidavits are to be resolved in plaintiff's favor. Id. The motion must be denied if plaintiff alleges sufficient facts to support a reasonable inference that the defendant can be subjected to the jurisdiction of the court. Jackam v. Hospital Corporation of America, 800 F.2d 1577, 1579 (11th Cir. 1986).

## III. DEFENDANT WAS PROPERLY SERVED

Defendant claims that process was not properly served on Victor Lawrence d/b/a the Lexington Law Firm, a sole proprietorship. Defendant claims that Victor Lawrence was not served "personally," and that "no copy of the summons and complaint was left at Mr. Lawrence's dwelling house or usual place of abode." (Def. Mem. pp. 2-3) This argument is frivolous.

Rule 4(e) of the Federal Rules of Civil Procedure provides that:

**Service Upon Individuals Within a Judicial District of the United States.**

**Unless otherwise provided by federal law, service upon an individual from whom a waiver has not been obtained and filed, other than an infant or an incompetent person, may be effected in any judicial district of the United States:**

**(1) pursuant to the law of the state in which the district court is located, or in which service is effected, for the service of a summons upon the defendant in an action brought in the courts of general jurisdiction of the State; or**

**(2) by delivering a copy of the summons and of the complaint to the individual personally or by leaving copies thereof at the individual's dwelling house or usual place of abode with some person of suitable age and discretion then residing therein or by delivering a copy of the summons and of the complaint to an agent authorized by appointment or by law to receive service of process.**

Accordingly, if the process of service is valid under the law of Illinois (the state in which the district court is located) or under the law of Utah (where the service was effected) it will be considered a valid service under federal law. In the instant case, defendant was properly served under both Illinois and Utah laws.

Pursuant to Utah procedural law, service is effective on individuals:

**. . . by delivering a copy of the summons and the complaint to the individual personally, or by leaving a copy at the individual's dwelling house or usual place of abode with some person of suitable age and discretion there residing, or by delivering a copy of the summons and the complaint to an agent authorized by appointment or by law to receive service of process . . . .**

Utah R.C.P. 4(d)(1)(A). Service is effective:

**Upon any corporation not herein otherwise provided for, upon a partnership or upon an unincorporated association which is subject to suit under a common name, by delivering a copy of the summons and the complaint to an officer, a managing or general agent, or other agent authorized by**

> **appointment or by law to receive service of process and, if the agent is one authorized by statute to receive service and the statute so requires, by also mailing a copy of the summons and the complaint to the defendant. If no such officer or agent can be found within the state, and the defendant has, or advertises or holds itself out as having, an office or place of business within the state or elsewhere, or does business within this state or elsewhere, then upon the person in charge of such office or place of business; . . . .**

Utah R.C.P. 4(d)(1)(E). Furthermore, Utah Code §42-2-11(1)(a) provides:

> **(1) (a) Any person conducting or transacting business in this state under an assumed name under this chapter shall, for service of process purposes, comply with and be subject to Sections 16-10a-501 through 16-10a-504, as though he were a corporation.**

In other words, a sole proprietor who does business under an "assumed name," such as "Lexington Law Firm," may be served in the same manner as a corporation. See generally Bonneville Billing & Collection v. Johnston, 987 P.2d 600, 601 (Utah1999). "The statute is not a shield intended to protect persons operating under an assumed name but operates rather to protect those who do business with such persons." Id.

Consequently, under Utah law, delivery of the summons and complaint by the sheriff of Salt Lake County, Utah to the person at "Lexington Law Firm" in charge of receiving papers was sufficient.

Similarly, under Illinois law delivery of the summons and complaint to an employee of defendant whose responsibilities included receiving papers is sufficient. The "fact that process was served upon the 'secretary on duty' of company did not invalidate such service upon defendant, owner of the company, a sole proprietorship . . . ." A-Z Equipment Co. v. Moody, 88 Ill. App. 3d 187, 410 N.E.2d 438 (1st Dist.1980); accord, Schmitt v. Schmitt, 01 C 4028, 2002 WL 109359, *3 (N.D. Ill. Jan 28, 2002), aff'd, 02-1470 and 02-1471, 2003 WL

1479091 (7th Cir. Mar. 25, 2003).

The defendant has the burden of showing that the receptionist at a law firm is not a proper person to receive legal documents. Island Terrace Apartments v. Keystone Service Co., Division of Cole Coin Operated Laundry Equipment, Inc. (Keystone-Cole), 35 Ill. App. 3d 95, 341 N.E.2d 41 (1st Dist. 1975). Defendant does not meet that burden simply by stating that a receptionist is a "low level" employee, for that does not negate the fact that the ordinary duties of a receptionist at a law firm include the reception of important legal papers and providing them to the correct person. Id.; People v. Beaulieu Realtors, Inc., 144 Ill. App. 3d 580, 494 N.E.2d 504, 507 (1st Dist. 1986). The fact that defendant's employee accepted the papers and that defendant did, in fact, receive timely notice of the lawsuit, supports the inference of authority. Id.

Thus, the owner of "Lexington Law Firm" was validly served.

## IV. THIS COURT HAS PERSONAL JURISDICTION OVER DEFENDANT

Defendant next argues that the Court lack personal jurisdiction over him. However, personal jurisdiction exists if defendant "could be subjected to the jurisdiction of a court of general jurisdiction in the state in which the district court is located." Fed. R. Civ. P. 4(k)(1). The relevant Illinois statute is 735 ILCS 5/2-209.

Because Illinois' long-arm statute extends to the "limit allowed by the Constitution of the United States" and the Illinois Constitution, the inquiry becomes whether defendant can constitutionally be subjected to jurisdiction in the state of Illinois. Janmark, Inc. v. Reidy, 132 F.3d 1200, 1202 (7th Cir.1997); RAR, Inc. v. Turner Diesel, Ltd., 107 F.3d 1272, 1276 (7th Cir.1997). In order to comport with due process, defendant "must have 'minimum contacts' with Illinois such that maintaining a lawsuit here would not offend 'traditional notions

of fair play and substantial justice.'" International Shoe Co. v. Washington, 326 U.S. 310, 316 (1945); Karraker v. Rent-A-Center, Inc., 239 F. Supp. 2d 828, 840 (C.D. Ill. 2003); International Truck and Engine Corp. v. Dow-Hammond Trucks Co., 221 F. Supp. 2d 898, 901 (N.D. Ill. 2002). In discussing minimum contacts, the United States Supreme Court has stated that a defendant's contacts with the state must be "such that he should reasonably anticipate being haled into court there." World Wide Volkswagen Corp. v. Woodson, 444 U.S. 286, 287 (1980). If a defendant seeks to serve, directly or indirectly, the market for its products or services in a given state, it is not unreasonable to subject it to suit in that state for claims arising out of the furnishing of the products or services there. World Wide, 444 U.S. at 297.

**Defendant's Multiple Contacts With Plaintiff, an Illinois Resident**

Plaintiff, Christopher Iosello resides in Chicago, Illinois. (Iosello Decl. ¶ 1) During 2002, Mr. Iosello contracted with the Lexington Law Firm for credit repair services. Mr. Iosello saw the Web site maintained by the Lexington Law Firm, and entered into the contract by filling in information called for by a form on the Lexington Law Firm Web site and transmitting it by e-mail to the Lexington Law Firm. (Iosello Decl. ¶ 2) Plaintiff then communicated with Lexington Law Firm on a number of occasions, by both telephone and e-mail. (Iosello Decl. ¶ 3) Plaintiff spoke with Robert Bingham, of Lexington Law Firm, on the telephone, at least twice, regarding his account. (Iosello Decl. ¶ 4) On one occasion, when Mr. Bingham was on vacation, Plaintiff spoke with a woman at Lexington Law Firm regarding plaintiff's account. (Iosello Decl. ¶ 5) In addition to those telephone calls, plaintiff had several communications with Lexington Law Firm via e-mail. Copies of those communications are attached to plaintiff's declaration (Plf. Decl., Exhibs. 1-4). (Iosello Decl. ¶ 6) Plaintiff was dissatisfied with Lexington