IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF CONNECTICUT
HARTFORD DIVISION

| | |
|---|---|
| MICHELLE GOKTEPE,<br><br>Plaintiff,<br><br>v.<br><br>VICTOR LAWRENCE, d/b/a/ LEXINGTON LAW FIRM,<br><br>Defendant. | **REPLY MEMORANDUM IN SUPPORT OF MOTION FOR PROTECTIVE ORDER**<br><br><br>Case No. 3:03CV0089<br><br>Honorable Judge Kravitz |

Defendant Victor Lawrence submits this reply memorandum in support of his Motion for Protective Order pursuant to D. Conn. L. Civ. R. 7(d).[1]

---

[1] Ms. Goktepe argues the protective order should be denied as "belated." Plaintiff's Opposition to Motion for Protective Order (hereinafter "Plaintiff's Opp.") at 1. On September 19, 2003, the Court granted Mr. Lawrence's motion to extend time to respond to Ms. Goktepe's motion to compel.
  Further, the cases cited by Ms. Goktepe are distinguishable. She cites to Davis v. Fendler, 650 F.2d 1154, 1160 (9th Cir. 1981) for the proposition that a "confidentiality objection [is] waived by failure timely to seek protective order." Davis was distinguished by the Second Circuit in In re D.G. Acquisition Corp. (DG Acquisition Corp. v Dabah), 151 F.3d 75 (2nd Cir. 1998) (see also, other cases cited therein). The Davis court found Fendler had engaged in "various discovery abuses," and never responded to letters from opposing counsel regarding discovery. Id. at 84. Even if Ms. Goktepe were correct in her allegation that Mr. Lawrence could not rest on the objections in his responses to her discovery requests, he has not been involved in discovery abuses, nor did he fail to respond to any communication from Ms. Goktepe. Further, the Davis court did not find that Fendler had waived his objections, but found that he had failed to support them. Id. Mr. Lawrence objected to the discovery requests and made adequate showings regarding his objections as soon as he knew of Ms. Goktepe's motion to compel.
  Peat Marwick Mitchel & Co. v. West, 748 F.2d 540 (10th Cir. 1984) has been distinguished on similar grounds. In Mason C. Day Excavating, Inc. v. Lubmermens Mutual Casualty Co., 143 F.R.D. 601 (M.D.N.C. 1992), the court held that a privilege was preserved when it was asserted in response to a motion to compel.
  Thus, the motion for a protective order was not "belated."

The Courts have acknowledged that the practice of law involves a commercial aspect. Bates v. State Bar of Arizona, 433 U.S. 350, 97 S.Ct. 2691, 53 L.Ed.2d 810 (1977). It is not surprising, then, that courts have found that a law firm's confidential commercial information and trade secrets are protected by the Rule 26(c)(7). In Moll v. U.S. Life Title Ins. Co. of New York, (S.D.N.Y. 1987), the Southern District of New York found that an abstract produced by a law firm was protected by Rule 26(c)(7). In Lucido v. Cravath, Swaine & Moore, 25 Fed. R. Serv. 2d (Callaghan) 1050 (S.D.N.Y. 1977), the court found the Defendant law firm had not presented evidence that information requested was confidential commercial information, but identified no reason that, if such evidence had been presented, the information would not have been protected by Rule 26(c)(7) solely because it was owned by a law firm.

Ms. Goktepe is outraged that Mr. Lawrence asserts that her lawyer is Mr. Lawrence's competitor. Plaintiff's Opposition to Motion for Protective Order at 2;[2] see also, Decl. of Rhiannon Lawrence, ¶¶ 15-25. Notwithstanding her protests, Ms. Goktepe has presented no evidence that Ms. Faulkner does not compete with Mr. Lawrence. In this very case, Ms. Goktepe's counsel has competed against Mr. Lawrence. Decl. of Rhiannon Lawrence, ¶¶ 19-24. Ms. Goktepe retained Mr. Lawrence and Ms. Faulkner for the same purpose: to help Ms. Goktepe remove false or misleading information from her credit report.[3] Thus, one of Mr.

---

[2] Ms. Goktepe argues that by asserting that Ms. Faulkner is Mr. Lawrence's competitor, he acknowledges he is engaged in the unauthorized practice of law in Connecticut. Plaintiff's Opp. at 2. Mr. Lawrence does not render legal services in Connecticut and is therefore not engaged in the unauthorized practice of law in Connecticut. See, Taft v. Amsel, 23 Conn. Supp. 225, 226, 180 A.2d 756, 756 (Conn. 1962).

[3] Ironically, if Ms. Goktepe were correct in alleging that CROA applies to lawyers who help clients repair their credit, Ms. Faulkner would be a "credit repair organization" governed by

2

Lawrence's clients is now the client of Ms. Faulkner; Ms. Faulkner seeks, through discovery requests on behalf of Ms. Goktepe, financial and administrative information from Mr. Lawrence that would erode his ability to compete against her for clients seeking to remove inaccurate or misleading information.[4] Decl. of Rhiannon Lawrence, ¶¶ 5-13.

Further, Ms. Faulkner has actively attempted to prevent Mr. Lawrence from competing with her by seeking to exclude him from national consumer advocacy associations, including by filing this law suit. Decl. of Rhiannon Lawrence, ¶¶ 26-54.

In short, Ms. Goktepe's unsupported statements that Ms. Faulkner does not compete against Mr. Lawrence run counter to the evidence before the court.

Ms. Goktepe asserts that confidentiality orders or agreements are disfavored. Plaintiffs Opp. at 3. Wright & Miller, however, disagree.

> One distinguished judge noted in 1981 that he was "unaware of any case in the past half-dozen years of even a modicum of complexity where an umbrella protective order . . . has not been agreed to by the parties and approved by the Court. Protective orders have been used so frequently that a degree of standardization is appearing."

Wright, Miller & Marcus, Federal Practice and Procedure: Civil 2d § 2035, quoting Zenith

---

CROA. 15 U.S.C. 1679a. It would be interesting to review the retainer agreement between Ms. Goktepe and Ms. Faulkner for violations of CROA.

[4] Ms. Goktepe argues that "No four-lawyer firm [Lexington Law Firm actually employs six attorneys] could handle tens of thousands of clients annually, as defendant purports to do." Reply in Support of Motion to Compel at 1. Lexington Law Firm handles its volume of very similarly situated clients through the use of the very trade secrets and confidential commercial information sought by Ms. Goktepe. A lawyer can remain sufficiently involved although the acts are done "by delegation of part of the review process to a paralegal or even to a computer program." Boyd v. Wexler, 275 F.3d 642, 647 (7th Cir. 2001). Further, "In an age of specialization, professionals are not to be criticized for identifying subroutines that paraprofessionals can adequately perform under a professional's supervision." Id.

3

Radio Corp. v. Matsushita Elec. Indus. Co., 529 F.Supp. 866, 889 (D.C.Pa. 1981) (per Becker, J.); see also, Standard Chlorine of Delaware, Inc. v. Sinibaldi, 821 F.Supp. 232 (D.Del. 1992) (Umbrella confidentiality order would best serve interests of just, prompt and efficient resolution of this complex action).

Ms. Goktepe argues that there is a presumption in favor of public access to discovery materials. Plaintiff's Opp. at 3-4. The Second Circuit recently refuted this notion in SEC v. TheStreet.Com, 273 F.3d 222 (2nd Cir. 2001).

> [P]rotective orders issued under Rule 26(c) serve "the vital function . . . of 'securing the just, speedy, and inexpensive determination' of civil disputes . . . by encouraging full disclosure of all evidence that might conceivably be relevant. This objective represents the cornerstone of our administration of civil justice." Id. at 295 (citations omitted). Without an ability to restrict public dissemination of certain discovery materials that are never introduced at trial, litigants would be subject to needless "annoyance, embarrassment, oppression, or undue burden or expense."

Id. at 229. See also, Seattle Times Co. v. Rhinehart, 467 U.S. 20, 35-36, 81 L.Ed.2d 17, 104 S.Ct. 2199 (1984) (without protective orders, individuals may forgo the pursuit in just claims, "resulting in frustration of a right as valuable as that of speech itself."). The Second Circuit went on to note that the notion that In Agent Orange Prod. Liability Litigation, 821 F.2d 139 (2nd Cir. 1987) established a presumption that discovery materials should be publically available is incorrect. 273 F.3d at 231, n. 9; see also, United States v. Amodeo, 71 F.3d 1044, 1050 (2d Cir. 1995) (no presumption of public access for discovery documents). Excluding the public from litigation documents is particularly justified when, as here, the documents contain trade secrets. 273 F.3d at 231, n. 10; see also, Decl. of Rhiannon Lawrence, ¶¶ 5-13. Additionally, Agent

4

Orange was partially overruled by amendments to Fed. R. Civ. Pro. 5(d). 273 F.3d at 233, n. 11. Thus, Ms. Goktepe was wrong when she argued that there is a presumption of public access to the discovery materials in this case.

While Ms. Goktepe has carefully collected archaic and arcane cases that articulate the standards for avoiding discovery of confidential commercial information and trade secrets in the most stringent manner, she fails to apply those standards, or any other statement of the rules, to the facts at hand. Mr. Lawrence has presented good cause for granting a protective order. He has identified a clearly defined and very serious injury: that disclosure would put his trade secrets and other confidential commercial information in the hands of his competitor.[5] He has shown that such a disclosure would seriously harm his business and erode his competitive advantage by identifying his trained employees, by disclosing the number of clients he services, and by disclosing detailed information regarding management of his practice, including trade secrets, which he has a legal duty not to disclose. Mr. Lawrence has described in detail the information to be protected and the harm that would occur if the information were disclosed to Ms. Faulkner.

## CONCLUSION

Because disclosure of the identity of Defendant's clients would violate the attorney/client privilege and because Plaintiff's current counsel is a competitor of Defendant and has requested

---

[5] Ms. Goktepe cites Kewanee Oil Co. v. Bicron Corp., 416 U.S. 470, 476, 94 S.Ct. 1879, 40 L.Ed.2d 315 (1973) for the proposition that a trade secret requires novelty. Reply Supporting Motion to Compel at 2. However, in Worthington Compressors, Inc. v. Costle, 662 F.2d 45 (D.C.Cir. 1981), the court noted that the Kewanee decision distinguished the scope of protection of patent laws as compared to trade secret laws and, consequently, "simply has no bearing on the definition of a 'trade secret' (or 'confidential commercial information') for our purposes." 662 F.2d at 53.

confidential commercial information, a protective order should issue that the confidential information of Lexington Law Firm, including its client list, IT information, and financial information, not be disclosed so long as Ms. Goktepe is represented by a competitor of Mr. Lawrence and that trade secrets not be disclosed at all.

DATED this 4th day of November, 2003.

ATKIN & HAWKINS, P.C.

_____
Blake S. Atkin CT24726
Lonn Litchfield CT24727
Attorneys for Victor Lawrence
136 South Main Street, 6th Floor
Salt Lake City, UT 84101
Tel. (801) 533-0300
Fax (801) 533-0380

Local counsel:
Richard H.G. Cunningham # CT15195
12 Kenilworth Drive East
Stamford, CT 06902
Tel. (203) 348-9958
Fax (203)324-6039

6

## CERTIFICATE OF SERVICE

I hereby certify that true and correct copies of the foregoing REPLY MEMORANDUM IN SUPPORT OF MOTION FOR PROTECTIVE ORDER was mailed first class, postage prepaid on this the 4th day of ~~October~~ November, 2003 to the following:

Joanne S. Faulkner
123 Avon St.
New Haven, CT 06511-2422