UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

MICHELLE GOKTEPE

v.  CASE NO. 3:03CV 0089 (MRK)

VICTOR LAWRENCE d/b/a/ LEXINGTON LAW FIRM    May 6, 2004

PLAINTIFF'S OPPOSITION TO SECOND MOTION TO DISMISS

Plaintiff brought this action under the Credit Repair Organizations Act ("CROA"), 15 U.S.C. § 1679-1679j, and other applicable laws, asserting that Defendant engaged in misleading, unfair or deceptive acts in the conduct of his credit repair business. Congress enacted the CROA in part "to protect the public from unfair or deceptive advertising and business practices by credit repair organizations." § 1679(b)(2). Because of well-known abuses, thirty eight states have also enacted laws restricting credit repair operations, including Connecticut.

Defendant's second motion to dismiss is based entirely on assertions which he could have made in his initial motion to dismiss.[1] He claims (1) defendant's post-suit refund of the amount plaintiff paid to defendant renders her without standing; (2) plaintiff has not pleaded fraud with particularity. Plaintiff disagrees with both claims.

Plaintiff has standing despite the post-suit refund, since (1) she still has sustained actual damages and (2) in any event, CROA's statutory damages are available without regard to actual damages. Plaintiff has not pled fraud because she does not rely on that aspect of

---

[1] Fed. R. Civ. P. 12(g) provides, "If a party makes a motion under this rule but omits therefrom any defense or objection then available to the party which this rule permits to be raised by motion, the party shall not thereafter make a motion based on the defense or objection so omitted, except a motion as provided in subdivision (h)(2) hereof on any of the grounds there stated."

the CROA. She is, therefore, not subject to the heightened pleading standard of Rule 9(b). Moreover, defendant's motion is improper because it relies on documents outside the complaint.

BACKGROUND: THE CONSUMER PROTECTIONS OF THE CROA

Congress enacted the CROA because "Certain advertising and business practices of some companies engaged in the business of credit repair services have worked a financial hardship upon consumers, particularly those of limited economic means and who are inexperienced in credit matters." §1679(a)(2).    Plaintiff fits the description exactly. Congress intended "to protect the public from unfair or deceptive advertising and business practices by credit repair organizations." §1679(b)(2).

> Congress had recognized the abuses by many of the newly emerging credit repair clinics well before it finally enacted the CRO Act in 1996. In 1988, Representative Frank Annunzio described these businesses as "kin to `get rich quick' schemes. They promise fast results and new-found wealth in the form of available credit."

FTC v. Gill, 265 F.3d 944, 949 (9th Cir. 2001) (sanctions against lawyer operating credit repair clinic in violation of CROA).

> As Americans' reliance on credit has increased, so-called "credit repair clinics" have emerged, preying on individuals desperate to improve their credit records. These organizations typically promise they can have any negative information removed permanently from any credit report . . . for a fee. On September 30, 1996, Congress enacted the Credit Repair Organizations Act ("CRO Act"), 15 U.S.C. §§ 1679-1679j, to ensure that the clinics provide potential customers with the information needed to decide whether to employ the services of such an organization and "to protect the public from unfair or deceptive advertising and business practices by credit repair organizations." 15 U.S.C. § 1679(b).

Id. at 947.

DEFENDANT'S MOTION IS PROCEDURALLY IMPROPER

Defendant appended his internal documents which have not otherwise been provided to plaintiff in discovery, despite repeated requests. However, on a motion to dismiss, the Court does not consider matters outside the complaint. Goldman v. Belden, 754 F.2d 1059, 1067 (2d Cir. 1985). Rather, on a motion to dismiss, the material facts alleged in the complaint are accepted as true. Cohen v. Koenig, 25 F.3d 1168, 1171-72 (2d Cir. 1994). In deciding a motion to dismiss, all reasonable inferences must be drawn in the plaintiff's favor. See Gant v. Wallingford Bd. of Educ., 69 F.3d 669, 673 (2d Cir. 1995). The court's function on a motion to dismiss is "not to weigh the evidence that might be presented at trial but merely to determine whether the complaint itself is legally sufficient." Goldman, 754 F.2d at 1067. A motion to dismiss should be granted only if it appears that "the plaintiff can prove no set of facts in support of his claim that would entitle him to relief." Conley v. Gibson, 355 U.S. 41, 45-46 (1957).

REFUND OF THE AMOUNT PAID DOES NOT DEPRIVE PLAINTIFF OF STANDING

Defendant argues that his refund of the retainer amount after suit was filed supplies all the relief that plaintiff can obtain under the CROA.[2] The statute's plain language belies defendant's contention that plaintiff is limited to her refund. Under §1679g(a), she can obtain actual damages, if they are greater than the refund. She can obtain an "additional amount" even without actual damages, "equal to the sum of " actual damages (which can be zero) plus the additional amount.

---

[2] Defendant does not disclose that the refund was authorized only after Rule 4 mail service was accomplished (January 16, 2003) as set forth in Doc. No. 11. Nor does defendant disclose that he refused plaintiff's Nov. 18, 2002, request for a refund (Def. Ex. D, Record 8 of 32).

3

**CROA 15 U.S.C. § 1679g. Civil liability**

**(a) Liability established.**—Any person who fails to comply with any provision of this subchapter with respect to any other person shall be liable to such person in an amount equal to the sum of the amounts determined under each of the following paragraphs:
  **(1) Actual damages.**—The greater of—
      **(A)** the amount of any actual damage sustained by such person as a result of such failure; or
      **(B)** any amount paid by the person to the credit repair organization.

  **(2) Punitive damages**
      **(A) Individual actions.**—In the case of any action by an individual, such additional amount as the court may allow.
      **(B) Class actions.**—In the case of a class action, the sum of—
. . . .
  **(3) Attorneys' fees.**—In the case of any successful action to enforce any liability under paragraph (1) or (2), the costs of the action, together with reasonable attorneys' fees.

**(b) Factors to be considered in awarding punitive damages.**—
In determining the amount of any liability of any credit repair organization under subsection (a)(2), the court shall consider, among other relevant factors—
  **(1)** the frequency and persistence of noncompliance by the credit repair organization;
  **(2)** the nature of the noncompliance;
  **(3)** the extent to which such noncompliance was intentional; and
  **(4)** in the case of any class action, the number of consumers adversely affected.

Under the plain language of the CROA, plaintiff can obtain actual damages, not limited to the alternative amount paid. 1679g(a)(1). Plaintiff may also recover an "additional amount" pursuant to §1679g(a)(2). The "additional amount" is based on the statutory factors listed in §1679g(b). Defendant's argument that there must be actual damages in order to award statutory damages finds no support in the statutory language. To the contrary, the Second Circuit has specifically held that actual damages are not a precondition to the recovery of statutory "additional" damages under the Fair Debt Collection Practices Act ("FDCPA"). Clomon v Jackson, 988 F.2d 1314, 1322 (2d Cir. 1993) (interpreting "additional amount" allowed under the FDCPA). Clomon controls here because the "additional amount" provision of the CROA precisely parallels the "additional amount" provision of the FDCPA, 15 U.S.C. § 1692k(a)(2)(A) and –(b)(1).

4

**FDCPA 15 U.S.C. § 1692k. Civil liability**

**Amount of damages**
(a) Except as otherwise provided by this section, any debt collector who fails to comply with any provision of this subchapter with respect to any person is liable to such person in an amount equal to the sum of—
  (1) any actual damage sustained by such person as a result of such failure;
  (2)(A) in the case of any action by an individual, such additional damages as the court may allow, but not exceeding $1,000; or
    (B) in the case of a class action, . . .
  (3) in the case of any successful action to enforce the foregoing liability, the costs of the action, together with a reasonable attorney's fee as determined by the court. . . .
**Factors considered by court**
(b) In determining the amount of liability in any action under subsection (a), the court shall consider, among other relevant factors—
  (1) in any individual action under subsection (a)(2)(A), the frequency and persistence of noncompliance by the debt collector, the nature of such noncompliance, and the extent to which such noncompliance was intentional; or . . .

Thus, under the plain language of the CROA, the same language ruled on by the Second Circuit in <u>Clomon</u>, defendant's refund does not give plaintiff all the relief she can obtain because "additional damages" are available without regard to the refund.[3]

Plaintiff has sustained actual damages separate from the belatedly-refunded payments she made. The CROA allows a plaintiff to recover actual damages: the <u>greater</u> of "the amount of any actual damage sustained by such person as a result of such failure" or "any amount paid by the person to the credit repair organization." Defendant's own documents, albeit improper in a motion to dismiss, confirm the mandatory inference in her favor that there is a "set of facts" under which she can get actual damages in excess of the refund.

---

[3] The only difference between the FDCPA and the CROA is the caption "punitive," a textual insertion with no significance. The captions, added by the codifiers, use the word "punitive" to describe CROA's "additional amount." However, Congress has forbidden any reliance on captions in the interpretation of the entire Consumer Credit Protection Act of which the CROA is part. Section 502 of Pub. L. 90-321 provided that "captions and catchlines are intended solely as aids to convenient reference, and no inference as to the legislative intent with respect to any provision enacted by this Act may be drawn from them."  See note following 15 U.S.C. § 1601; <u>Brady v. The Credit Recovery Company, Inc.</u>, 160 F.3d 64, 66 (1st Cir. 1998). Moreover, the CROA and the FDCPA themselves differ from the Fair Credit Reporting Act (15 U.S.C. § 1681n) and the Equal Credit Opportunity Act (15 U.S.C. § 1691e(b)) wherein the text of the latter statutes, not merely the caption, refers to "punitive" damages.

Defendant's improperly attached documents reveal that plaintiff charged the defendant's fees to her credit card, and was without the use of the funds for more than three months. Defendant's documents raise an inference in her favor that she also paid interest to her credit card company on the amount of his fees. She is entitled to compensation for the loss of use of the funds. The "greater" amount is not simply a return of the $110.

<u>PLAINTIFF DID NOT ASSERT FRAUD AND NEED NOT PLEAD FRAUD</u>

There is no allegation of fraud in the complaint. Thus, defendant's assertion that the complaint should be dismissed for failure to plead fraud with particularity is without merit. The CROA prohibits deceptive or misleading practices and untrue statements. Only one CROA subparagraph also prohibits engaging in committing or attempting to commit fraud. §1679b(a)(4). Plaintiff did not plead and is not pursuing the disjunctive fraud provision.

**§ 1679b. Prohibited practices**

**(a) In general.**—No person may—
  **(1)** make any statement, or counsel or advise any consumer to make any statement, which is untrue or misleading (or which, upon the exercise of reasonable care, should be known by the credit repair organization, officer, employee, agent, or other person to be untrue or misleading) with respect to any consumer's credit worthiness, credit standing, or credit capacity to—
    **(A)** any consumer reporting agency (as defined in section 1681a(f) of this title); or
    **(B)** any person—
      **(i)** who has extended credit to the consumer; or
      **(ii)** to whom the consumer has applied or is applying for an extension of credit;
  **(2)** make any statement, or counsel or advise any consumer to make any statement, the intended effect of which is to alter the consumer's identification . . .
  **(3)** make or use any untrue or misleading representation of the services of the credit repair organization; or
  4) engage, directly or indirectly, in any act, practice, or course of business that constitutes or results in the commission of, or an attempt to commit, a fraud or deception on any person in connection with the offer or sale of the services of the credit repair organization.
**(b) Payment in advance.**—No credit repair organization may charge or receive any money or other valuable consideration for the performance of any service which the credit repair organization has agreed to perform for any consumer before such service is fully performed.

The crux of the prohibitions is the use of the terms untrue, misleading, and deception. The term deception is used as an alternative to fraud in §1679b(a)(4). Plaintiff has chosen the

6

"deception" alternative. The terminology of misleading or deceptive parallels the FTC Act and CUTPA. Guided by decisions under the FTC Act,[4] CUTPA does not require a showing of actual deception, but merely a tendency and capacity to deceive. <u>Hinchliffe v. American Motors Corp.</u>, 39 Conn. Supp. 107, 120 (1982). In particular, to recover under CUTPA, a plaintiff need not prove that defendant committed fraud. <u>Lester v. Resort Camplands Int'l, Inc.</u>, 27 Conn. App. 59, 71, 605 A.2d 550 (1992).

As confirmed by Congress's use of the disjunctive in the single subparagraph of the CROA which uses the word fraud ("fraud or deception"), an act or course of conduct can be deceptive or misleading without also being fraudulent. The latter bears a more stringent level of pleading and proof as to such elements as intent and reliance. Plaintiff has not alleged fraud and did not intend to do so. The securities cases cited by defendant are dissimilar in language, purpose, and intent from the CROA.

Congress provided statutory damages and attorney's fees to the consumer to encourage her to act as a "private attorney general." Compare <u>Graziano v. Harrison</u>, 950 F.2d 107, 113-14 (3d Cir. 1991) (FDCPA "mandates an award of attorney's fees as a means of fulfilling Congress's intent that the Act should be enforced by debtors acting as private attorneys general"). To superimpose a nonstatutory requirement of pleading fraud contravenes the purpose and intent of the CROA to encourage private attorneys general to weed out the violators.

Plaintiff has not pleaded fraud and did not intend to do so. She relies on violations of prophylactic provisions of the CROA and its prohibition of misleading or deceptive practices.

---

[4] Deception, not fraud, is the standard. <u>FTC v. Algoma Lumber Co.</u>, 291 U.S. 67 (1934); <u>Charles of the Ritz v. FTC</u>, 143 F.2d 676 (2d Cir. 1944)

## CONCLUSION

For the reasons above stated, defendant's second motion to dismiss should be denied.

THE PLAINTIFF

BY____/s/ Joanne S. Faulkner___
JOANNE S. FAULKNER ct04137
123 Avon Street
New Haven, CT 06511-2422
(203) 772-0395
j.faulkner@snet.net

This is to certify that the foregoing was mailed on May 5, 2004, postage prepaid, to:

Richard H.G. Cunningham
12 Kenilworth Drive East
Stamford CT 06902

Blake Atkin
136 S Main St 6th fl
Salt Lake City UT 84101

__/s/ Joanne S. Faulkner____
Joanne S. Faulkner