IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF CONNECTICUT
NEW HAVEN DIVISION

| | |
|---|---|
| MICHELLE GOKTEPE,<br><br>Plaintiff,<br><br>v.<br><br>VICTOR LAWRENCE, d/b/a/ LEXINGTON LAW FIRM,<br><br>Defendant. | Case No. 3:03CV0089-MRK<br><br>Honorable Judge Mark R. Kravitz |

## MEMORANDUM IN OPPOSITION TO PLAINTIFF'S MOTION FOR SETTLEMENT CONFERENCE

I.   Introduction[1]

Plaintiff Goktepe's ("Goktepe") "Memorandum Re Settlement Conference" ("Memorandum") (undated but certified as mailed to defendant on June 26, 2004) nakedly misrepresents to the court that she and Defendant Victor Lawrence ("Lawrence") have settled the case at bar. They have not settled. Goktepe's Motion for Settlement Conference ("Motion") also misleads regarding the nature of the settlement communications between Goktepe and Lawrence and borders on a "lack of candor" to the court.[2] Lawrence has consistently sought a comprehensive settlement and Goktepe has consistently attempted to "cherry pick" selective portions of same, in the process rejecting the settlement dollar amount that *she* proposed. The

---

[1] This document is Lawrence's response to Goktepe's Motion for Settlement Conference, and does not constitute, and may not be construed to constitute, a settlement offer of any kind.
[2] The Memorandum provided a one-sided, incomplete and distorted picture of the settlement communications that occurred between May 27, 2004 and June 24, 2004, the time period related to the Motion. The Memorandum omitted all of Lawrence's counsel's four substantive communications on this matter. Each of these four documents is attached hereto as an exhibit.

settlement discussions have never been as close to settlement as the Motion leads the court to believe.

Further, the Motion and the Memorandum (collectively the "pleadings") illustrate the absence of good faith that has characterized Goktepe's approach to settlement since late May of this year:

    (1.)    the pleadings place into the public record the dollar amount, and other terms, that Lawrence was at one time willing to conditionally consider in settling, many of these terms, including the dollar amount, Lawrence sought to protect from disclosure through the confidentiality term of his proposed settlement agreement, and which are almost always *conventionally* required to be kept confidential as part of a settlement; and

    (2.)    Goktepe transparently seeks to impose upon Lawrence the costs of traveling to Connecticut for a settlement conference to further discuss Goktepe's unreasonable and bad faith settlement position, a position that Lawrence has already clearly communicated to Goktepe is unacceptable; and

    (3.)    Goktepe's failure to settle for the amount she proposed may reflect that Faulkner's interests, not Goktepe's interests, are driving Goktepe's settlement negotiations.

After providing an accurate description of the factual background of the settlement discussions and status of the case at bar, and the nature of the negotiations to date, this Memorandum in Opposition will address the Memorandum's legal arguments. It concludes by requesting the Court to deny the Motion and, in the alternative, to conduct the settlement conference by teleconference.

II.     Goktepe's Misrepresentation

In the opening sentence of the Memorandum, Goktepe claims that "On May 28, 2004 the parties reached an agreement to settle the matter for a sum certain, mutual releases, and dismissal." The falsity of this claim is illustrated by Goktepe's counsel's ("Faulkner") email letter dated May 28, 2004, included in the materials filed with the Memorandum, and attached hereto as Exhibit A: "This is to confirm that we have agreed on defendant paying $30,000 *subject to negotiation of conditions* which an unidentified attorney may or may not want to include in the settlement other than dismissal and mutual releases." (Emphasis added). *See also* Lawrence's counsel's ("Atkin") May 28, 2004 email letter, attached hereto as Exhibit B, agreeing to a "conditional settlement," under conditions to be drafted and negotiated later, in reply to Faulkner's email letter attached hereto as Exhibit C.[3]

Clearly, on May 28 there was no binding settlement agreement. As of May 28, Lawrence had *explicitly* reserved his consent to a binding settlement until his settlement conditions could be drafted, transmitted to Goktepe, and then agreed to by both parties and Goktepe had *explicitly* confirmed this arrangement.

In misstating Goktepe's claim of settlement on May 28, the Memorandum *selectively emphasized* important items which overlapped Goktepe's May 28, 2004 email offer to settle for $30,000 and Lawrence's June 2, 2004 proposed Settlement Offer, and *selectively omitted* equally important items on which the parties failed to agree. The items selectively omitted by the

---

[3]     Goktepe's claim that the parties settled on May 28, 2004 is also belied by plaintiff's conduct in continuing to prepare for trial as late as July 8-9, 2004, the days Goktepe deposed Lawrence and Goktepe sat for her deposition by Lawrence. Goktepe conducting, and sitting for, these depositions in the second week of July contradicts her claim that she obtained a settlement agreement on May 28.

3

Memorandum were proposed by Lawrence in his proposed Settlement Agreement and Mutual Release of Claims ("June 2nd Proposed Settlement"), transmitted by his counsel's June 2, 2004 letter. The June 2 letter and the June 2nd Proposed Settlement are attached hereto as Exhibit D.

The omitted items consisted of the following *conventional* settlement terms: (1) no defamation, (2) confidentiality, (3) Goktepe's covenant not pursue or assist others in pursuing further disputation, (4) substantive language regarding both parties agreeing to the settlement on the basis of advice of counsel, (5) an integration clause, (6) allocation of the party's attorney's fees, venue and governing law provisions if litigation to enforce the settlement is later required, (7) substantive representations and warranties, regarding, among other things, Goktepe's full and unconditional "ownership" of the damage claims asserted in the lawsuit, and (8) no modification or waiver of the agreement except in a writing signed by both parties (collectively the "conventional settlement terms"). The omitted items consisted of one additional term, associated with the confidentiality term: the return of all documents produced to plaintiff by defendant and a certification to that effect. The reason for this item will be discussed below.

After May 28, the parties each communicated further settlement proposals. *See* Faulkner's June 3, 2004 email letter transmitting Goktepe's proposed June 3rd Settlement Agreement, attached hereto as Exhibit E; Atkin's June 4, 2004 letter transmitting Lawrence's proposed June 4th Settlement Agreement, attached hereto as Exhibit F; Faulkner's June 8, 2004 email letter rejecting Lawrence's proposed June 4 Settlement Agreement, attached hereto as Exhibit G; Faulkner's June 17, 2004 email letter transmitting Goktepe's proposed June 14th Settlement Agreement, attached hereto as Exhibit H; and Atkin's June 24, 2004 email letter, rejecting Goktepe's proposed June 14 Settlement Agreement, attached hereto as Exhibit I

(collectively the "post-May 28 settlement proposals").[4]

In the post-May 28 settlement proposals, Lawrence continued to propose the conventional settlement terms and Goktepe continued to reject them. Indeed, that is the current posture of the parties' settlement positions as this time. Early in the settlement communications, Lawrence *accommodated* Goktepe's substantive demand that any final settlement agreement be subject to Connecticut law and litigated for enforcement, if necessary, in Connecticut. Throughout the discussions, Goktepe's posture has been to rigidly refuse all of Lawrence's proposals. This has caused the distance between the parties' settlement positions to widen, not narrow, as good faith settlement negotiations generally do, such that Lawrence has explicitly taken the $30,000 settlement payment amount off the table. *See* Exhibit I at 1.

In summary, as the court can see by the discussion above and the attached exhibits, the Motion and Memorandum failed to fully, fairly and candidly disclose to the court the fundamental lack of any settlement agreement among the parties, on May 28, 2004, or at any time thereafter, up to and including the present.

III.  Goktepe's Anomalous and Insurmountable Obstacles to Settlement

Lawrence is perplexed by Goktepe's willingness to forfeit $30,000 so that she can continue to reject Lawrence's proposed conventional settlement terms. While all of those terms are required by Lawrence for any settlement of this case, two of the conventional settlement terms are particularly astonishing and critical to the discussion here: defamation and confidentiality.

---

[4] Lawrence believes that the exhibits attached hereto, together with the partial and selective materials Goktepe filed with the Memorandum, provide the court with a full, true and accurate understanding of the current posture of the settlement discussions and their immediate history.

5

Goktepe has, in part, rejected the payment of the $30,000 *she* proposed so that she can retain the ability *both* (i) to *defame* Lawrence *and* (ii) to *publicize any sensitive information*[5] she may obtain through the course of the instant litigation. Lawrence cannot imagine why Goktepe, a homemaker in Shelton, Connecticut, would be interested to either defaming him or publishing his sensitive information, particularly to the point of forfeiting the $30,000 settlement amount *she* requested. Lawrence's invitation for an explanation of these anomalies, presented in Atkin's June 24 letter, has been ignored and he reiterates that invitation here.

Goktepe's settlement positions include additional anomalies. Goktepe has apparently rejected the other conventional settlement terms because they are "duplicative," and "superfluous." *See* Goktepe June 3rd Settlement Proposal at Exhibit E. Lawrence disagrees with these characterizations, and requires these terms. However, *even if* the characterizations were accurate, it is clear that terms that are merely "duplicative" or "superfluous" *impose no harm* on Goktepe that would warrant her forfeiture of the $30,000 settlement payment amount *she* proposed.

In any event, so that the court may realistically assess the likelihood of a settlement agreement emerging from the settlement conference Goktepe has proposed, Lawrence reiterates here the position that he has already *consistently and continuously stated to Goktepe*: Lawrence (1) will not settle the case at bar in the absence of a written, binding settlement agreement that includes all of the conventional settlement terms and the return of documents and certification and (2) will, even then, consider only a settlement amount less than $30,000, which amount to be

---

[5] In the motion pleadings on file in this case, the parties have argued vigorously, without resolution, over Goktepe's efforts to obtain trade secret information from Lawrence.

considered will be reduced even further by the expenses Goktepe has caused Lawrence to incur in relation to the Motion and, if required, his physical presence at a settlement conference in Connecticut.

IV.  Bad Faith

The pleadings illustrate the absence of good faith that has characterized Goktepe's approach to settlement since late May:

    (1) in breach of conventional norms of professional courtesy, the pleadings place into the public record the $30,000 dollar amount that Lawrence was at one time willing to conditionally consider as a settlement amount, an item that is almost always required to be kept confidential as part of the settlement.

    (2) Goktepe transparently seeks to impose upon Lawrence the costs of traveling to Connecticut for a settlement conference to further discuss Goktepe's unreasonable and bad faith settlement position, a position that Lawrence has already clearly communicated to Goktepe is unacceptable.

    (3) Goktepe's failure to settle for the amount she proposed may reflect that Faulkner's interests, not Goktepe's interests, are driving Goktepe's settlement negotiations.

Goktepe's Breach of Professional Courtesy to Annoy and Embarrass Lawrence. A motion for a settlement conference does not require the public disclosure of the parties' settlement proposals, including the dollar amounts considered in relation to a comprehensive

settlement of litigation. Nevertheless, Goktepe did just that. In doing so, she abused the understanding, and professional courtesy, that settlement negotiations are confidential.

Why would Goktepe publish this information, particularly in contravention of traditional professional courtesy norms that weigh otherwise? Two related reasons come to mind. First, it may have been done to sidestep the confidentiality protection that Lawrence sought in his settlement proposals and to make public, for use by other plaintiffs' attorneys in similar disputes, the high dollar amount once discussed by the parties in this case. A second related reason would be to annoy and embarrass Lawrence. *See* SEC v. TheStreet.com, 273 F.3d 222, 229 (2nd Cir. 2001) ("Without an ability to restrict public dissemination of certain discovery materials that are never introduced at trial, litigants would be subject to needless 'annoyance [and] embarrassment . . .'"). This breach of professional courtesy, of course, chills the prospects of further settlement negotiations between the parties, controverting the public policy favoring settlements for which the Memorandum vehemently argues.

Goktepe's Ill-disguised Attempt to Run Up Costs. Goktepe's request that the court require Lawrence to be physically present is a transparent ploy to force Lawrence to incur the additional costs of himself and his counsel traveling to Connecticut. This is not a large dollar case. The economic value of the case does not justify paying the airplane, meals and hotel required to bring Lawrence and his counsel to Connecticut to physically attend the conference. Indeed, these additional costs would be a disproportionately large percentage of the value of the case. As noted below, Lawrence is willing to participate directly in a settlement teleconference, and of course, will physically attend the conference if so ordered by the Court.

Divergence of Interests. There may be a further reason for the bad faith Goktepe has

demonstrated in the settlement negotiations. As noted above, Goktepe refused Lawrence's offer to pay the $30,000 *she* requested, in part, over disagreement about a confidentiality provision. Also as noted above, it is inconceivable that Goktepe, herself, has interests at stake great enough to cause her reject $30,000 in order to avoid the confidentiality constraints. However it may be that Faulkner's interests, both as a competitor of Lawrence and in her cooperation with plaintiff's counsel in another suit against Lawrence, are, with or without Goktepe's knowledge, driving Goktepe's rejection of the $30,000 offer that included a confidentiality provision.

One basis for questioning the divergence of Faulkner's interests from Goktepe's interests is demonstrated by Faulkner's June 8 email letter to Atkin, attached as <u>Exhibit G</u>. Faulkner's June 8 letter replies to Atkin's June 4 letter transmitting Lawrence's attached June 4th Settlement Agreement proposal to Goktepe, attached as <u>Exhibit F</u>. Astonishingly, Faulkner's letter states: "Blake, I am away from my computer and *did not want to download your attachments* [Lawrence's June 4th Settlement Offer] to someone else's computer. However, the size indicates that your proposal is *not shorter* than before. Please *try to boil it down to 2 pages* and *I will review it when I get back*." Emphasis added. Incredibly, according to Faulkner's June 8 letter, Faulkner rejected Lawrence's June 4th proposed Settlement Agreement *without first even reading it or* then *showing it to Goktepe* and *discussing it with Goktepe before rejecting it* on Goktepe's behalf. Undersigned counsel can honestly say that, in 20 years of practicing law and settling lawsuits, he has never before seen opposing counsel reject a settlement offer directed to the opposing party without *both reading* the offer *and also discussing* it with the *client*.

Further, in terms of the divergence between Faulkner's interests and Goktepe's interests, Lawrence has raised the issue of Faulkner's interests as a competitor of Lawrence in earlier

9

pleadings relating to confidentiality. *See generally*, Defendant's Memorandum in Support of Motion for Protective Order and in Opposition to Plaintiff's Motion to Compel Discovery: No Objections, dated September 12, 2003 at Section IV, pp. 3-7 attached hereto as <u>Exhibit J</u>, Defendant's Reply Memorandum in Support of Motion for Protective Order, dated November 4, 2003, at 2-3, attached hereto as <u>Exhibit K</u>. Indeed, Faulkner continued to press her personal interests in the number of Lawrence's clients (subject matter irrelevant to Goktepe's individual breach of contract and consumer protection claims and not designed to discover evidence admissible at trial in this case) and similar proprietary commercial matters as recently as her deposition of Lawrence in this case on July 8, 2004.

Additionally, as Lawrence has brought to the attention of this court before, it appears that Faulkner is working with plaintiff's counsel, Daniel Edelman ("Edelman") in another case filed against Lawrence, *Iosello v. Lawrence*, Case No. 03 C 0987, filed in the federal district court in Chicago. *See* Declaration of Rhiannon Lawrence in Support of Motion for Protective Order, dated November 4, 2003, attached hereto as <u>Exhibit L</u> ("R. Lawrence Declaration"), at ¶¶ 27-28. If the Goktepe settlement included a confidentiality provision, Faulkner would be unable ethically to share confidential information in this case with plaintiff's counsel in the Iosello case. This suggests another illustration of the divergence in Faulkner's interests and Goktepe's interests in Goktepe's rejection of the $30,000 offer in order to avoid any confidentiality constraint.

Further, as Lawrence has also previously brought to the attention of this court, it appears that Faulkner and Edelman have worked together to tarnish Lawrence's reputation with the National Association of Consumer Advocates ("NACA"). Faulkner is a co-founder, former

10

director and emeritus leader of NACA, a leading national consumer rights litigation organization. Faulkner's most recent known activity regarding Lawrence and NACA includes her possibly being involved in causing NACA to withdraw its acceptance of Lawrence's attendance at a NACA conference in October, 2003, as well as NACA's acceptance of the attendance of some of his staff. *See* R. Lawrence Declaration at ¶¶ 30-54. If these concerns are well founded, it is possible that Faulkner's involvement would include the kind of defamation that Lawrence seeks to preclude in requiring a non-defamation provision in the settlement agreement with Faulkner's client, Goktepe. If the Goktepe settlement included a non-defamation provision, Faulkner would be ethically unable to further harm Lawrence's reputation at NACA, based on this suit. This suggests another illustration of the divergence in Faulkner's interests and Goktepe's interests in Goktepe's rejection of the $30,000 offer in order to avoid any confidentiality constraint.

In any event, Goktepe has now demonstrated to Lawrence that his settlement proposals will not be accorded normal professional courtesy, indeed, that his good faith negotiations will be abused. Accordingly, Lawrence will not communicate further on settlement negotiations without a binding written agreement from Goktepe that all such discussions, and accompanying information, are confidential.

V.   Legal Arguments

Lawrence agrees wholeheartedly with the Memorandum's argument that settlements are good public policy. Indeed, that is why he persisted as long as he did in what has ultimately been a futile and prejudicial effort to settle. Lawrence also agrees that the parties should directly participate in any settlement conference required by the court. However, Lawrence believes that such a settlement conference can be effectively conducted by teleconference, without requiring

him to incur the expense associated with him and his attorney being physically present in Connecticut during the conference.

To date, Lawrence has accommodated Goktepe on all of her substantive settlement requests, including choice of law and venue. Goktepe has only rigidly rejected conventional settlement terms. The court should not allow Goktepe to bootstrap this obstructionist approach to settlement into further economic leverage by not allowing Lawrence to participate by teleconference in any settlement conference the court may require.

VI.    Conclusion

The Motion and Memorandum misrepresent the true and full nature of the settlement proposals and positions of the parties. Goktepe has injected obstacles to settlement by rejecting Lawrence's conventional and other settlement terms. This included, in part, her willingness to forfeit the $30,000 settlement payment *she* requested in order to retain her ability to defame Lawrence and to publicly reveal his sensitive information. Since Goktepe herself has no reasonable interests to further by rejecting the $30,000 so that she can defame Lawrence and disclose his sensitive information, it appears that Faulkner's interests in defaming Lawrence and disclosing his sensitive information may be inappropriately driving the settlement negotiations on Goktepe's side of this case.

Lawrence is simply not going to pay Goktepe to go out and defame him and publish sensitive information or allow her counsel to use this case to do the same things in furtherance of her own interests. If Goktepe is prepared to accommodate Lawrence on these matters, Lawrence invites her to offer a new settlement proposal to that effect independently of the proposed settlement conference.

A settlement conference, and the additional expense to Lawrence, is not required for that. So long as Goktepe rigidly holds to her historical position, no settlement is possible and the time involved in a futile settlement conference would be better spent preparing for trial.

In summary, based on the settlement discussions between the parties to date, as shown in the exhibits to this Response, Lawrence asks the court to deny the Motion. Alternatively, if the court decides to grant the Motion, Lawrence asks that he and his attorney be allowed to participate by teleconference.

DATED this 16 day of July, 2004.

ATKIN & SHIELDS, P.C.

_____
Blake S. Atkin CT24726
Lonn Litchfield CT24727
Attorneys for Victor Lawrence
136 South Main Street, 6th Floor
Salt Lake City, UT 84101
Tel. (801) 533-0300
Fax (801) 533-0380

Local counsel:
Richard H.G. Cunningham # CT15195
12 Kenilworth Drive East
Stamford, CT 06902
Tel. (203) 348-9958
Fax (203)324-6039

13

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the foregoing MEMORANDUM IN OPPOSITION TO PLAINTIFF'S MOTION FOR SETTLEMENT CONFERENCE was mailed first class, postage prepaid on this the 16th day of July, 2004 to the following:

Joanne S. Faulkner
123 Avon St.
New Haven, CT 06511-2422