Page 38

1  defame Mr. Lawrence?
2      MS. FAULKNER: Again, if you want
3  to negotiate settlement, we can do it
4  in --
5      MR. ATKIN: Are you unwilling to
6  agree to --
7      MS. FAULKNER: You may not ask
8  her any questions involving
9  attorney-client communications.
10     MR. ATKIN: I am not asking her
11 for any attorney-client
12 communications. My question is --
13     MS. FAULKNER: You are trying to
14 negotiate the settlement agreement
15 with her.
16 BY MR. ATKIN:
17 Q. Are you unwilling to agree to --
18 A. I choose not to answer at this time.
19     MS. FAULKNER: At the advice of
20 her counsel.
21     MR. ATKIN: What is your
22 objection? I am not asking for
23 attorney-client communications. I am
24 asking her -- and we need you to stay

Page 39

1  on the record -- I am asking for her
2  state of mind.
3  BY MR. ATKIN:
4  Q. I don't want you to reveal to me any
5     communications you had with your
6     lawyer. I am asking if you are
7     unwilling to agree in a settlement
8     that you would not defame Mr.
9     Lawrence.
10     MS. FAULKNER: And she is not
11 going to answer that. She has agreed.
12 She has signed a settlement document,
13 sent it back. We have a settlement.
14 It does not include --
15     MR. ATKIN: On what basis are you
16 instructing this witness not to
17 answer?
18     MS. FAULKNER: Whatever her
19 impression was, she got it from me.
20     MR. ATKIN: I am not asking her
21 about any communications. I am asking
22 her about her current factual state of
23 mind, and I am entitled to ask her
24 that.

Page 40

1      MS. FAULKNER: You are not
2  entitled to negotiate any settlement
3  agreements with her.
4      MR. ATKIN: I am not --
5      MS. FAULKNER: Her state of mind,
6  she got it from discussing with me.
7  We will not go into it.
8      MR. ATKIN: Let me ask the
9  questions, and now I want you to make
10 objections. If you are going to make
11 objections, I don't want any more
12 speech making, okay? If you have an
13 objection to make, you make the
14 objection.
15 BY MR. QUESTIONING:
16 Q. Mrs. Goktepe --
17     MS. FAULKNER: I wish you had
18 observed that yesterday.
19 BY MR. ATKIN:
20 Q. Mrs. Goktepe, are you unwilling to be
21 paid $30,000 if one of the
22 stipulations would be that you would
23 agree not to defame Mr. Lawrence?
24     MS. FAULKNER: Objection.

Page 41

1  Privileged attorney-client
2  communications.
3      MR. ATKIN: Are you instructing
4  the witness not to answer?
5      MS. FAULKNER: That is correct.
6  BY MR. ATKIN:
7  Q. Mrs. Goktepe, are you unwilling to
8     accept $30,000 in settlement of your
9     complaints if one of the stipulations
10    to that agreement would be that you
11    keep the terms of the settlement
12    confidential and not reveal them to
13    third parties?
14     MS. FAULKNER: Mr. Atkin, we
15 object on the ground of
16 attorney-client privilege.
17     MR. ATKIN: Are you instructing
18 the witness not to answer?
19     MS. FAULKNER: Yes.
20 BY MR. ATKIN:
21 Q. Mrs. Goktepe, are you unwilling to
22    enter into a settlement agreement from
23    Mr. Lawrence under which you would be
24    paid $30,000 because you are not

11 (Pages 38 to 41)

CUNNINGHAM SERVICES, INC.
1-800-842-4486

Page 42

1  willing to enter into an agreement,
2  because you are not willing to pursue
3  any further litigation with Mr.
4  Lawrence --
5       MS. FAULKNER: Objection.
6  Attorney-client privilege. Are you
7  reopening the $30,000 offer?
8       MR. ATKIN: I am not.
9       MS. FAULKNER: Because we can go
10 over the offer off the record and
11 discuss the conditions.
12      MR. ATKIN: I am not. I am
13 persuing discovery in this case.
14      MS. FAULKNER: There are no --
15      MR. ATKIN: Are you instructing
16 the witness not to answer?
17      MS. FAULKNER: Absolutely.
18 BY MR. ATKIN:
19 Q. Mrs. Goktepe, let me ask it this way:
20    Have you ever been unwilling to accept
21    the payment of $30,000 from Mr.
22    Lawrence in settlement of the claims
23    in this lawsuit, because one of
24    conditions was that you would not

Page 43

1  agree to not defame Mr. Lawrence?
2       MS. FAULKNER: Asked an answered.
3       Objection. Privileged
4  communication.
5       MR. ATKIN: It's not been asked
6  and answered. It's a new question.
7  BY MR. ATKIN:
8  Q. Have you ever been unwilling to accept
9     $30,000 from Mr. Lawrence in
10    payment -- in settlement of your
11    claims against him because you were
12    unwilling to agree not to defame him?
13      MS. FAULKNER: I certainly object
14 to your continuing to further attempt
15 to --
16      MR. ATKIN: Speak your
17 objections. No more statements, no
18 more argument. You can make your
19 objection, but don't obstruct my
20 interrogation of the witness. I am
21 entitled to ask the questions. I am
22 entitled to get the record so when I
23 go to court to get a record to compel,
24 so I am going to ask the question

Page 44

1  again. I don't want your speech
2  making. Make your objection, if you
3  have one, instruct your witness if you
4  are going to instruct her. I am going
5  to seek to compel and I am going to
6  seek attorney's fees for obstructing
7  the deposition. Now, let me ask the
8  question again.
9  BY MR. ATKIN:
10 Q. Have you ever been unwilling to accept
11    payment of $30,000 from Mr. Lawrence
12    in settlement of your complaints
13    against him because you were unwilling
14    to agree to not defame Mr. Lawrence?
15 A. I want to go on the advice of my
16    attorney. I want her to answer for
17    me.
18 Q. No, you need to answer my question.
19      MS. FAULKNER: At the advice of
20 her attorney, she is not to answer the
21 question.
22      MR. ATKIN: You are instructing
23 her not to answer?
24      MS. FAULKNER: Absolutely.

Page 45

1  BY MR. ATKIN:
2  Q. And you are going to follow your
3     lawyer's instruction?
4  A. Right.
5  Q. Have you ever been unwilling to accept
6     $30,000 from Mr. Lawrence in payment
7     of your claims against him, because
8     you were not willing to agree to keep
9     the information regarding the
10    settlement confidential?
11      MS. FAULKNER: Objection.
12      MR. ATKIN: State your objection.
13      MS. FAULKNER: It's privileged.
14 It's also a compound question. Asked
15 and answered. Beyond the scope of
16 discovery. Attempting to negotiate
17 directly with my client.
18      MR. ATKIN: Are you instructing
19 the witness not to answer?
20      MS. FAULKNER: And my client has
21 signed and returned to you a
22 settlement agreement for $30,000.
23      MR. ATKIN: Are you instructing
24 the witness not to answer?

12 (Pages 42 to 45)

CUNNINGHAM SERVICES, INC.
1-800-842-4486

Page 46

1   MS. FAULKNER: Yes.
2   BY MR. ATKIN:
3   Q. Are you going to follow your lawyer's
4      instruction?
5   A. Yes.
6   Q. Have you ever been unwilling to accept
7      payment of $30,000 in settlement of
8      your claims against Mr. Lawrence
9      because you were not willing to agree
10     not to continue pursuing further
11     disputes with Mr. Lawrence?
12     MS. FAULKNER: Same objection.
13     MR. ATKIN: What's your
14  objection?
15     MS. FAULKNER: Would you like to
16  read it again?
17     MR. ATKIN: Well, are you
18  instructing the witness not to answer
19  on the same objections?
20     MS. FAULKNER: Same objections.
21  BY MR. ATKIN:
22  Q. Are you going to follow your lawyer's
23     instruction?
24  A. Yes.

Page 47

1   Q. Have you ever been unwilling to agree
2      to accept payment of $30,000 from Mr.
3      Lawrence in settlement of your claim
4      in this lawsuit because you were
5      unwilling to sign an agreement stating
6      that you had entered the settlement on
7      the basis of instruction from your
8      lawyer?
9      MS. FAULKNER: I am sorry. I
10  didn't understand the question myself.
11     MR. ATKIN: Have you --
12     MS. FAULKNER: I will object. It
13  sounded like it was an attorney-client
14  privilege anyway.
15  BY MR. ATKIN:
16  Q. Have you ever been unwilling to accept
17     payment of $30,000 from Mr. Lawrence
18     in settlement of your claims against
19     him because the agreement that he
20     proposed had a paragraph stating that
21     you had followed advice of counsel in
22     entering into the agreement? Go ahead
23     and answer.
24     MS. FAULKNER: No. I think that

Page 48

1   is such an outrageous question.
2   Obviously she was following the advice
3   of her counsel in not signing the
4   agreement. She signed an agreement
5   that was acceptable to her and with
6   the lawsuit --
7      MR. ATKIN: Just make your
8   objection.
9      MS. FAULKNER: -- and would not
10  put her at risk.
11     MR. ATKIN: Don't continue to
12  make your speeches. Make your
13  objection.
14     MS. FAULKNER: Would not continue
15  to put her at risk of being sued.
16     MR. ATKIN: Make your objection.
17     MS. FAULKNER: The settlement
18  agreement has been accepted.
19     MR. ATKIN: Make your objection.
20     MS. FAULKNER: Your draft has not
21  been accepted.
22     MR. ATKIN: Are you making an
23  objection?
24     MS. FAULKNER: Yes.

Page 49

1      MR. ATKIN: What is your
2   objection?
3      MS. FAULKNER: You would be
4   negotiating with me, not with my
5   client and I invited you to negotiate
6   with me.
7   BY MR. ATKIN:
8   Q. But Mrs. Goktepe, will you please
9      answer my question?
10     MS. FAULKNER: She is instructed
11  not to answer.
12  BY MR. ATKIN:
13  Q. Are you going to follow the
14     instructions of your lawyer?
15  A. Yes.
16  Q. Have you ever been unwilling to accept
17     payment of $30,000 in settlement of
18     your claims because the agreement that
19     Mr. Lawrence proposed contained an
20     integration cause?
21     MS. FAULKNER: Objection.
22     MR. ATKIN: Same objection?
23     MS FAULKNER: Same objection.
24     MR. ATKIN: Same instruction?

13 (Pages 46 to 49)

CUNNINGHAM SERVICES, INC.
1-800-842-4486

Page 50

1  MS. FAULKNER: Same instruction.
2  BY MR. ATKIN:
3  Q. Are you going to follow your lawyer's
4     instruction and not answer my
5     question?
6  A. I am going to have to.
7     MR. ATKIN: Could you mark this
8     as the next exhibit, please.
9     (Defendant's Exhibit No. 3:
10    Marked for identification.)
11    BY MR. ATKIN:
12 Q. Mrs. Goktepe, let me show you what has
13    been marked as your deposition Exhibit
14    No. 3. Let me ask you if you have
15    ever seen a copy of that letter
16    before.
17    MR. ATKIN: And Joanne, I have a
18    copy for you if you would like to look
19    at it.
20    BY MR. ATKIN:
21 Q. Have you ever seen Exhibit 3 before
22    today?
23 A. I don't recall.
24 Q. It was only written a month ago, June

Page 51

1     4; you don't recall?
2  A. I don't remember.
3  Q. Look at this second paragraph of
4     Exhibit 3.
5     MS. FAULKNER: Mrs. Goktepe has
6     not seen this, doesn't recall seeing
7     this, and will not answer questions
8     about it.
9     MR. ATKIN: I have a right to
10    determine whether the viewing of a
11    portion of it will refresh her
12    recollection. She had signed an
13    oath. The testimony was she didn't
14    recall, she didn't say I didn't see
15    it.
16    BY MR. ATKIN:
17 Q. Mrs. Goktepe, let me have you look at
18    Exhibit 3, paragraph two, "Attached to
19    this e-mail letter is a new settlement
20    offer accommodating many of the items
21    raised in the June 3rd reply. A copy
22    of this letter is also being sent to
23    your office by FedEx with a copy of
24    the June 4 settlement offer that has

Page 52

1     been signed by Mr. Lawrence and
2     myself."
3     Were you aware that Mr.
4     Lawrence had sent a signed copy of a
5     settlement offer on June 4?
6  A. I didn't see this letter.
7  Q. So you weren't aware of those facts?
8  A. I didn't see this letter.
9  Q. You need to answer yes or no and
10    answer so she can --
11 A. No, I didn't see this letter.
12 Q. My question is -- let me have you look
13    at the fifth page of Exhibit 3.
14    MS. FAULKNER: Mrs. Goktepe will
15    no longer answer any questions about
16    the settlement negotiations.
17    MR. ATKIN: Look, you can make
18    your objection, but I am entitled to
19    ask questions. I am going to ask the
20    questions.
21    BY MR. ATKIN:
22 Q. Starting on page 5 of Exhibit 3, have
23    you ever seen that settlement
24    agreement that begins on page 5 and

Page 53

1     goes to the end of Exhibit 3?
2     MS. FAULKNER: Objection. She
3     will not answer any further questions
4     about settlement negotiations. If the
5     settlement is being reopened and
6     renegotiated, you and I may do so.
7     MR. ATKIN: I am entitled to ask
8     questions. That's all I am do is
9     asking questions.
10    MS. FAULKNER: And she sent you a
11    signed agreement.
12    MR. ATKIN: No more speeches.
13    Are you objecting to my question?
14    MS. FAULKNER: Yes, I did.
15    MR. ATKIN: What is your
16    objection?
17    MS. FAULKNER: Same as the
18    objections I have said several times
19    before. You are getting into
20    attorney-client privilege, you are
21    going into settlement negotiations
22    with my client. You may not negotiate
23    any settlement agreement.
24    BY MR. ATKIN:

14 (Pages 50 to 53)

CUNNINGHAM SERVICES, INC.
1-800-842-4486

Page 54

```
 1   Q. Let me make it clear. I don't want
 2      you to reveal to me any communications
 3      you have had between you and Ms.
 4      Faulkner. What I would like you to do
 5      is look at Exhibit 3 starting on page
 6      5.
 7   A. I choose not to answer on the advice
 8      of my lawyer.
 9   Q. I need you to listen to my question.
10      I need you to look at Exhibit 3 on
11      page 5 and review that document from
12      there until the end of Exhibit 3, and
13      review it in as much detail as you
14      would like to do it. Tell me when you
15      have finished reviewing it.
16         Have you ever seen that
17      document before today?
18         MS. FAULKNER: She will answer no
19      further questions about settlement
20      negotiations.
21         MR. ATKIN: Are you instructing
22      the witness not to answer my question?
23         MS. FAULKNER: Yes.
24      BY MR. ATKIN:
```

Page 55

```
 1   Q. Are you going to follow your counsel's
 2      instruction?
 3   A. Yes.
 4         MR. ATKIN: Are you instructing
 5      the witness not to review Exhibit 3?
 6         MS. FAULKNER: Are you going to
 7      get on to the facts?
 8         MR. ATKIN: Just answer my
 9      question. Are you instructing the
10      witness not to review Exhibit 3?
11         MS. FAULKNER: I have instructed
12      her not to answer any questions.
13         MR. LAWRENCE: Ask the question
14      after she reviews it.
15         MS. FAULKNER: Well, Mr. Lawrence
16      is not an attorney in this case and
17      should not be --
18         MR. ATKIN: Are you instructing
19      Mrs. Goktepe not to review Exhibit 3?
20         MS. FAULKNER: I'm -- if you want
21      to ask about the facts in this case, I
22      will ask you to do that.
23         MR. ATKIN: Did you communicate
24      the terms of this offer to your
```

Page 56

```
 1      client?
 2         MS. FAULKNER: Let me ask you, if
 3      you want to negotiate with me, then
 4      that's the discussion, lawyer to
 5      lawyer. Let's go off the record.
 6         MR. ATKIN: Go off the record.
 7      (Off the record.)
 8         MS FAULKNER: While we are
 9      waiting for the judge, why don't you
10      go on to other questions, so that we
11      can at least --
12         MR. ATKIN: I am going to ask my
13      questions. I have a right to ask my
14      questions. You can object if you
15      desire to, but I have a right to ask
16      the questions.
17         MS. FAULKNER: You are asking for
18      a judge to come in, and as long as we
19      are go to get a ruling on this, let's
20      go on to another subject.
21         MR. ATKIN: I am going to make a
22      record so that he has a record to make
23      a ruling.
24      BY MR. ATKIN:
```

Page 57

```
 1   Q. Mrs. Goktepe, was the document, that
 2      material as part of Exhibit 3 from
 3      page 5 to the end that is signed by
 4      Mr. Lawrence and myself, was that
 5      document -- have you ever seen it
 6      before today?
 7         MS. FAULKNER: I instruct her not
 8      to answer any further questions on
 9      settlement negotiations. It is well
10      outside of the scope of discovery,
11      highly improper and we are awaiting a
12      judge's --
13         MR. ATKIN: Are you instructing
14      the witness not to answer?
15         MS. FAULKNER: That is true.
16      BY MR. ATKIN:
17   Q. Are you going to follow your lawyer's
18      instructions?
19         MS. FAULKNER: May we go onto
20      other subjects while we are waiting
21      for the judge's ruling?
22         MR. ATKIN: And I take it if I
23      ask you any more questions relating to
24      your knowledge of the settlement offer
```

Page 58

1  that had been made to you, and your
2  rejection of that settlement offer,
3  that you would refuse -- you would
4  object to any further questions along
5  that line; is that correct?
6      MS. FAULKNER: In that the
7  question was misleading. She did
8  accept a settlement offer, but she
9  will not answer any further questions
10 about this topic until we get a
11 judges ruling.
12     MR. ATKIN: I need to ask my
13 questions and you need to answer my
14 question. You need to answer the
15 questions, because I need a record
16 here. If I ask any further questions
17 relating to the settlement
18 negotiations that occurred during the
19 last month, are you going to instruct
20 the witness not to answer?
21     MS. FAULKNER: Yes.
22     MR. ATKIN: And if I ask the
23 witness any questions about what she
24 was or was not willing to agree to in

Page 59

1  the course of those settlement
2  negotiations, are you going to
3  instruct the witness not to answer?
4      MS. FAULKNER: Yes. That is
5  outrageous.
6      MR. ATKIN: I am entitled to know
7  the witness's position and the
8  witness's state of mind on issues that
9  you have made an issue in this case by
10 filing a motion in this action, that
11 is an improper motion, but is now a
12 motion that is pending before the
13 court. I am entitled to discovery.
14 The rules allow me to discover
15 evidence relating to the issues in the
16 case and that are now an issue in this
17 case.
18     MS. FAULKNER: They do not.
19     MR. ATKIN: You have made it an
20 issue in the case by filing your
21 motion.
22     MS. FAULKNER: The rules allow
23 you to discover claims and defenses.
24 There are no claims and there are no

Page 60

1  defenses.
2      MR. ATKIN: Read the rules. The
3  rules allow me to ask questions
4  relating to discovery in the case.
5      MS. FAULKNER: Rule 26, "Parties
6  may obtain discovery regarding any
7  matter, not privileged, that is
8  relevant to the claim or defense of
9  any party, and the court may order
10 discovery of any matter relevant to
11 the subject matter involved in the
12 action."
13     MR. ATKIN: These questions also
14 go to the claims and defenses in this
15 case. It goes directly to Mrs.
16 Goktepe's credibility as a witness in
17 this case, her credibility as a
18 plaintiff in this case, to the issues
19 of whether this case is brought in
20 good faith or whether this case is
21 brought for ulterior motives related
22 to this case, or defenses asserted in
23 the case. And I am also entitled
24 to pursue the discovery on this basis,

Page 61

1  even if you hadn't made it an issue by
2  filing a motion relating to the
3  settlement discussions.
4      MS. FAULKNER: I don't know if
5  you have asserted any claims or
6  defenses in this case, but I do know
7  Mrs. Goktepe's credibility is not a
8  proper subject of discovery.
9      Credibility is not a proper
10 subject. Are we having a general
11 discussion if I ask Mrs. Goktepe --
12     MR. LAWRENCE: Just ask her to
13 object on a basis --
14     MR. ATKIN: Let me do it.
15 BY MR. ATKIN:
16 Q. Mrs. Goktepe, were you ever unwilling
17 to accept payment of $30,000 to settle
18 your claim in his case because you
19 were unwilling to agree not to assist
20 others in persuing disputes with Mr.
21 Lawrence?
22     MS. FAULKNER: You asked that
23 question before, and we objected
24 before and we still object.

16 (Pages 58 to 61)

CUNNINGHAM SERVICES, INC.
1-800-842-4486

Page 62

1  MR. ATKIN: On what basis?
2  MS. FAULKNER: On the same basis.
3  MR. ATKIN: What basis?
4  THE WITNESS: Not proper basis of
5  discovery, attorney-client privilege,
6  improper efforts to negotiate directly
7  with my client. It's unethical.
8  MR. ATKIN: I have explained to
9  you that I am entitled to determine
10 whether Mrs. Goktepe has brought this
11 in good faith based on your claims or
12 whether there is some ulterior motive.
13 You were driving this litigation. I
14 am entitled to ask her that.
15 MS. FAULKNER: Where is that in
16 the pleadings?
17 MR. ATKIN: This question is
18 going directly to those issues.
19 MS. FAULKNER: There hasn't been
20 any claim of that made anywhere.
21 MR. ATKIN: Sure is. There is.
22 I made that in my notion to dismiss
23 that is now pending before the court.
24 MS. FAULKNER: And what was said?

Page 63

1  MR. ATKIN: I raised that very
2  issue for ulterior purposes, namely, I
3  think her lawyer has ulterior purposes
4  in pursuing litigation, and this
5  question goes directly to that issue.
6  Are you going to answer that question?
7  MS. FAULKNER: I certainly
8  object --
9  MR. ATKIN: You don't need to
10 make your speeches. Make your
11 objection.
12 MS. FAULKNER: The circumstances
13 surrounding in negotiations do not
14 effect the substance of the claim, the
15 plaintiff's motives, or the authority
16 of the attorney to bring suit my not
17 be acquired to at a deposition.
18 MR. ATKIN: Are you objecting to
19 my question?
20 MS. FAULKNER: I did.
21 MR. ATKIN: Are you instructing
22 the witness not to answer?
23 MS. FAULKNER: Yes. Are you
24 interested in getting to the facts of

Page 64

1  this case?
2  Because if you are, let's do
3  that.
4  MR. ATKIN: I am. These are the
5  facts of this case and I am entitled
6  to do the discovery.
7  MS. FAULKNER: Would you please
8  direct your --
9  MR. ATKIN: Let me make it clear
10 on the record. I need to make this
11 clear, even after I have explained to
12 you, and I don't think I am required
13 to under the rules. I explained to
14 you why the evidence I seek is
15 relevant or likely to lead to the
16 discovery of admissible evidence, but
17 even after I have gone beyond what I
18 am required to do, and I have
19 explained to you why these issues and
20 why she would reject such a
21 substantial settlement offer, go
22 directly to the issues at heart of
23 this case, even after I explained the
24 relevancy to you. Are you going to

Page 65

1  continue to instruct the witness not
2  to answer questions relating to her
3  rejection of our settlement offer?
4  MS. FAULKNER: She accepted the
5  settlement offer.
6  MR. ATKIN: I don't want any more
7  speech making. We made a settlement
8  offer.
9  We had it signed, sealed, and
10 delivered, and all she had to do was
11 sign it and send it back. She
12 rejected that offer, and while those
13 issues go to the issues in the case,
14 are you going to continue to object to
15 the deposition -- let me take that
16 back. Are you going to continue to
17 instruct the witness not to answer my
18 questions relating to those issues?
19 MS. FAULKNER: Yes.
20 BY MR. ATKIN:
21 Q. Mrs. Goktepe, do you recall entering
22 into a retainer agreement with Victor
23 Lawrence doing business as Lexington
24 Law Firm?

17 (Pages 62 to 65)

Page 66

1   A. I think so. I don't know.
2   Q. Do you recall retaining the service of
3      Lexington Law Firm in September, 2002?
4   A. I know that we hired Lexington. I
5      don't know when, what time or what
6      month.
7   Q. How did you hire Lexington Law Firm?
8   A. My husband hired them over the
9      computer, the Internet.
10  Q. And did you instruct your husband to
11     hire Lexington Law firm on your
12     behalf?
13  A. Yes, we work together.
14  Q. You authorized him to do that on your
15     behalf?
16  A. Yes.
17  Q. And are you aware that he signed a
18     retainer agreement with Lexington Law
19     Firm on your behalf?
20  A. Yes, I think so. I did.
21  Q. You wouldn't object to your husband
22     signing the retainer agreement with
23     Lexington Law firm on your behalf?
24  A. If he felt he had to sign that, I

Page 67

1      would believe that he knew what he was
2      doing.
3   Q. And you wouldn't object to him signing
4      your name on the retainer agreement
5      with Lexington Law Firm?
6   A. He explains things and I sign it. He
7      never signs my name.
8   Q. So are you now changing your
9      testimony? Did you sign a retainer
10     agreement with Lexington Law Firm in
11     September of 2002? Earlier you said
12     that your husband did it on your
13     behalf.
14  A. I think he read it, gave it to me, and
15     I probably signed it. I probably read
16     it through, not knowing what a
17     retainer was.
18         MS. FAULKNER: Please don't
19     guess. This was all done on the
20     Internet, so you didn't sign anything.
21         MR. ATKIN: I want you to tell me
22     what you did on September of 2002.
23     Someone signed an agreement of
24     Lexington Law Firm.

Page 68

1          THE WITNESS: If it was on the
2      computer, how would we sign anything?
3          Everything was done back and
4      forth.
5          MR. ATKIN: Here is my
6      question --
7          MS. FAULKNER: Why don't you use
8      a word other than "sign," like enter
9      into?
10  BY MR. ATKIN:
11  Q. Okay. Do you understand the concept
12     of an electronic signature?
13         MR. ATKIN: Mrs. Faulkner, I
14     would appreciate you not indicating to
15     the witness what the answer ought to
16     be. Shaking your head is
17     inappropriate.
18         MS. FAULKNER: I'm sorry. I was
19     looking at the exhibit and the marks
20     that you made on it and shaking my
21     head.
22         MR. ATKIN: Would you stop
23     distracting the witness, Ms. Faulkner?
24         MS. FAULKNER: I am just trying

Page 69

1      to figure this out, and before the
2      date of this -- includes the plaintiff
3      through this interactive website or
4      the Internet. That is an allegation
5      in the complaint.
6          MR. ATKIN: Ms. Faulkner, I want
7      you to stop coaching the witness. If
8      you do it again, I am going to stop
9      and get a judge to instruct you to
10     stop interfering with the testimony.
11         MS. FAULKNER: I am trying to
12     shorten this because you spent so much
13     time on irrelevant matters.
14  BY MR. ATKIN:
15  Q. Mrs. Goktepe, back to my question. Do
16     you understand the concept of an
17     electronic signature?
18  A. I understand the concept.
19  Q. What's your understanding of the
20     concept of an electronic signature?
21  A. I never signed anything over the
22     computer. I understand the concept.
23     I didn't sign anything over a
24     computer.

18 (Pages 66 to 69)

CUNNINGHAM SERVICES, INC.
1-800-842-4486