IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF CONNECTICUT
NEW HAVEN DIVISION

| | |
|---|---|
| MICHELLE GOKTEPE,<br><br>Plaintiff,<br><br>v.<br><br>VICTOR LAWRENCE, d/b/a/ LEXINGTON LAW FIRM,<br><br>Defendant. | Case No. 3:03CV0089-MRK<br><br>Honorable Judge Mark R. Kravitz<br><br>**(REQUEST FOR ORAL ARGUMENT)** |

## RESPONSE OF BLAKE S. ATKIN TO ORDER TO SHOW CAUSE

Blake S. Atkin, of Atkin & Shields, P.C., respectfully responds to the Court's Order to Show Cause, dated November 24, 2004, and respectfully requests oral argument.

### INTRODUCTION

By way of personal introduction, Blake S. Atkin is admitted to practice and in good standing in Utah State Courts, the Tenth Circuit Court of Appeals, the Ninth Circuit Court of Appeals, United States Court of Claims and the United States Supreme Court. In 1984, Mr. Atkin graduated from the J. Reuben Clark Law School where he was a member of the Order of the Coif and the Note and Comment Editor for the Brigham Young University Law Review. Mr. Atkin served as a law clerk to the Honorable Monroe G. McKay on the Tenth Circuit Court of Appeals. He was a partner in Berman & O'Rourke, a Salt Lake City firm specializing in complex litigation.[1] Mr. Atkin has also

---

[1] Mr. Atkin's A&S' representative clients include Tracy Collins Bank & Trust Company's former directors and officers; Deseret Federal Bank's former directors and officers; PASS (an AFL-CIO affiliate); Summit Water District; Qualities, Inc.; Summerset Houseboats; AETNA; Pacificorp; Salt Lake Trappers; Workers Compensation Fund of New York; Diversified Holdings; ENMAX Corporation; Cook Slurry Company; Mayor, Tremonton City; Knight Homes L.C.; Mount Olympus Financial, LLC; Layton Canal Irrigation Company; Sunbelt Construction;

served as an Assistant United States Attorney for the District of Utah and held positions of public responsibility, including Chairman of the Career Service Review of Utah.

Mr. Atkin's litigation practice includes areas of complex business, consumer fraud, commercial, insurance, banking, securities, antitrust, labor, real estate, international torts, civil rights, elections, constitutional rights, eminent domain and intellectual property.

## PROCEDURAL FACTS

1   On January 13, 2003, the plaintiff filed this action against Lexington Law Firm, which is located in the State of Utah. To defend the lawsuit, Lexington Law Firm retained Blake S. Atkin, an attorney with whom Lexington Law Firm has had a long-standing attorney/client relationship and who is experienced in the Credit Repair Organizations Act ("CROA") claims at issue.

2.   On March 20, 2003, Victor Lawrence moved for admission *pro hac vice* of Blake S. Atkin and Lonn Litchfield, of Atkin & Shields, P.C. [Docket No. 5] The motion stated that "Blake S. Atkin has not been denied admission or disciplined by the Court or any other court." The motion was prepared by Mr. Atkin's office and signed by Richard H. P. Cunningham, local counsel for Lexington Law Firm. The motion did not include a separate affidavit by Blake S. Atkin stating he had not been denied admission by this Court or disciplined by any other court."[2]

---

EnvironMax, Inc.; Sunwest Development LLC; Glen Eagle, LC; and McBride Development.

[2] D. Conn. L. R. 83.1(d), effective January 1, 2004, requires such a separate affidavit. Although Mr. Atkin no longer has access to Rules prior to January 1, 2004, he assumes the same requirement was in place on March 23, 2003, when the motion for admission *pro hac vice* was filed.

2

3. By Endorsement Granting Motion for Blake S. Atkin and Lonn Litchfield to Appear *Pro Hac Vice*, dated April 21, 2003, the motion for admission *pro hac vice* was granted without Mr. Atkin's separate affidavit. Had any deficiency been brought to his attention, he would have promptly corrected it.

4. Mr. Atkin represented Lexington Law Firm until October 15, 2004, when this Court granted Lexington Law Firm's motion allowing withdrawal of its former counsel, Blake S. Atkin, Lonn Litchfield and Richard P. Cunningham. [Docket No. 88]

5. This Court allowed Lexington Law Firm's counsel to withdraw over vigorous objections of opposing counsel, Joanne Faulkner, that the withdrawal was, among other things, "unexplained" and prejudicial to her client. [Docket No. 82]

6 Reasons for Lexington Law Firm's counsel's withdrawal are unrelated to any *pro hac vice* admission issue.

7 Throughout their representation of Lexington Law Firm in this action, Mr. Atkin and Mr. Cunningham obeyed rules of court, and there has been no suggestion that they engaged in any conduct justifying sanctions. Likewise, at no time during the nearly year and a half that Mr. Atkin appeared in this case has the Court or opposing counsel suggested that Mr. Atkin's *pro hac vice* admission should be revoked and, to Mr. Atkin's knowledge, no grounds for such revocation exist.

8. Three weeks after the Court granted Lexington Law Firm's local counsel leave to withdraw, on November 11, 2004, Ms. Faulkner wrote the Court notifying it of two cases she had located that indicated the *pro hac vice* admission motion's representation that Blake S. Atkin had not been "disciplined by a court" "may have been false." (Exhibit "A") Ms. Faulkner brought to the Court's attention *Featherstone v. Schearrer*, 34 P.3d 194 (Utah 2001) (Exhibit "B"), and *Hall v. NACM Intermountain, Inc.*, 988 P.2d 942 (Utah 1999) (Exhibit "C")

3

9.  Ms. Faulkner's letter states she is urging a change of the Local Rules as follows:

> Richard H. G. Cunningham filed the attached Motion representing to the Court that Blake S. Atkin had not been disciplined by a court. . . .
>
> The Local Rule requires the recital, but perhaps the recital should be made in an affidavit by the proposed visiting attorney rather than a local counsel's assertion . . . . [o]therwise, the pro forma recital on which the Court relies has no guarantee of truth and no sanctions for falsity.

(Ex. A)

10. Since, as the Court's Order to Show Cause states, Local Rule 83.1 in place on November 11, 2004 already provides for the very affidavit Ms. Faulkner suggests as a rules change, the ostensible reason for and timing of her writing the letter is, at a minimum, curious.

11. Ms. Faulkner copied Mr. Cunningham on the letter but did not copy Mr. Atkin.

12. On November 24, 2004, Ms. Faulkner filed a vigorous objection to Victor Lawrence's *pro se* appearance. [Docket No. 99]

13. On or about November 26, 2004, Ms. Faulkner emailed Mr. Atkin the Court's November 24, 2004 Order to Show Cause. (Exhibit "D")

14. Ms. Faulkner's email was Mr. Atkin's first notice of any issues set out in the order to show cause. Because Mr. Atkin was not aware of any motion for order to show cause and had not received any communication directly from the Court, on November 30, 2004, Joann Shields, an attorney with Atkin & Shields, P.C., telephoned Ms. Faulkner to ask about the Order to Show Cause.

15. Ms. Faulkner told Ms. Shields she had no idea how the Court had obtained its information set out in the Order to Show Cause and had nothing to do with providing it to the Court.

4

16. Ms. Shields probed whether the issues arose in connection with Ms. Faulkner's objection to Mr. Atkin's withdrawal or Victor Lawrence's motion to appear *pro se*. Ms. Faulkner testily replied that she had nothing else to say and hung up on Ms. Shields

17. On December 1, 2004, Ms. Faulkner sent Mr. Atkin an email stating: "Ms. Shields asked if I had made a motion in the Goktepe case. She seemed to think I fabricated the order. It is real, on Pacer. Here is how it came up." (Exhibit "E")

## RESPONSE TO ORDER TO SHOW CAUSE

Mr. Atkin respectfully seeks to make it abundantly clear that he had no intention to mislead the Court in any way and that, if he had been "disciplined" by any court, as defined by the Utah Courts in which *Hall* and *Featherstone* arose, he would have freely disclosed that fact to the Court in the *pro hac vice* motion. In addition, by explaining these cases, Mr. Atkin is in no way attempting to minimize their facts. Similarly, Mr. Atkin acknowledges he should have a separate affidavit in support of the pro hac vice motion and apologizes for this oversight. Had any deficiency been brought to Mr. Atkin's attention, he would have promptly done so. Finally, Mr. Atkin does not place any blame whatsoever on Mr. Cunningham.

### I. NEITHER *HALL* NOR *FEATHERSTONE* INVOLVES "DISCIPLINE BY A COURT," AS DEFINED BY THE UTAH SUPREME COURT.

The reason Mr. Atkin did not disclose *Hall* and *Featherstone* in the *pro hac vice* motion is that neither case involved "discipline by a court," as defined by Utah Supreme Court law.

#### A. The Utah Supreme Court Has Original Jurisdiction Over and Carefully Defines What Constitutes "Lawyer Discipline," to which Mr. Atkin has Never Been Subjected.

The Utah Supreme Court has made it clear that an award of attorney fees and costs against counsel does not constitute "discipline by a court." *In the Matter of the Discipline of Ray Harding, Jr.*, 2004 WL 2709587 (Utah Nov. 30, 2004) (Exhibit "F"). In *Harding*, the Court stated that

5

"[u]nlike other matters often handled here, lawyer discipline . . . . come[s] to us as matters of original jurisdiction, as opposed to being presented as an appeal." *Id.* at *4. Both *Hall* and *Featherstone* came before the Court in the context of ordinary appeals that were not treated as disciplinary actions and did not go through any disciplinary channels.

The Utah Supreme Court makes it equally clear that, because of constitutionally protected due process of law rights, the term "discipline" may not be used loosely, but rather, applies to specific procedures that are in the "exclusive province of [the Supreme Court] . . . conducted under the rules and directions [the Court] give[s]." *Id.* at 5. The *Harding* Court outlines those carefully defined procedures, rules and directions as follows:

> **First**, the Utah State Bar's Ethics and Disciplinary Committee Screening Panel typically handles the factual investigation of a complaint or referral. *Id.*
>
> **Second**, if the Ethics and Disciplinary Committee determines that a serious violation of the canons of lawyer behavior has occurred, the matter is directed to the district court for hearing on that evidence. *Id.*
>
> **Third**, acting under the Utah Supreme Court's delegation of its exclusive authority, a district court may hear the case or the Court may decide the case itself without the district court's involvement. *Id.*
>
> **Fourth**, the Rule of Lawyer Discipline and Disability under which lawyer discipline proceedings are conducted, do not provide the attorney the right of direct or cross-examination, and the screening panel does all the questioning. *Id.*
>
> **Fifth**, the Rules of Lawyer Discipline and Disability govern all aspects of a "quasi-administrative" disciplinary hearing, including presentation of witnesses, oral argument and the transcript. *Id.*

Neither *Hall* nor *Featherstone* involved even one procedure, rule or direction the Utah Supreme Court has defined as "lawyer discipline" within its "exclusive jurisdiction." Neither case arose from a quasi-administrative proceeding. When the motion for *pro hac vice* admission was made on March 23, 2003, Mr. Atkin had no reason to believe he had been "disciplined by a court."

B.  **Neither *Hall* nor *Featherstone* Involves "Lawyer Discipline."**

Moreover, Mr. Atkin has **never** been subjected to "lawyer discipline" as the Utah Supreme Court defines it. He has been in good standing before the Utah State Supreme since the day he was sworn into the Utah State Bar in 1984.

   1. ***Hall* required Mr. Atkin to pay expenses of an attorney who traveled to a status conference after Mr. Atkin forgot to inform the attorney it had been continued.**

In *Hall*, 988 P.2d at 948, Mr. Atkin and another attorney participated in an April 1996 telephone conference with the district judge who asked Mr. Atkin to notify an absent attorney that the date for a scheduling conference had changed. The *Hall* court called the request an "informal pretrial order relating to a pretrial conference." *Id.* The court's request slipped Mr. Atkin's mind, and he did not call the absent counsel, who traveled to the scheduling conference. The Court rightly held it was "reasonable" for Mr. Atkin to pay the attorney for time spent traveling to court for the continued scheduling conference. *Id.* at 948-49. Mr. Atkin paid the attorney $1,264, and the issue was closed.

*Hall* did not find Mr. Atkin's oversight was intentional or resulted in tactical advantage. Indeed, since the court appearance was merely a scheduling conference, the attorney was not required to prepare for it and his client was not prejudiced in any way. Mr. Atkin's oversight did not affect his own clients. Indeed, in the same *Hall* opinion, Mr. Atkin's clients prevailed in having summary judgment for a defendant reversed and entered in their favor. *Id.* at 945-46.

*Hall* does not mention "lawyer discipline," and none was undertaken by any court or the Utah State Bar. In the eight years since Mr. Atkin's oversight, the case has not affected his standing to practice in any Utah court or other court in the nation. Mr. Atkin therefore had no notice or reason to believe *Hall* should have been set out in the subject *pro hac vice* motion.

7

## 2. *Featherstone* involved only Utah R. Civ. P. 37 discovery sanctions.

In *Featherstone*, 34 P.2d 194, Mr. Atkin's client sued his partners regarding the extent of his ownership in the corporation. On May 10, 1993, a secretary and treasurer of the corporation voluntarily initiated telephone contact with Mr. Atkin and consented to his conversation being tape recorded. When Mr. Atkin attempted to use the conversation's transcript during deposition of the secretary and treasurer, opposing counsel objected and requested the full transcript. Ruling on cross-discovery motions, the district court determined that, because the secretary-treasurer had authority to bind the corporation, Mr. Atkin violated Utah R. Prof. Conduct 4.2 by communicating with a person represented by counsel and excluded the transcript from use at trial. The district court overruled Mr. Atkin's work product objections and found he should have produced the transcript. Although the district court found only Utah R. Civ. P. 37 discovery violations, it awarded the defendants $1,500 in Utah R. Civ. P. 11 sanctions.

On appeal, the Utah Supreme Court discussed the ambiguity in Rule 4.2 and the myriad court opinions interpreting who, in a corporate setting, is a "party" represented by counsel:

> [D]espite the clarity of the rule's goal, the question of how to properly interpret rule 4.2 – particularly with regard to the scope of the term "party"–has created considerable controversy within the legal profession, and courts have enunciated a variety of tests to generate their answers. . . .

*Id.* at 201. The Court then cited numerous cases with widely varying results. *Id.* Quoting the Utah R. Prof. R. 4.2's official comment, the Court reasoned that the question turned on whether the secretary and treasurer's position made him a represented person. *Id.* at 201-02.

The Court expressly stated that the official comment to Rule 4.2 in place on May 10, 1993 was ambiguous and required the Court's clarification. *Id.* at 202 n.4. The Court further stated that no such clarification would have been necessary if the new Rule 4.2 had been in place, because it

8

specifically lists a secretary and a treasurer as part of a corporation's "control group" deemed represented by counsel. *Id.*

**Mr. Atkin affirmatively states to this Court that, had the new rule been in place or the prior Rule 4.2 been unambiguous, he would not have taken the secretary-treasurer's call.**

The Court held that "[t]ypically, a corporation's secretary or treasurer cannot bind the company through declarations unless they are combined with an authorized act." *Id.* The Court found, however, that Rule 4.2 applied to the conversation since the subject secretary-treasurer's signature was on issued stock and that the telephone call included discussion of stock issuance. *Id.*

The Court reversed Rule 11 sanctions and held the district court should have imposed only Rule 37 discovery sanctions. The Court expressly held that

> the trial court in this case never used Atkin's violation of rule 4.2 as a basis for awarding sanctions. Rather, the court excluded use of the transcript during trial because of Atkin's unethical means of obtaining the conversation to which it referred, and awarded costs pursuant to Utah Rule of Civil Procedure 37(a)(4). . . .

*Id.* at 204 n.7 (emphasis added).

**Here again, the Utah Supreme Court, which has original jurisdiction over any lawyer discipline, saw no reason to refer Mr. Atkin to the Utah State Bar or undertake its own disciplinary proceedings.** Indeed, the Court expressly stated that, if the defendants believed Mr. Atkin's actions required "additional attention," they should take the matter up with the Utah State Bar under Utah R. Law. Discipline & Disability 10(a). *Id.* Mr. Atkin paid the discovery sanctions, and the issue was closed.

*Featherstone* does not mention "lawyer discipline," and none was undertaken by any court. In the 11 years since Mr. Atkin's conversation, the case facts have not affected his standing to practice in any Utah court or other court in the nation. Mr. Atkin therefore had no notice or reason to believe *Featherstone* should have been set out in the subject *pro hac vice* motion.

9

## II. COURTS DO NOT REQUIRE *PRO HAC VICE* APPLICANTS TO DISCLOSE EVERY ORDER THAT THEY PAY ATTORNEY FEES AND COSTS, WHEN THE ORDERS DO NOT AMOUNT TO DISCIPLINARY ACTION.

Mr. Atkin respectfully submits that, since neither *Hall* nor *Featherstone* involves "lawyer discipline" as defined by the Supreme Court and did not, under applicable case law, involve conduct that would have required denial of admission *pro hac vice*, neither Mr. Atkin nor Mr. Cummingham should be sanctioned for not referring to the two cases.

Recognizing the severity of depriving a litigant its counsel of choice, particularly in a specialized area of law such as CROA litigation, Circuit Courts hold that attorneys may not be denied *pro hac vice* admission unless they have engaged in conduct unless the district court is faced with evidence that would warrant an attorneys' disbarment in that jurisdiction:

> Admission to a state bar creates a presumption of good moral character that cannot be overcome merely by the whims of the District Court. An applicant for admission pro hac vice who is a member in good standing of a state bar may not be denied the privilege to appear except "on a showing that in any legal matter, whether before the particular district court or in another jurisdiction, he has been guilty of unethical conduct of such a nature as to justify disbarment of a lawyer generally admitted to the bar of the court."

*Schlumberger Technologies, Inc. v. Wiley*, 113 F.3d 1553, 1559 (11th Cir. 1997) (quoting *In re Evans*, 524 F.2d 1004 (5th Cir. 1975)).

On facts similar to but more egregious than the *Featherstone* facts, the Eleventh Circuit reversed denial of admission *pro hac vice* of an attorney who, in the same case but before it was filed, communicated with a target defendant who not only was represented but asked for and was told he did not need an attorney during a forced audit interrogation. *Schlumberger*, 113 F.3d at 1555-57.

The Eleventh Circuit found that "even though [the attorney's] conduct is related to the case at bar, the conduct occurred before the action was ever filed, did not occur in front of the district court, and was not of a type to disrupt the proceedings before the court." *Id.* at 1158. Mr. Atkin's 8- and 11-year-old facts are in <u>different cases</u>, and did not affect his representation before this Court.

*Schlumberger* concluded that the order denying *pro hac vice* admission had to be vacated, because the district court did not find counsel had violated ethical rules that would warrant disbarment. *Id.* at 1561-62.

In *Martens v. Thomann*, 273 F.3d 159, (2nd Cir. 2001), the Second Circuit reversed revocation of *pro hac vice* status based on an attorney's conduct in other courts. The *Martens* Court cited to the Eleventh Circuit case, *Kirkland v. Nat'l Mortgage Network, Inc.*, 884 F.2d 1367, 1372 (11th Cir. 1989), where the court stressed the serious nature of sanctions flowing from alleged *pro hac vice* violations.

In another similar case, *Sedona Corp. v. Ladenburg Thalmann*, 2003 WL 22339357 (S.D.N.Y. October 14, 2003), defense counsel resisted admission *pro hac vice* of plaintiffs' counsel who had committed discovery abuses and flouted court orders by serving prohibited subpoenae. *Id.* at *1- 2. (Exhibit "G") One case was dismissed as a discovery sanction. *Id.* at 2. The *Sedona* Court's ruling applies in this case:

> The opposition to the application has given the Court great pause.... Nevertheless, those judges did not revoke the offending attorneys' admission to the Court in the actions before them, nor did they refer them for disciplinary action. **Were this Court to deny the applications for admission, it would be determining effectively that the attorney-applicants should not be permitted to practice in this Court in any action, because of discovery-related conduct which occurred in other cases, where even the judges did not impose or recommend such a sanction. The Court views such a course as unduly harsh, particularly when balanced against [their clients'] interest in being represented by the attorneys of its choice.**
>
> ... The Court therefore grants the [attorneys'] applications ... to practice in the court *pro hac vice* ....

*Id.* at 3-4 (emphasis added).

Mr. Atkin respectfully submits that, since no Utah court has seen the need to discipline him, for this Court to sanction Mr. Cunningham or him would be unduly harsh.

11

### III. SANCTIONS IN CONNECTION WITH *PRO HAC VICE* ADMISSION COULD HANG OVER MR. ATKIN'S NAME AND CAREER FOR YEARS.

The *Schlumberger* court fully acknowledged that sanctions related to alleged *pro hac vice* violations could severely limit an attorney's ability to practice in courts outside his state of licensure and should not be imposed lightly or without notice and opportunity to be heard.

> The district court in this case was mindful that "[a]ccusations of unethical conduct are among the most serious of allegations that [a c]ourt must consider . . . [and] aware that an attorney's honor as an officer of the [c]ourt is at issue here. . . ." We share the district court's sense of gravity over this issue, because "the brand of disqualification on grounds of dishonesty and bad faith would well hang over an attorney's name and career for years to come."

*Schlumberger*, 113 F.3d at 1562 (quoting *Schlumberger* district court and *Kirkland*, 884 F.2d at 1370).

Mr. Atkin has a long career ahead of him and will undoubtedly be required to seek *pro hac vice* admission again. He respectfully requests that the Court not impose additional sanctions related to facts 6 and 11 years old for which he has paid and for which no court ever "disciplined" him within the meaning of "lawyer discipline" as Utah courts define it. Mr. Atkin had every reason to rely on the Utah Supreme Court's definition of "discipline," because both *Hall* and *Featherstone* were before that Court. Because of the gravity of the charges, should the Court be inclined to grant sanctions Mr. Atkin respectfully requests oral argument.

## CONCLUSION

On the basis of these facts and authorities, Mr. Atkin respectfully requests that neither Mr. Cunningham nor he be sanctioned for representations in the *pro hac vice* motion.

DATED this 15TH day of December 2004.

ATKIN & SHIELDS, P.C.

*/s/ Blake S. Atkin*

BLAKE S. ATKIN
136 South Main Street, 6th Floor
Salt Lake City, UT 84101
Tel. (801) 533-0300
Fax (801) 533-0380

12

## CERTIFICATE OF SERVICE

I hereby certify that true and correct copies of the foregoing RESPONSE OF BLAKE S. ATKIN TO ORDER TO SHOW CAUSE was mailed first class, postage prepaid on this 15TH day of December 2004 to the following:

Joanne S. Faulkner, Esq.
123 Avon St.
New Haven, Connecticut   06511-2422

Richard H.G. Cunningham, Esq.
12 Kenilworth Drive East
Stamford, Connecticut   06902

Victor Lawrence, Esq.
LEXINGTON LAW FIRM
634 South 400 West
Salt Lake City, Utah   84101