UNITED STATES DISTRICT COURT
### DISTRICT OF CONNECTICUT

| | |
|---|---|
| MICHELLE GOKTEPE<br><br>v.<br><br>VICTOR LAWRENCE d/b/a<br>    LEXINGTON LAW FIRM | DEFENDANT'S MEMORANDUM IN SUPPORT OF MOTION FOR REFERENCE TO SPECIAL MASTER PURSUANT TO FRCP 53<br><br>CASE NO. 3:03CV 0089 (MRK)<br><br>Judge Mark Kravitz |

Defendant hereby respectfully submits his Memorandum in Support of Defendant's Motion for Reference to Special Master Pursuant to Rule 53 of the Federal Rules of Civil Procedure. This memorandum is submitted as follows:

### NATURE OF THE CASE

This action was brought on January 13, 2003 upon Plaintiff's claim against Defendant, a sole proprietorship law firm, for actual and punitive damages for Defendant's alleged violation of 15 USC § 1681 et seq., (Fair Credit Reporting Act or "FCRA"), Conn. Gen. Stat. §36a-700, (Connecticut Credit Clinics Act or "CCCA") and Conn. Gen. Stat. §42-110a, (Connecticut Unfair Trade Practices Act or "CUTPA"). From evidence introduced by the parties in this case, Plaintiff's alleged actual damages consist of $110.00. *See* Defendant's April 24, 2004 Memorandum in Support of Motion to Dismiss Second Amended Complaint.

**Difficulties with Discovery.** During the pendency of this action the parties have so far promulgated a total of eleven sets of requests for discovery encompassing 233 separate discovery items. The great majority of these requests are embroiled in contentious discovery disputes.

Plaintiff has made numerous discovery requests for information and documents flagrantly outside the scope of Plaintiff's claims in this case. For example, Plaintiff's requests have included requests for *all* assignments or agreements between parties not party to this lawsuit (Plaintiff's September 17, 2004, Fourth Discovery Request at 1 attached hereto as Exhibit "A" and by this reference made a part hereof); and requests for the names and addresses of all of Defendant's Connecticut clients (Plaintiff's Request for Discovery, dated July 2004, Interrogatories at 1 attached hereto as Exhibit "B" and by this reference made a part hereof); and admissions regarding the number of all clients represented by Defendant (Exhibit "A" at 2).

Defendant has objected to Plaintiff's numerous overreaching requests on the grounds they lacked relevance and other grounds even given the wide latitude granted discovery requests. In an attempt to move the case forward to a conclusion, the Court has hosted several status conferences and the parties have stipulated to the entry of a Protection Order dated October 15, 2004 and modified on November 15, 2004

Since the Protection Order was entered, Plaintiff has served Defendant several extensive discovery requests that have again far exceeded the acceptable boundaries of discovery and a Motion to Compel answers to these requests dated January 10, 2005. In these instances, Defendant has renewed objections to many of Plaintiff's discovery requests in light of the Court's Protection Order on relevancy and other grounds. At this juncture, the parties are at a time consuming and unproductive impasse in exchanging discovery in this case.

**The Complexity of This Case and Related Discovery Disputes.** It is clear from the Court records, the parties' difficulties with discovery, and the case pleadings, there is

a fundamental disagreement about the nature of this case. This disagreement is the cause of the impasse over discovery.

The 2nd Amended Complaint in this case deals with Plaintiff's allegations of Defendant's violations of the FCRA, CCCA and CUTPA. However, Plaintiff's discovery requests demonstrate an attempt on her part to widen this case into some sort of class action or Attorney General investigation against Defendant. As is becoming clear in this case, Plaintiff's attorney seeks this overreaching discovery to share it with counsel in other class actions suits against Defendant. This situational statement is supported by Plaintiff's continued requests for discovery that are outside the scope of the case. *See* Exhibit "A". It is also supported by Plaintiff's January 10, 2005 Memorandum in Support of Plaintiff's Motion to Compel at page 4, and accompanying exhibits, where she demonstrated that she has shared documents with other counsel litigating other cases against Defendant.

Further, it is supported by the failure of Plaintiff's attorney, Ms. Joann Faulkner, to convey Defendant's offer to (a) settle at the amount *Plaintiff* requested; and then (b) Plaintiff rejecting the offer because it contained a non-disclosure and a non-defamation clause. *See* Defendant's Memorandum in Opposition to Plaintiff's Motion for Settlement Conference at 3 through 7 and Exhibits "F" through "I"; *See* June 8, 2004 e-mail from Joann Faulkner to Blake Atkin attached hereto as Exhibit "C" and by this reference made a part hereof. The reason the non-disclosure clause caused the rejection of the settlement is because it would have prevented Ms. Faulkner from sharing discovery in this case with the other counsel in other class action cases brought against Defendant. Ms. Faulkner's client surely had no interest in rejecting Defendant's offer, for the amount *Plaintiff*

requested, merely so Plaintiff could avoid a non-disclosure and a non-defamation clause.
All of this suggests that Plaintiff's attorney is less interested in resolving Plaintiff's
individual dispute with Defendant, and more interested in using this case as a fishing
expedition and discovery device for information Ms. Faulkner can share with other allied
counsel.

## ARGUMENT

During the pendency of this action certain discovery disputes, coupled with the
fundamental disagreement over the nature of the case, have created a case that is difficult
and time consuming to manage due to its procedural and substantive posture.  The docket,
with discovery still bogged down, now logs a voluminous 118 entries, comprising 115
documents.  This provides abundant evidence that the parties have not acquired, and are
not yet converging on providing, the requisite information from each other in order to
prepare this case for trial.  As of this date, objections regarding relevancy and the
Defendant's request for a Protection Order have yet to be determined by the Court.

## I.    It is Proper for the Court to Issue a Reference to a Special Master in this Case

It is permissible and proper and in this case, and Defendant believes it is
necessary, for the Court to issue a reference to a Special Master *for the limited purpose of
managing and deciding the parties' discovery disputes*.  Rule 53(a) guides the Court
regarding when a Special Master may be referenced.  The Rule provides: "[u]nless a
statute provides otherwise, a court may appoint a master only to:  address pretrial . . .
matters that cannot be addressed effectively and *timely* by an available district judge or
magistrate judge of the district." Fed. R. Civ. P. 53(a)(1)(C) (emphasis added).  The

discovery disputes alone between the parties are a pretrial matter that has proven over the past two years not to have a *timely* resolution.

As addressed above, it is proper for the Court to reference the case to a Special Master for this limited pretrial purpose because the parties' discovery dispute has evolved into a complex and difficult litany of the parties' demands and objections. The volume of pleadings, the time spent in conference regarding this dispute and the complexity of the issues raised by the parties' demands and requests are evidence that this discovery dispute cannot be solved by this Court, in a timely manner before trial without the availability of the assistance of a special master.

Courts have addressed this type of situation before. One court has observed that when the parties are involved "[i]n a jury trial, the reference [to a Special Master] should be made only when the issues are complicated." *Hiern v. Sarpy*, 161 F.R.D. 332, 334 (E.D. La. 1995). Another court has also recognized that a Special Master can be used "when unusual circumstances exist." *Dairy Queen, Inc., v. Wood*, 369 U.S. 469, 478 (1962).

Unusual circumstances exist in this case. There is a fundamental dispute regarding the nature of the case. Plaintiff seeks to bootstrap this case involving a narrow dispute between an attorney party and one individual client regarding $110.00 of services into an Attorney General-like investigation of Defendant's services to all of his clients. *See* Defendant's Response to Plaintiff's Motion to Compel Discovery Answers at 1-2. Over the past two years there has been no narrowing of the issues through discovery. Conversely, Plaintiff has attempted only to greatly expand the issues and to use this case

as a vehicle or conduit through which information can be relayed to allied attorneys interested in pursuing Defendant in class actions.

Additionally, this fundamental dispute regarding the nature of this case has fueled a myriad of demands and objection which in and of themselves present complex discovery issues to this Court for decision. The Court cannot take the time to manage this Herculean task on its own and should refer it to a Special Master to decide these discovery disputes and keep the case moving toward trial.

## II.    Defendant Proposes that the Parties Equally Bear the Cost of the Special Master

Defendant proposes, in light of the Court's December 23, 2004 order, this Motion and in the spirit of procedural efficiency, that the parties equally bear the initial fees and costs of the Special Master, with the ultimate fees and costs to be apportioned at the conclusion of the case. This requirement alone will restrict either party from asserting frivolous claims.

## CONCLUSION

The role of the Special Master is designed to assist the Court in cases similar to the case at bar. The Special Master can be referenced by the Court in this case for the purpose of deciding the parties' complex discovery disputes in order to move this case out of the morass in which it is consumed. For these reasons and the reasons listed above, Defendant respectfully requests that his motion for a reference to a Special Master be granted.

DATED this _____ day of January 2005.

Victor Lawrence
P.O. Box 1413
Bountiful, Utah  84011-1413
Tel.: (801) 296-0252
Fax: (801) 363-0976

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that a true and correct copy of the foregoing document was

served by Federal Express and by First Class U.S. mail, postage prepaid, on this

_____ day of January 2005, to the following:

Joanne S. Faulkner, Esq.
123 Avon Street
New Haven, CT  06511-2422

# Exhibit

## A

UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT



MICHELLE GOKTEPE

v.                                    CASE NO. 3:03CV 0089 (MRK)

VICTOR LAWRENCE
      d/b/a/ LEXINGTON LAW FIRM           July 19, 2005

### THIRD DISCOVERY REQUEST

INTERROGATORIES

The plaintiff requests defendant to respond to the following interrogatories under

oath. Please see  Local Rule 26 for definitions, except that "Identify" also  means provide

"desk"  name  or alias, and  period  during  which employed  by  defendant.

1.   Provide the name and address of all your Connecticut clients during the last

quarter of 2002.

2.   Provide the number of  disputes which did not result in removal of a disputed

item from a credit report during 2003.

3.   Identify any person or entity (affiliate program described at LLF 0236 ff.) to

whom payment was made due to plaintiff's entry into a retainer after visiting a referring

website.

4.   What is the meaning of E2 (D&M) listed at LLF 0050?

5.   Set forth the average number of letters to credit bureaus sent by Lexington

weekly during the last quarter of 2002, or any recent quarter.

6.   List the states in which defendant is licensed to do business as a debt adjuster

or credit repair entity.

REQUEST FOR PRODUCTION

1. All portions of any videotape and/or audio recording of the FCRA conference attended

by defendant in Orlando FL.

2. Copies of any 2002 or 2003 quarterly statistical report as to numbers of credit bureau

disputes processed by defendant.

THE PLAINTIFF

BY _____ /s/ Joanne S. Faulkner
JOANNE S. FAULKNER ct04137
123 Avon Street
New Haven, CT 06511-2422
(203) 772-0395
j.faulkner@snet.net

# Exhibit
# B

UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

MICHELLE GOKTEPE

v.                                        CASE NO. 3:03CV 0089 (MRK)

VICTOR LAWRENCE
    d/b/a/ LEXINGTON LAW FIRM          September 17, 2004

### FOURTH DISCOVERY REQUEST

### REQUEST FOR PRODUCTION

<u>Outside service provider</u> includes any individual not directly employed by defendant and any business entity that provided services to defendant or his internet-based clientele, including the provider of any internet services, training, IT services, data services, marketing services, advertising, employment services, consultants, licensors, lessors, internet affiliates, providers of credit reports recommended by defendant such as bestcreditreports.com, truecredit.com, confidentialcredit.com.

1. All 1099-MISC or similar tax forms issued to any outside service provider for the calendar year 2002.

2. All invoices received from any outside service provider for the calendar year 2002.

3. All records showing income received from any outside service provider for the calendar year 2002.

4. All records showing payments made to any outside service provider for the calendar year 2002.

5. All records showing Lexington's income and expenses for the months of September and October 2002.

6. All documents dated 1996 or thereafter showing any agreements or assignments involving defendant, Jayson Orvis, Lexington Law, Jamis Johnson.

7. All defendant's agreements with Consumer Credit Solutions in effect in 2002.

8. All defendant's agreements with any entity managed or owned by Jayson Orvis or Deon Steckling.

9. All defendant's agreements with any outside service provider in existence during 2002.

10. All documents reflecting defendant's sources of income other than from clients of Lexington Law, and other than karate and fly fishing enterprises.

11. All documents reflecting agreements to do data entry for other companies.

12. All documents reflecting agreements to sell entered data to other companies.

## REQUEST FOR ADMISSIONS

Pursuant to F.R.Civ.P. Rule 36, Plaintiff requests Defendant to admit, for the purposes of this action only, the truth of the following matters and the admissibility, authenticity, existence, genuineness and due execution of the referenced documents. Please observe your Rule 36 obligation to respond in good faith by fairly meeting the substance of the request, admitting what is true and qualifying your admissions as necessary.

1. The attached page is an excerpt from defendant's Web Site as it existed during the fourth quarter of 2002.

2. Defendant had at least 30,000 active clients during the last quarter of 2002 who had signed up for his services through the Lexington Law internet site (hereafter "e-mail clients").

3. Victor Lawrence was the managing and directing attorney for email clients during the last quarter of 2002.

4. During the last quarter of 2002, emails sent to defendant's e-mail clients by his staff included an indication that a copy of the email was forwarded to Victor Lawrence.

5. During the last quarter of 2002, Defendant's computers were preprogrammed to send welcome letters to email clients over the signature of Victor Lawrence.

6. During the last quarter of 2002, Defendant's computers were programmed to send monthly reports to email clients over the signature of Victor Lawrence.

7. For the last quarter of 2002, defendant claimed that some 83,250 entries had been removed from clients' credit reports.

8. The report for the last quarter of 2002 shows 41 pages of deletions for October 1, 2002, amounting to some 1,475 deletions for that date alone.

9. During the last quarter of 2002 data entry clerks were paid at least $10 per hour, or could be paid a piece rate of $.07 per tradeline.

10. During the last quarter of 2002, there were a dozen or so persons working 4 p.m.

to midnight who entered tradelines from credit reports; issued computer instructions to send dispute letters which simultaneously emailed the client a form letter reporting that a dispute had been sent; or responded to email clients over the signature of the client advocate assigned to that client.

11. During the last quarter of 2002, for email clients, staff signed credit disputes, handwrote addresses on envelopes for credit disputes, and put a postage stamp on the credit dispute envelopes.

12. During the last quarter of 2002, staff sorted the outgoing email clients' letters by states.

13. During the last quarter of 2002, outgoing email client's stamped dispute letters were sent in bulk, including by Federal Express or UPS, to contacts in other states (unless the email client's state was Utah) to convey to a local post office for mailing.

14. During the last quarter of 2002, defendant had over a thousand dispute letter templates.

15. Some dispute letter templates have been drafted by nonlawyers who were paid $3 per letter if the attorneys approved the letter for use.

16. During the last quarter of 2002, defendant had several types of stationery to use for the email clients' dispute letters, including notebook style paper.

17. During the last quarter of 2002, defendant bought many different first class postage stamps to use on email clients' dispute letters.

18. During the last quarter of 2002, defendant accepted shipments of mail from out of state entities for mailing from a post office in Utah.

19. During the last quarter of 2002, an average of 1000 credit reports were sent to defendant by email clients per day.

20. During the last quarter of 2002, data entry staff could dispute 600-700 tradelines in an eight hour shift.

21. During the last quarter of 2002, defendant limited staff to disputing four items at a time with Trans Union and up to six items at a time with Equifax and Experian.

22. During the last quarter of 2002 Defendant had staff dispute tradelines as follows: lates first, then collections, then charge offs; then included in bankruptcy.

23. During the last quarter of 2002 Defendant had staff dispute bankruptcies only after all tradelines showing "included in bankruptcy" or the like were all removed.

24. Defendant did not have any letters sent to plaintiff's creditors.

25. During the last quarter of 2002, defendant normally did not allow redispute of the same tradeline within 60 days.

26. During the last quarter of 2002, defendant had a department of at least three people engaged in emailing former clients to try to get them to reenter the dispute program.

27. During the last quarter of 2002, email clients reentered Lexington's dispute program at the rate of over 250 per month.

28. Plaintiff did not authorize defendant to submit false information to credit bureaus.

29. Defendant did not provide the text of the proposed dispute letter to plaintiff for review before it was sent.

30. Defendant does not provide the text of a proposed dispute letter to email clients before it is sent.

31. Defendant's interaction with email clients is highly automated though application of computer technology.

32. Defendant's handling of plaintiff's matter was typical of the handling of email clients.

33. During October, 2002, Victor Lawrence was not personally aware that plaintiff was his client.

34. Because of the highly automated system for email clients, personal action or intervention by an attorney in an individual email client's matter is normally not necessary.

35. Because of the highly automated system for email clients, a letter on the Lexington Law letterhead by an attorney is normally not sent in an individual email client's dispute with a credit bureau.

36. During the last quarter of 2002, defendant's policy was to conceal from credit bureaus any involvement of Lexington in an email client's normal dispute process.

37. Under Utah Ethics Op 97-10, the attorney must keep a copy of every page of internet web page advertisements for two years.

38. Defendant did not keep a copy of each of Lexington Law's web pages for September or October 2002.

38. Defendant did not keep a copy of each of Lexington Law's web pages for September or October 2002.

1.     Defendant objects to the following depositions noticed up to be conducted by Plaintiff: 1) the "continued" deposition of Victor Lawrence noticed for October 25, 2004, at 10:00 a.m. (Eastern) to be held at the offices of Sanders, Gale & Russell, 437 Orange Street, New Haven, CT'; 2) the "continued" deposition of Victor Lawrence noticed for October 27, 2004, at 10:00 a.m. (Eastern) to be held at the offices of Sanders, Gale & Russell, 437 Orange Street, New Haven, CT.

Defendant objects to both of these "continued" depositions on the grounds that on July 8, 2004, Plaintiff previously conducted and exhausted its "one day of seven hours" deposition of Mr. Lawrence, dictated by FRCP Rule 30(d)(2), and Plaintiff has failed to obtain leave or authorization of the court, and/or has failed to enter into a stipulation with Defendant, to allow Plaintiff additional time to depose Mr. Lawrence.

Defendant further objects to such depositions on the basis that they are noticed up to be conducted in New Haven, Connecticut, even though Mr. Lawrence resides in Bountiful, Utah.

2.     Defendant objects to the to the following depositions noticed up to be conducted by Plaintiff: 1) the telephonic deposition of "a knowledgeable person or persons designated by defendant" noticed for October 25, 2004, at 1:00 p.m. (Eastern) to be held at the offices of Lexington Law Firm, 634 S. 400 W., Suite 200, Salt Lake City, UT, 84101; 2) the telephonic deposition of "a knowledgeable person or persons designated by defendant" noticed for October 25, 2004, at 3:00 p.m. (Eastern) to be held at the offices of Lexington Law Firm, 634 S. 400 W., Suite 200, Salt Lake City, UT,

84101; 3) the telephonic deposition of "a knowledgeable person or persons designated by defendant" noticed for October 26, 2004, at 1:00 p.m. (Eastern) to be held at the offices of Lexington Law Firm, 634 S. 400 W., Suite 200, Salt Lake City, UT, 84101; 4) the telephonic deposition of "a knowledgeable person or persons designated by defendant" noticed for October 26, 2004, at 3:00 p.m. (Eastern) to be held at the offices of Lexington Law Firm, 634 S. 400 W., Suite 200, Salt Lake City, UT, 84101; 5) the telephonic deposition of "a knowledgeable person or persons designated by defendant" noticed for October 27, 2004, at 1:00 p.m. (Eastern) to be held at the offices of Lexington Law Firm, 634 S. 400 W., Suite 200, Salt Lake City, UT, 84101; 6) the telephonic deposition of "a knowledgeable person or persons designated by defendant" noticed for October 26, 2004, at 3:00 p.m. (Eastern) to be held at the offices of Lexington Law Firm, 634 S. 400 W., Suite 200, Salt Lake City, UT, 84101.

Defendant objects to all of such depositions on the grounds that Defendant Victor Lawrence dba Lexington Law Firm is a sole proprietorship, not a corporation, partnership or association, and therefore, FRCP Rule 30(b)(6) is not applicable.

## ARGUMENT

1.  **PLAINTIFF HAS ALREADY DEPOSED DEFENDANT FOR THE REQUISITE "ONE DAY SEVEN HOUR" PERIOD, AND HAS NOT OBTAINED LEAVE OR AUTHORIZATION OF THE COURT, NOR OBTAINED A STIPULATION WITH DEFENDANT, TO CONDUCT A FURTHER DEPOSITION OF DEFENDANT. IN ADDITION, DEFENDANT SHOULD NOT BE REQUIRED TO TRAVEL TO CONNECTICUT TO BE DEPOSED.**

FRCP Rule 30(d)(2) states the following:

> "Unless authorized by the court or stipulated by the parties, a deposition is limited to one day of seven hours. The court must allow additional time consistent with Rule 26(b)(2) if needed for fair examination of the

deponent or if the deponent or another person, or other circumstances, impedes or delays the examination."

In this case, Plaintiff already exhausted the "one day of seven hours" time period for deposing Victor Lawrence, at the all-day deposition of Mr. Lawrence on July 8, 2004. Plaintiff has not obtained leave or authorization of the court, nor has she obtained a stipulation from Defendant, to conduct a further deposition of Victor Lawrence. Accordingly, the "continued depositions" of Victor Lawrence noticed for October 25, 2004, at 10:00 a.m., and for October 27, 2004, at 10:00 a.m. are not authorized by the Federal Rules of Civil Procedure.

In addition, it is the general rule of law concerning the location of depositions, that "in the absence of exceptional or unusual circumstances, when a deponent resides at a substantial distance from the deposing party's residence, the deposing party should be required to take the deposition at a location in the vicinity in which the deponent resides, even if the deponent is a party." See, e.g., Metrex Research Corp. v. U.S., 151 F.R.D. 122, 125 (D. Colo. 1993). In this case, the deponent, Victor Lawrence, resides in Bountiful, Utah. Accordingly, as a matter of law, Plaintiff should be required to take any further deposition(s) of Mr. Lawrence in the vicinity of Bountiful, Utah—namely, the Salt Lake City, Utah, vicinity.

For the above-entitled reasons, Defendant objects to the "continued" depositions of Mr. Lawrence, noticed up for October 25, 2004, and October 27, 2004, in New Haven, Connecticut, and requests that such depositions be re-noticed in a manner that comports with the Federal Rules of Civil Procedure and other applicable law.

2.    **WHEREAS DEFENDANT IS A SOLE PROPRIETORSHIP, RATHER THAN A CORPORATION, A PARTNERSHIP OR AN ASSOCIATION, THERE IS NO AUTHORIZATION FOR PLAINTIFF TO NOTICE UP DEPOSITIONS DEMANDING DEFENDANT TO DESIGNATE A COMPANY REPRESENTATIVE TO APPEAR AND TESTIFY ABOUT PARTICULAR MATTERS.**

FRCP Rule 30(b)(6), by its express language, applies only to public or private corporations, partnerships, associations or governmental agencies.  Lexington Law Firm is the assumed business name of a sole proprietorship owned by Defendant, Victor Lawrence, and therefore, FRCP Rule 30(b)(6) does not apply to Defendant.  Accordingly, Plaintiff must notice up depositions in the case (and serve subpoenas) on particular individuals whom Plaintiff desires to depose, rather than notice up a general deposition requesting that Lexington Law Firm designate a company representative to testify about certain subject matter.

In addition, many of such noticed depositions of "a knowledgeable person or persons designated by defendant" overlap with the deposition of Gem Goktepe noticed up to be conducted by Defendant on October 25, 2004, at 1:30 p.m., and thereafter from day to day until completed.  Such deposition was noticed up prior to any of the depositions noticed up by Plaintiff.

For the above-entitled reasons, Defendant objects to the depositions of "a knowledgeable person or persons designated by defendant" noticed up at various times between October 25, 2004, and October 27, 2004, and requests that such depositions be re-noticed in a manner that comports with the Federal Rules of Civil Procedure and other applicable law.

DATED this _____ day of October, 2004.

Victor C. Lawrence
Defendant Pro Se
P.O. Box 1413
Bountiful, Utah 84011-1413
Tel.: (801) 296-0252
Fax: (801) 292-7575

CERTIFICATE OF SERVICE

I HEREBY CERTIFY that a true and correct copy of the foregoing Objection to

Noticed Depositions was served by First Class U.S. mail, postage prepaid, and by Federal

Express on this _____ day of October, 2004, to the following:


Joanne S. Faulker, Esq.
123 Avon Street
New Haven, CT  06511-2422

_____

# Exhibit
# C

**Main Identity**

**From:**    "J Faulkner" <j.faulkner@snet.net>
**To:**      "Atkin & Hawkins" <atkinandhawkins@velocitus.net>
**Sent:**    Tuesday, June 08, 2004 12:07 PM
**Subject:** Re: Goktepe v. Lawrence

Blake: I am away and did not want to download your attachments to someone else's computer. However, the size indicates that your proposal is not shorter than before.

Please try to boil it down to 2 pages and I will review it when I get back. Our agreement for $30,000, mutual releases and generally I don't enter into settlement agreements in such a cheap settlement. Confidentiality is not essential and does not end the litigation.

Talk to you when I get back.

Atkin & Hawkins <atkinandhawkins@velocitus.net> wrote:

Please see attached.

> ATTACHMENT part 2 application/msword name=060404-Blake reply and resend settle agree to Faulkner draft 1.0.doc

> ATTACHMENT part 3 application/octet-stream name=Stipulation for dismissal.wpd

> ATTACHMENT part 4 application/pdf name=Settlement Agreement_060404_Victor Signed.PDF

6/8/04