UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | |
|---|---|
| MICHELLE GOKTEPE<br><br>v.<br><br>VICTOR LAWRENCE d/b/a<br>    LEXINGTON LAW FIRM | DEFENDANT'S RESPONSE TO<br>MOTION TO COMPEL<br><br>CASE NO. 3:03CV 0089 (MRK)<br><br>Judge Mark Kravitz |

**DEFENDANT'S RESPONSE TO PLAINTIFF'S MOTION TO COMPEL**

I.  **Introduction**

Plaintiff filed her Motion to Compel Discovery on January 10, 2005 ("Motion"). In the Motion Plaintiff continues her on-going efforts to "poison the well" in the case against Defendant by throwing irrelevant toxic mud into the air in the hope that some of it will stick and unfairly contaminate Defendant or that it will divert the Court's view from the legitimate issues in the case.

The Motion also seeks to bootstrap Plaintiff's individual claims against Defendant up to the level of an *Attorney General's investigation* of Defendant's conduct toward *all* of his clients, and thereby to impermissibly expand the scope of discovery far beyond even the wide latitude normally allowed. Accordingly, this Response to the Motion ("Response") is longer than should be necessary. Herein, Defendant objects to the Motion's mudslinging and bootstrapping and to almost all of the overreaching discovery requests covered by the Motion.[1]

Finally, as the Motion and this Response painfully demonstrate, it is clear that the efficient litigation of this case requires the services of a special master. Defendant is filing such a request concurrent with this Response.

---

[1] Defendant reserves and preserves the right to file a Motion for Protective Order covering any of the Motion's discovery items that are not denied by the Court after considering the Motion and all responsive pleadings.

1

II.   **Plaintiff's Improper "Poisoning the Well" and Bootstrapping**

   A.   Poisoning the Well

Before identifying the discovery requests she seeks to compel, Plaintiff breathlessly exclaims a series of quotations criticizing credit repair organizations ("CRO"). Motion at 2. For example, the Motion quotes the Connecticut Attorney General saying, "These companies promised the impossible – to make accurate financial information miraculously disappear." Motion at 2. Yet, nowhere in her complaint, or in the Motion, does Plaintiff claim that Defendant did this.[2] In another statement, Plaintiff states that the BBB warns consumers "against" CROs. Motion at 2. Yet the Motion fails to state that Defendant is in good standing with the BBB.

Has there been misconduct by CROs in the past? Yes. Indeed, CRO misconduct may be continuing somewhere today. But, what the Motion does not say is that, given all that Congress knew about CRO misconduct, it did not make CROs *illegal*. Instead, Congress chose to *regulate* them. Plaintiff's discussion of CROs is nothing more than an ill-disguised attempt to use a toxic label in a fallacious syllogism of *guilt by association* to argue that: (i) some CROs have acted improperly, (ii) Defendant is alleged to be a CRO, (iii) therefore Defendant has acted improperly in the case at bar. This is the classic red-herring exercise of attempting to hide the weakness of one's own position by drawing attention away from the real issue to a side issue.

   B.   Plaintiff Cannot Bootstrap the Role of "Private Attorney General" Up To the Role of Attorney General Itself

The Motion claims that Plaintiff is acting as a "private attorney general" in this case. Motion at 3. The role of "private attorney general" relates to the award of attorney's fees

---

[2]   Nothing in this discussion in the Response may be interpreted or construed to be an admission by Defendant that he is a credit repair organization.

2

to a private party that successfully proves that a private defendant violated certain requirements of a civil statute. In so far as this authorizes Plaintiff to appropriately seek attorney's fees in this case, Plaintiff's characterization of herself as a "private attorney general" is correct. But, in the Motion and throughout this case, Plaintiff seeks to improperly elevate her role as a *private* attorney general up to the role of *Attorney General* itself: "Because the CROA allows plaintiff to seek relief based on defendant's engaging in acts, practices or courses of business which constitute or result in the commission of a deception on its *customers*, discovery is *not limited to precisely what happened to Plaintiff*." Motion at 3 (emphasis added).

As Plaintiff did when she misrepresented the status of a settlement in her Motion for Settlement Conference (Document #66, filed June 28, 2004 – see also Defendant's Response to Plaintiff's Motion for Settlement Conference, Document #68, filed July 13, 2004), **Plaintiff again misrepresents information to this Court. The language of Plaintiff in the Motion, emphasized above, does not appear in CROA.** CROA nowhere "allows" a Plaintiff to seek relief based on "Defendant's engaging in acts, practices or courses of business which constitute or result in the commission of a deception on its *customers*." Rather it specifically states that the conduct at issue is that relating to any "person." 15 U.S.C. §1679(b)(a)(4).[3] The statute uses the singular term "person" not the plural term "customers." Clearly, CROA does not elevate a private attorney general seeking attorney's fees for proving CROA liability in an individual case to an Attorney General authorized to investigate a CRO's conduct toward *all* of its clients.

Only the Attorney General can conduct the investigation through the broad and sweeping discovery Plaintiff seeks in this case, such as, whether Defendant acted improperly against parties other than Plaintiff. Plaintiff offers no supporting legislative or case citations to support

---

[3]   15 U.S.C. §1679(b)(a)(4) reads in full: [no person may] engage, directly or indirectly, in any act, practice or course of business that constitutes or results in the commission of, or an attempt to commit, a fraud or deception on any person in connection with the offer or sale of services of the credit repair organization."

3

her claim that she can conduct an Attorney General investigation here. Plaintiff is properly allowed to seek discovery of relevant information only about Plaintiff's claims regarding Defendant's conduct toward her individually. Plaintiff should not be allowed to bootstrap her role of private attorney general for purposes of attorney's fees up to the position of Attorney General itself.

    C.    <u>Plaintiff Cannot Bootstrap Her Punitive Damages Claim Discovery Up To an Attorney General's Broad Investigation</u>

In addition to bootstrapping Plaintiff's role as private attorney general, the Motion seeks to bootstrap Plaintiff's punitive damages claim up to the level of a broad Attorney General investigation. The Motion argues discovery is "not limited to precisely what happened to Plaintiff," and, "Indeed, to get punitive damages, she [Plaintiff] must show the frequency or persistence of noncompliance, the nature of the noncompliance, and the extent to which such noncompliance is intentional." Motion at 3.

Without conceding what it is that Plaintiff must show in order to obtain punitive damages in this case, Defendant can only be liable for punitive damages for his conduct against Plaintiff individually. *Continental Trend Resources, Inc. v OXY USA, Inc.*, 101 F.3d 634, 639 (10th Cir. 1996), cert. denied, 117 S. Ct. 1846 (1997) (in measuring punitive damages it is harm to the Plaintiff that is evaluated, not to the public generally or others not before the court). The Motion offers no citation to any case that supports its claim that punitive damages in a CROA case filed by one individual can be awarded on the basis of Defendant's conduct toward other individuals who are not parties to the case. In order to obtain punitive damages, to the extent Plaintiff must "show the frequency or persistence of noncompliance, the nature of the noncompliance, and the extent to which such noncompliance is intentional," she must show it, and can *only* show it, *exclusively* in the conduct of Defendant toward Plaintiff *individually*. Plaintiff cannot bootstrap

her claim for punitive damages for Defendant's conduct toward Plaintiff individually, into a claim for, and broad and sweeping discovery of information regarding, Defendant's conduct toward his other clients. *Continental Trend Resources*, 101 F.3d at 639 (in measuring punitive damages it is harm to the Plaintiff that is evaluated, not to the public generally or others not before the court).

III. **The Scope of Plaintiff's Discovery in this Case are Limited Only to Plaintiff's Cliams Individually**

F.R.C.P. 26(b) defines the parameters of permissible discovery in this case: "Parties may obtain discovery regarding any matter, *not privileged*, that is *relevant* to the claims or defenses of any party. . . ." (emphasis added). Clearly, Plaintiff can legitimately obtain discovery only of information that is *relevant* to *her* claims against Defendant and nothing more. In considering the Motion, it is necessary to look both at Plaintiff's claims against Defendant and the *relevancy* of Plaintiff's discovery requests in relation to those claims.

Plaintiff contracted for services from Defendant on September 25, 2002 and terminated the contract just under two months later on November 18, 2002. Plaintiff filed her complaint in this case on January 13, 2003. In her Second Amended Compliant, filed on February 10, 2004, Plaintiff alleged two counts.

In the First Count she alleged

In connection with Defendant's agreement to provide credit repair services [to Plaintiff], Defendant violated CROA, *inter alia*, §1679b(a)(1) by making untrue or misleading statements to a consumer reporting agency; §1679b(a)(3) by misrepresenting its services;[4] and §1679b(a)(4) by engaging in acts, practices or courses of business which constitute or result in the commission of a deception on its customers, Plaintiff or the consumer reporting agencies;[5] §1679b(b) by charging or receiving money for the

---

[4] Does Plaintiff have standing to sue under a claim that Defendant made untrue or misleading statements to a consumer reporting agency; §1679b(a)(3)?

[5] As noted above, this statement misstates the section of CROA it references by overstating the scope of the section to include, in this context, all of Defendant's clients rather than Plaintiff individually.

performance of its agreement before the service was fully performed; and §1679d(b) by failure to include the information required by that subsection.

In her Second Count, Plaintiff alleged that "Within three years prior to the date of this action Defendant engaged in acts and practices as to Plaintiff in violation of the Connecticut Credit Clinics Act ('CCCA'), Conn. Gen. Stat. §36a-700, and the Connecticut Unfair Trade Practices Act ('CUTPA'), Conn. Gen. Stat. §42-110a."

IV.  **The Boundary of Permissible Discovery is Wide but Not Infinitely Elastic**

The scope of discovery under the F.R.C.P. is traditionally quite broad. *Lewis v. ACB Business Services, Inc.*, 135 F.3d 389, 402 (6th Cir. 1998). However, "discovery, like all matters of procedure, has ultimate and necessary boundaries." *Oppenheimer Fund, Inc. Sangers*, 437 U.S. 340, 352 (1978). Rules of discovery, such as those governing interrogatories, do "not license the unlimited quizzing of an adverse party, *Greene v Raymond*, 41 F.R.D. 11, 13 (D. Colo. 1966) and caution must be exercised to assure that discovery techniques are not made instruments of oppression." *Carlson Companies, Inc. v. The Sperry and Hutchinson Company*, 374 F. Supp. 1080, 1088 (S.D. Minn. 4th Div. 1974).

Further, "the relevance standard of Rule 26 is not without bite," *Food Lion, Inc. v United Food & Commercial Workers International Union, AFL-CIO*, 103 F.3d 1007, 1012 (D.C. Cir. 1997), and "no one would suggest that discovery should be allowed of information that has no conceivable bearing on the case. *Id.* (citing 8 Wright, Miller & Marcus, *Federal Practice and Procedure*: Civil 2d §2008, pp. 105-06 (1994)). Indeed, while the standard of relevancy in discovery is a liberal one, "practical considerations dictate that the parties should not be permitted to roam in the shadow zones of relevance to explore matter which does not presently appear germane on the theory that it might conceivably become so." *Surety Association of*

6

*America v. Republic Insurance Company*, 388 F.2d 412, 414 (2nd Cir. 1967) (citing *Broadway & Ninety-Sixth St. Realty Co. v Loew's, Inc.*, 21 F.R.D. 347, 352 (S.D.N.Y. 1958)).

V.    <u>Defendant's Non-Exhaustive List of Objections to Plaintiff's Discovery Requests</u>

To minimize the length of this Response, Defendant provides a non-exhaustive list of the types of objections raised herein. Where applicable, the objections from this list will be stated in relation to each specific request for discovery encompassed by the Motion. When one of the objections is stated by identifying reference, the entire discussion associated with that objection is incorporated by reference into the response to the specific discovery request where it is cited, subject to any accompanying modifying discussion.

A.    <u>Objection Based on Irrelevant Dates of the Material Requested ("Objection I")</u>

Plaintiff contracted for services from Defendant for less than two months between September 25, 2002 and November 18, 2002. Requests for information arising before or after this period, the only period in which Defendant provided legal services to Plaintiff, have no bearing on Plaintiff's claims that the legal services Defendant provided to Plaintiff for less than two months in late 2002 violated CROA, CCCA or CUTPA and therefore may be irrelevant to Plaintiff's claims. *See Greene*, 41 F.R.D. at 14 ("All of the interrogatories allowed should be restricted in scope to the state of facts existing on January 11, 1962, the date Plaintiffs' cause of action accrued. . . . Evidence dated prior to or after that date would be of little probative value and would be irrelevant. . . .").[6] *See also Broadway & Ninety-Sixth St. Realty Co. v Loew's, Inc.*, 21 F.R.D. 347, 358 (S.D.N.Y. 1958) (disallowing deposition questions regarding anti-trust pooling arrangements made during periods not covered by complaint on relevancy grounds).

---

[6] While *Greene* addressed only interrogatories, there is no logical or legal reason why the principle of limiting discovery to the date the cause of action occurred stated therein should not apply here to Plaintiff's requests for production and for admissions as well as to Plaintiff's interrogatories. Defendant here argues that this discovery principle in *Greene* should so apply to all of Plaintiff's discovery requests.

7

B.  Objection Based on Irrelevant Contracts ("Objection II")

Discovery requests seeking assignments or agreements relating to Defendant and to which Plaintiff is not a party have no conceivable bearing on Plaintiff's claims that the legal services Defendant provided to Plaintiff for less than two months in late 2002 violated CROA, CCCA or CUTPA. *See Lewis*, 135 F.3d at 396 (court denied request to compel ACB to produce "the balance of its contract with AMEX" because any contract between ACB and AMEX had no relevance to the issue of whether ACB's collection efforts violated FDCPA or the OCSPA).

C.  Objection Based on Excessive Breadth of Request ("Objection III")

Requests for *all* of Defendant's commercial agreements, checks, invoices, or payment instruments, not directly involving Plaintiff and whether or not signed by Defendant, or statistics regarding all of Defendant's clients, or similar global requests, may be either too indefinite or all-inclusive and thus too broad to be relevant to Plaintiff's claims that the legal services Defendant provided to Plaintiff for less than two months in late 2002 violated CROA, CCCA, or CUTPA. *See Greene*, 41 F.R.D. at 14 (interrogatories too indefinite or all-inclusive are too broad in scope and regarded as irrelevant).

D.  Objection Based on Irrelevant General Business Activities ("Objection IV")

Requests for *all* of Defendant's commercial agreements, checks, payment instruments or similar routine commercial documents, not directly involving Plaintiff, or global requests for statistics, are irrelevant to Plaintiff's claims that the legal services Defendant provided to Plaintiff for less than two months in late 2002 violated CROA, CCCA, or CUTPA. *See Greene*, 41 F.R.D. at 15 (disallowing interrogatories relating to general business activities of the company).

E.  Objection Based on Impermissible Purpose of Using the Information in Proceedings Other than the Pending Suit ("Objection V")

8

As Defendant has brought to the attention of this court before,[7] it appears that Plaintiff's attorney in this case, Ms. Joanne Faulkner, is working with Daniel Edelman, Esq. ("Edelman"), counsel for a different plaintiff in another case filed against Defendant, *Iosello v. Lawrence*, Case No. 03 C 0987, filed in the Federal District Court in Chicago.

Indeed, Ms. Faulkner *confirmed* this collusion in Plaintiff's Reply in Support of Plaintiff's Motion to Strike Election to Appear Pro Se, dated December 22, 2004 ("Plaintiff's Reply in Support"): "The documents . . . are likely to have been prepared by Joann Shields . . . lead counsel in the *Iosello* [for Defendant] case pending in Chicago. They bear the same hallmarks of discovery obstruction she appears to have conducted in *Iosello*." Plaintiff's Reply in Support at 2. Ms. Faulkner could have made this argument only after reviewing Defendant's discovery documents in *Iosello*.

*Iosello* is a class action suit against Defendant. It is a companion case to another class action suit, filed by Mr. Edelman, Iosello's lead counsel, *D'Agostino v Lawrence d/b/a Lexington Law Firm*, Case No. 04C 3660. Ms. Faulkner has confirmed sharing documents to date with the lead counsel for both cases. One or more of these two proceedings other than this pending suit would benefit greatly in its class action claims against Defendant here by obtaining the broad information Plaintiff seeks to discover in this case. Ms. Faulkner and Mr. Edelman are also members of the National Association of Consumer Advocates ("NACA") and may be circulating information gleaned from the cases against Defendant on the NACA list-serve website.

---

[7] *See* Defendant's Memorandum in Opposition to Plaintiff's Motion for Settlement Conference, dated July 16, 2004 and accompanying Declaration of Rhiannon Lawrence in Support of Motion for Protective Order, dated November 4, 2003, attached thereto as <u>Exhibit L</u> ("R. Lawrence Declaration"), at ¶¶ 27-28.

Plaintiff's causes of action herein could be deemed rather straightforward; the sweeping and boundless discovery requests, on the other hand, do not serve plaintiff, they serve only Ms. Faulkner. Indeed Ms. Faulkner is a direct competitor of Defendant. It serves her, not her client, to seek such unlimited discovery.

The U.S. Supreme Court has unambiguously condemned the practice employed by Ms. Faulkner in this case – the practice of gathering discovery information in this case for use in other proceedings.

> In deciding whether a request comes within the discovery rules, a court is not required to blind itself to the purpose for which a party seeks information. Thus, when the purpose of a discovery request is to gather information for use in proceedings other than the pending suit, discovery is properly denied.

*Oppenheimer*, 437 U.S. 353, 57 (1978) (citing *Mississippi Power Co. v Peabody Coal Co.*, 69 F.R.D. 558, 565-568 (S.D. Miss. 1976); *Econo-Car International, Inc. v. Antilles Car Rentals, Inc.*, 61 F.R.D. 8, 10 (V.I. 1973), reversed on other grounds, 499 F.2d 1391 (3rd Cir. 1974).

  F. <u>Objection Based on the Attorney –Client Privilege ("Objection VI")</u>

F.R.C.P. 26 prohibits the discovery of information protected by the attorney-client privilege.

  G. <u>Objection Based on Burden Outweighing the Benefit ("Objection VII")</u>

The Second Circuit Court ruled Rule 26(b)(2) permits a district court to limit discovery methods that would otherwise be permitted if the court determines, among other things, that the burden or expense of the proposed discovery outweighs its likely benefit. *In re Subpoena Issued to Dennis Friedman*, 350 F.3d 65, 69 (2d Cir. 2003). *See also Carlson Companies, Inc.*, 374 F. Supp. at 1088 ("[W]hen the requests approach the outer bounds of relevance and the information requested may only marginally enhance the objectives of

providing information to the parties or narrowing the issues, the Court must weigh that request with the hardship to the party form whom discovery is sought."). Defendant objects to some of the discovery requests on the ground that the great burden or expense of answering such requests or producing such documents exceeds the benefit to Plaintiff.

## VI. Defendant's Response to Each of Plaintiff's Specific Requests in her Motion to Compel

In the following portion of this Response, each of Plaintiff's specific requests to compel discovery will be discussed, using the category headings stated in the Motion.

### A. Plaintiff's Third Discovery Request – Dated July 19, 2004

1. Question 3: "Identify any person or entity (affiliate program described at LLF 0236 ffl to whom payment was made due to Plaintiff's entry into a retainer after visiting a referring website."

    a. Response: Objection IV: Irrelevant General Business Activity. Plaintiff knows what advertising she saw at a "referring website," if any, and does not need the requested information for that purpose. This request for the identity of anyone, involved in Defendant's advertising program that may have received a payment, if any, based on Plaintiff signing a retainer, seeks irrelevant general business activity of Defendant and therefore has no conceivable bearing on Plaintiff's claims that the legal services Defendant provided to Plaintiff for less than two months violated CROA, CCCA or CUTPA. Further, independent of seeking irrelevant general business activity, this request has no conceivable bearing on Plaintiff's claims that the legal services Defendant provided to Plaintiff for less than two months violated CROA, CCCA or CUTPA.

2. Question 4: "What is the meaning of E2 (D&M) listed at LLF 0050?"

    a. Response: Relates to internal accounting procedures.

3. Prod. 1. All portions of any videotape and/or audio recording of the FCRA conference attended by Defendant in Orlando, FL.

        a.    <u>Response</u>: Objection based on Relevancy. This is a shining example of Plaintiff's overreaching efforts to discover information that has no conceivable bearing on Plaintiff's claims and is therefore irrelevant. Nothing heard or seen in a continuing legal education seminar can conceivably be relevant to Plaintiff's claims that the legal services Defendant provided Plaintiff for less than two months violated CROA, CCCA or CUTPA. Further, because Plaintiff's counsel, Ms. Faulkner, was a speaker at said conference, and Defendant was only an attendee, Ms. Faulkner has far greater access to such recordings.

B.    <u>Plaintiff's Second Production Request – Dated April 20, 2004</u>

    1.    Question 2: "Provide an authenticated copy of the pages of the Lexington Law web site (as Mr. Atkin represented he would do on November 18, 2003), preferably as it existed when Plaintiff entered into her retainer agreement or as close thereto as possible." Plaintiff was client: September 25, 2002 and November 18, 2002

        a.    <u>Response</u>: Defendant is making every reasonable effort to produce this.

C.    <u>Plaintiff's Fifth Production Request – Dated November 23, 2004</u>

    1.    Question 1: "All documents you signed during 2004 concerning or arising out of Lexington Law Firm, including any and all assignments, agreements with or signed by Jayson Orvis, John Heath, or Lexington Law."

    2.    Question 2: "All documents you received during 2004 concerning or arising out of Lexington Law Firm, including any and all checks, payment instruments, assignments, and agreements signed by Jayson Orvis, John Heath, or Lexington Law."

        a.    <u>Response</u>:

            i.    Objection I – Irrelevant Dates of Material Requested.

These global requests above ask for documents signed or received *anytime* in 2004, more than thirteen month after Plaintiff terminated the less than two months of Defendant's services to her.

12

The requested documents have no conceivable bearing on Plaintiff's claims that the legal services Defendant provided to Plaintiff for less than two months, thirteen months before the time period for the documents requested, violated CROA, CCCA or CUTPA.

            ii. Objection II – Irrelevant Contracts. These global requests above seek "assignments or agreements" relating to Defendant that were "signed or received" *anytime* in 2004. Such documents have no conceivable bearing on Plaintiff's claims that the legal services Defendant provided to Plaintiff for less than two months, thirteen months before the time period for the documents requested, violated CROA, CCCA or CUTPA.

            iii. Objection III – Excessive Breadth. These global requests for *all* 2004 checks, payment instruments, assignments and agreements are clearly too all-inclusive and thus too broad to be relevant to Plaintiff's claims that the legal services Defendant provided to Plaintiff for less than two months, thirteen months before the time period for the documents requested, violated CROA, CCCA or CUTPA.

            iv. Objection IV – Irrelevant General Business Activities. These global requests seek items that pertain only to Defendant's general business activities and not to Plaintiff's claims about the specific legal services that Defendant provided to her and therefore are not relevant to Plaintiff's claims that the legal services Defendant provided to Plaintiff for less than two months, thirteen months before the time period for the documents requested, violated CROA, CCCA or CUTPA.

            v. Objection V - Impermissible Purpose of Using the Answers in Proceedings Other than the Pending Suit. These global requests seek information that, while not useful to Plaintiff in proving her claims against Defendant in this case, may be useful to Ms. Faulkner's desire to share discovery information in this case with her cohorts in the

other cases of *Iosello* or *D'Agostino*, and to other members of the NACA list-serve website and should not be required to be produced.

        vi. Objection VI – Attorney-Client Privilege. These global requests for documents include retainer agreements signed by Defendant's clients. Such agreements are protected from discovery by the attorney-client privilege, inuring to the benefit of those clients. And only those clients, not Defendant, can waive such privilege.

        vii. Objection VII – Burden Unlikely to Outweigh Benefit. To the extent that this request seeks *all* documents received or arising out of Defendant in 2004, the request is overly burdensome for the Defendant with little benefit to Plaintiff.

    3.    Question 5: "All manuals, procedures, and protocols used by Defendant to comply with the Credit Repair Organizations Act."

        a.    <u>Response</u>: Defendant responded to this in Defendant's Supplemental Response to Plaintiff's First Request for Production of Documents, dated February 9, 2004, sent to Plaintiff before the Motion was served on Defendant.

    D.    <u>Plaintiff's Interrogatories – Dated May 2003</u>

        1.    Question 4: "Set forth the number of individuals who entered into retainer arrangements with Lexington during 2002 for credit restoration."

        2.    Question 5: "Set forth the number of individuals with a Connecticut address who entered into retainer arrangements with Lexington during 2002 for credit restoration."

        3.    Question 6: "Set forth the number of individuals with a Connecticut address who have been Lexington's customers for credit restoration and paid Lexington for services in connection with credit restoration during and after January 2000."

        a.    <u>Response</u>:

            i. Objection I – Irrelevant Dates of Material Requested. The global requests for statistical information above ask for the number of clients, nationally and

in Connecticut:

(a) that retained Defendant in 2002, including those who retained Defendant up to more than nine months *before* Plaintiff retained Defendant in late September 2002, and up to more than one month *after* Plaintiff terminated Defendant in late November 2002, and

(b) that retained and paid Defendant during the *indefinite* period "during and after January 2000," a period extending back almost two full years *before* Plaintiff retained Defendant and extending forward possibly to the present, more than three years after Plaintiff terminated Defendant.

One of the requests seeks the identity of all Defendant marketing affiliates who have *ever*, with *no time parameters whatsoever*, provided marketing. These global requests for statistical information regarding Defendant's clients, encompassing more than five years of time outside the two months Plaintiff received Defendant's services, have no conceivable bearing on Plaintiff's claims that the legal services Defendant provided to Plaintiff for less than two months in late 2002 violated CROA, CCCA or CUTPA.

     ii. Objection III – Excessive Breadth. These global requests for the number of *all* 2002 Defendant clients nationally, and also those only inside Connecticut, and for all Connecticut clients from January 2000 onward, are clearly too all-inclusive and thus too broad to be relevant to Plaintiff's claims that the legal services Defendant provided to Plaintiff for less than two months in late 2002 violated CROA, CCCA or CUTPA.

     iii. Objection IV – Irrelevant General Business Activities. These global requests seek information that pertain only to Defendant's general business activities of providing legal services to clients and not to Plaintiff's claims that the legal services

15

In relation to this question, the Motion cites *FTC v. Gill*, 265 F.3d 944 (9th Cir. 2001) to supports its claim that the requested documents will show Defendant was a "figurehead for lay persons who actually profit from the venture." Motion at 8. The Motion misstates *Gill*. In that case, the Court found that Gill, an attorney, essentially contracted out to Murkey, a non-attorney (formerly an attorney, having resigned under threat of disbarment), the credit repair services that clients signed up with his office to obtain. *See Gill*, 265 F.3d at 958 (Murkey performed the actual credit repair services for the Gill Law Offices). Nowhere in Plaintiff's complaint does she assert a claim that Defendant is a figurehead for non-attorneys who perform the actual credit repair services for Defendant, nor can she surreptitiously import such an allegation through the back door of a discovery request and then seek discovery information based on it.

    a.    <u>Response</u>:

        i.    Objection I – Irrelevant Dates of Material Requested.

This global request seeks Defendant financial information, including 1099s and tax returns for 2002-2004. The requested documents have no conceivable bearing on Plaintiff's claims that the legal services Defendant provided to Plaintiff for less than two months in late 2002 violated CROA, CCCA or CUTPA.

The requested financial and tax return information is not even relevant to Plaintiff's punitive damages claim. Plaintiff has not yet shown that Defendant's conduct toward Plaintiff, and no one else,[8] during her less than two months as a client, demonstrates the level of malice, recklessness or egregious or outrageous conduct required to obtain punitive damages. Even if Plaintiff does show this level of misconduct, the level of harm sustained by Plaintiff is no more

---

[8] *See Continental Trend Resources, Inc. v. OXY USA, Inc.*, 101 F.3d 634, 639 (10th Cir. 1996), cert. denied, 117 S. Ct. 1846 (1997) (in measuring punitive damages it is harm to the Plaintiff that is evaluated, not to the public generally or others not before the court).

than $110.00. Pl. Depo. at 131 (July 9, 2004). *See also* Plaintiff's Responses to Discovery Requests, dated January 14, 2005, Interrogatory #8 (stating that Plaintiff was paid and was refunded $110.00 in relation to her use of Defendant's legal services). Based on the Tenth Circuit Court's decision, applying a 10-to-1 ratio of punitive damages to actual damages, Plaintiff's punitive damages would be in the neighborhood of $1,000.00. *Continental Trend Resources,* 101 F.3d at 639-40. Plaintiff does not need to discover Defendant's financial information for purposes of measuring approximately $1,000 in punitive damages.

Further, Plaintiff does not need Defendant's 1099s for three years to measure punitive damages. Nothing in such documents conceivably relates to measuring punitive damages or to Plaintiff's claims that the legal services Defendant provided to Plaintiff for less than two months in late 2002 violated CROA, CCCA or CUTPA.

       ii. Objection III – Excessive Breadth. These global requests for *all* Defendant financial statements, including 1099s and tax returns for 2002-2004 are clearly too all-inclusive and thus too broad to be relevant to Plaintiff's claims that the legal services Defendant provided to Plaintiff for less than two months in late 2002 violated CROA, CCCA or CUTPA, even for punitive damages. As shown above the 1099s requested have no bearing on punitive damages. Also as shown above, Plaintiff's ballpark punitive damages, if any, are limited to about $1,000. None of the requested documents is required for establishing that or even "fine tuning it."

       iii. Objection IV – Irrelevant General Business Activities. These global requests seek items that pertain only to Defendant's general business activities and not to Plaintiff's claims that the legal services Defendant provided to Plaintiff for less than two months in late 2002 violated CROA, CCCA or CUTPA.

18

    iv. Objection V - Impermissible Purpose of Using the Answers in Proceedings Other than the Pending Suit. These global requests seek information that, while not useful to Plaintiff in proving her claims against Defendant in this case, may be useful to Ms. Faulkner's desire to share discovery information in this case with her cohorts in the other cases of *Iosello* or *D'Agostino* and the NACA list-serve website, and should not be required to be produced. Mr. Edelman, Ms. Faulkner's cohort, would clearly like to have the information encompassed by this request for use in, or in strategizing, these other cases.

  8. Question 10: "All agreements with affiliates who have signed up for the Affiliate program ('exciting opportunities to earn income through your web site')."

    a. <u>Response</u>:

      i. Objection II – Irrelevant Contracts. This global discovery request above seeks *all* agreements between Defendant and "affiliates." Such documents, covering a boundless period of years, have no conceivable bearing on Plaintiff's claims that the legal services Defendant provided to Plaintiff for less than two months in late 2002 violated CROA, CCCA or CUTPA.

      ii. Objection III – Excessive Breadth. This global request for *all* Defendant-affiliate contracts are clearly too all-inclusive and thus too broad to be relevant to Plaintiff's claims that the legal services Defendant provided to Plaintiff for less than two months in late 2002 violated CROA, CCCA or CUTPA. The request is not time-bound in any fashion, despite the fact that Plaintiff was a client for less than two months in late 2002.

      iii. Objection IV - Irrelevant General Business Activity. This global request for *all* the agreements of anyone who may have signed up for Defendant's advertising program as an affiliate over a boundless period of years, if any, seeks irrelevant general business activity of Defendant and therefore has no conceivable bearing on Plaintiff's

19

claims that the legal services Defendant provided to Plaintiff for less than two months in late 2002, violated CROA, CCCA or CUTPA. Further, independent of seeking irrelevant general business activity, this request has no conceivable bearing on Plaintiff's claims that the legal services Defendant provided to Plaintiff for less than two months violated CROA, CCCA or CUTPA.

       iv. Objection V - Impermissible Purpose of Using the Answers in Proceedings Other than the Pending Suit. This global request seeks information that, while not useful to Plaintiff in proving her claims against Defendant in this case, may be useful to Ms. Faulkner's desire to share discovery information in this case with her cohorts in the other cases of *Iosello* or *D'Agostino* and the NACA list-serve website and should not be required to be produced. Mr. Edelman, Ms. Faulkner's cohort, would clearly like to have the information encompassed by this request for use in, or in strategizing, these other cases.

  9. Question 11: "All form letters and manuals used by credit repair staff for entry of data and information from consumer clients."

  10. Question 12: "All form letters and manuals used by credit repair staff for communication with credit bureaus."

  11. Question 13: "All forms and manuals used by credit repair staff for entering and maintaining the statistical information as to success rates which appear on your web site."

    a. Response:

      i. Objection I – Irrelevant Dates of Material Requested. These global requests, which are not time-bound in any way, have no conceivable bearing on Plaintiff's claims that the legal services Defendant provided to Plaintiff for less than two months in late 2002 violated CROA, CCCA or CUTPA.

      ii. Objection III – Excessive Breadth. These global requests for *all* Defendant forms and manuals of the type requested above are clearly too all-

20

inclusive and thus too broad to be relevant to Plaintiff's claims that the legal services Defendant provided to Plaintiff for less than two months in late 2002 violated CROA, CCCA or CUTPA. Further, the request is not time-bound in any fashion, despite the fact that Plaintiff was a client for less than two months in late 2002.

                iii.    Objection IV - Irrelevant General Business Activity. These global requests for *all* such manuals, forms and form letters seek irrelevant general business activity of Defendant covering a boundless number of years, and therefore have no conceivable bearing on Plaintiff's claims that the legal services Defendant provided to Plaintiff for less than two months in late 2002, violated CROA, CCCA or CUTPA.

                iv.    Objection V - Impermissible Purpose of Using the Answers in Proceedings Other than the Pending Suit. These global requests seek information that, while not useful to Plaintiff in proving her claims against Defendant in this case, may be useful to Ms. Faulkner's desire to share discovery information in this case with her cohorts in the other cases of *Iosello* or *D'Agostino* and the NACA list-serve website and should not be required to be produced. Mr. Edelman, Ms. Faulkner's cohort, would clearly like to have the information encompassed by this request for use in, or in strategizing, these other cases.

    E.    <u>Plaintiff's Interrogatories and Production – Dated April 2004</u>

        1.    Question 3: "Identify each licensor of intellectual property and technology to Defendant/Lexington Law concerning its credit repair operations, and describe what products, personnel or services each provides.

            a.    <u>Response</u>:

                i.    Objection I – Irrelevant Dates of Material Requested. This global request for the identity of Defendant's IP and technology licensors or vendors, to which Plaintiff is not a party, and which are not time-bound in any way, have no conceivable

21