bearing on Plaintiff's claims that the legal services Defendant provided to Plaintiff for less than two months in late 2002 violated CROA, CCCA or CUTPA.

    ii. **Objection III – Excessive Breadth.** This global request for *all* Defendant licensors or vendors of intellectual property and technology are clearly too all-inclusive and thus too broad to be relevant to Plaintiff's claims that the legal services Defendant provided to Plaintiff for less than two months in late 2002 violated CROA, CCCA or CUTPA. Further, the request is not time-bound in any fashion, despite the fact that Plaintiff was a client for less than two months in late 2002.

    iii. **Objection IV – Irrelevant General Business Activity.** This global request for the identity of *all* such licensors or vendors seeks irrelevant general business activity of Defendant and therefore have no conceivable bearing on Plaintiff's claims that the legal services Defendant provided to Plaintiff for less than two months in late 2002, violated CROA, CCCA or CUTPA.

    iv. **Objection V - Impermissible Purpose of Using the Answers in Proceedings Other than the Pending Suit.** This global request seeks information that, while not useful to Plaintiff in proving her claims against Defendant in this case, may be useful to Ms. Faulkner's desire to share discovery information in this case with her cohorts in the other cases of *Iosello* or *D'Agostino* and the NACA list-serve website and should not be required to be produced. Mr. Edelman, Ms. Faulkner's cohort, would clearly like to have the information encompassed by this request for use in, or in strategizing, these other cases.

  2. Question 7: Identify the person who is hired to perform internet services for Defendant.

    a. <u>Response</u>:

      i. **Objection I – Irrelevant Dates of Material Requested.**

This global request, which is not time-bound in any way, has no conceivable bearing on Plaintiff's claims that the legal services Defendant provided to Plaintiff for less than two months in late 2002 violated CROA, CCCA or CUTPA.

          ii.    Independent of the issue of the of time-boundaries for the requested information, the information has no conceivable bearing on Plaintiff's claims that the legal services Defendant provided to Plaintiff for less than two months in late 2002 violated CROA, CCCA or CUTPA.

    F.    <u>Plaintiff's Production Requests – Dated April 2004</u>

        1.    Question 1: "All agreements pursuant to which Defendant contends that he is bound to the confidentiality of any product or service he licenses concerning the credit repair business."

          a.    <u>Response</u>

            i.    Objection I – Irrelevant Dates of Material Requested. This global discovery request, which is not time-bound in any way, has no conceivable bearing on Plaintiff's claims that the legal services Defendant provided to Plaintiff for less than two months in late 2002 violated CROA, CCCA or CUTPA.

            ii.    Objection II – Irrelevant Contracts. This global discovery request seeks all confidentiality agreements relating to Defendant's licenses. The request is not time-bound in any way. Such documents have no conceivable bearing on Plaintiff's claims that the legal services Defendant provided to Plaintiff for less than two months violated CROA, CCCA or CUTPA.

            iii.    Objection III – Excessive Breadth. This global request for *all* confidentiality agreements, is clearly too all-inclusive and thus too broad to be relevant to Plaintiff's claims that the legal services Defendant provided to Plaintiff for less than two months

in late 2002 violated CROA, CCCA or CUTPA. Further, the request is not time-bound in any fashion, despite the fact that Plaintiff was a client for less than two months in late 2002.

                iv.    Objection IV - Irrelevant General Business Activity. This global request for *all* confidentiality agreements seeks irrelevant information about general business activity of Defendant and therefore has no conceivable bearing on Plaintiff's claims that the legal services Defendant provided to Plaintiff for less than two months in late 2002, violated CROA, CCCA or CUTPA.

                v.    Objection V - Impermissible Purpose of Using the Answers in Proceedings Other than the Pending Suit. This global request seeks information that, while not useful to Plaintiff in proving her claims against Defendant in this case, may be useful to Ms. Faulkner's desire to share discovery information in this case with her cohorts in the other cases of *Iosello* or *D'Agostino* and the NACA list-serve website and should not be required to be produced. Mr. Edelman, Ms. Faulkner's cohort, would clearly like to have the information encompassed by this request for use in, or in strategizing, these other cases.

    G.    <u>Plaintiff's Discovery Requests – Dated July 2004</u>

        1.    Interrogatory 1: "Provide the name and address of all your Connecticut clients during the last quarter of 2002."

            a.    <u>Response</u>

                i.    Objection III – Excessive Breadth. This global request for the *name and addresses* of *all* Connecticut clients in the last quarter of 2002 is clearly too all-inclusive and thus too broad to be relevant to Plaintiff's claims that the legal services Defendant provided to Plaintiff for less than two months in late 2002 violated CROA, CCCA or CUTPA.

                ii.    Objection V - Impermissible Purpose of Using the Answers in Proceedings Other than the Pending Suit. This global request seeks information that,

24

while not useful to Plaintiff in proving her claims against Defendant in this case, may be useful to Ms. Faulkner's desire to share discovery information in this case with her cohorts in the other cases of *Iosello* or *D'Agostino* and the NACA list-serve website and should not be required to be produced. Those two cases are class action cases and the names of Defendant's Connecticut clients would go right into those complaints or class certification petitions or others generated by members of the NACA list-serve website. This Court should not allow that which the Federal District Court in Chicago has refused to allow thus far. Mr. Edelman, Ms. Faulkner's cohort, would clearly like to have the information encompassed by this request for use in, or in strategizing, these other cases.

        iii.    Objection VI - Objection Based on the Attorney – Client Privilege. F.R.C.P. 26 prohibits the discovery of information protected by the attorney-client privilege. The names of Defendant's clients are so protected.

    2.    Interrogatory 2: "Provide the number of disputes which did not result in removal of a disputed item from a credit report during 2003."

    3.    Interrogatory 5: "Set forth the average number of letters to credit bureaus sent by Lexington weekly during the last quarter of 2002, or any recent quarter."

    4.    Production 2: "Copies of any 2002 or 2003 quarterly statistical report as to numbers of credit bureau disputes processed by Defendant."

    a.    <u>Response</u>

        i.    Objection I – Irrelevant Dates of Material Requested. These global discovery requests have no conceivable bearing on Plaintiff's claims that the legal services Defendant provided to Plaintiff for less than two months in late 2002 violated CROA, CCCA or CUTPA. Interrogatory 5's request for information during the last quarter of 2002, *or any* recent quarter, shows the arbitrary and capricious nature of this request. The request shows

that the timing of the information vis-à-vis Plaintiff's less than two months of services in late 2002 is irrelevant, in Plaintiff's mind, to her case. Clearly, Plaintiff seeks this information for some reason other than proving her claims. Production Request 2 suffers from the same defect.

                ii.    Objection III – Excessive Breadth. These global requests for Defendant's statistics are clearly too all-inclusive and thus too broad to be relevant to Plaintiff's claims that the legal services Defendant provided to Plaintiff for less than two months in late 2002 violated CROA, CCCA or CUTPA.

                iii.    Objection V - Impermissible Purpose of Using the Answers in Proceedings Other than the Pending Suit. These global requests seek information that, while not useful to Plaintiff in proving her claims against Defendant in this case, may be useful to Ms. Faulkner's desire to share discovery information in this case with her cohorts in the other cases of *Iosello* or *D'Agostino* and the NACA list-serve website and should not be required to be produced. Mr. Edelman, Ms. Faulkner's cohort, would clearly like to have the information encompassed by this request for use in, or in strategizing, these other cases.

    H.    <u>Plaintiff's Fourth Request for Production (September 17, 2004)</u>

        1.    Number 3: "All 1099-MISC or similar tax forms issued to any outside service provider for the calendar year 2002."

        2.    Number 4: "All invoices received from any outside service provider for the calendar year 2002."

        3.    Number 6: "All records showing payments made to any outside service provider for the calendar year 2002."

            a.    <u>Response</u>:

                i.    Objection I – Irrelevant Dates of Material Requested. These global requests seek Defendant's financial payment information, including 1099s and tax returns for 2002. The requested documents have no conceivable bearing on Plaintiff's claims

26

that the legal services Defendant provided to Plaintiff for less than two months in late 2002 violated CROA, CCCA or CUTPA. *See Schienker v. Pepperidge Farm, Inc.*, 1963 WL 65918 (S.D.N.Y. 1963) ("[d]efendant's costs and profit figures in anti-trust case have so little, if any, bearing upon the issues that the potential injury to defendant from the revelation of this confidential information outweighs any possible benefit which plaintiff might legitimately derive from it in this action.").

        ii.    Objection III – Excessive Breadth. These global requests for *all* Defendant's financial payment information, including 1099s and invoices received are clearly too all-inclusive and thus too broad to be relevant to Plaintiff's claims that the legal services Defendant provided to Plaintiff for less than two months in late 2002 violated CROA, CCCA or CUTPA. *See Schienker*.

        iii.    Objection IV – Irrelevant General Business Activities. These global requests seek items that pertain only to Defendant's general business activities and not to Plaintiff's claims about the specific legal services that Defendant provided to her and cannot be relevant to Plaintiff's claims that the legal services Defendant provided to Plaintiff for less than two months in late 2002 violated CROA, CCCA or CUTPA.

        iv.    Objection V - Impermissible Purpose of Using the Answers in Proceedings Other than the Pending Suit. These global requests seek information that, while not useful to Plaintiff in proving her claims against Defendant in this case, may be useful to Ms. Faulkner's desire to share discovery information in this case with her cohorts in the other cases of *Iosello* or *D'Agostino* and the NACA list-serve website and should not be required to be produced. Mr. Edelman, Ms. Faulkner's cohort, would clearly like to have the information encompassed by this request for use in, or in strategizing, these other cases.

4. Number 5: "All records showing income received from any outside service provider for the calendar year 2002."

5. Number 7: "All records showing Lexington's income and expenses for the months of September and October 2002."

6. Number 12: "All documents reflecting Defendant's sources of income other than from clients of Defendant, and other than karate and fly fishing enterprises."

   a. Response:

      i. Objection I – Irrelevant Dates of Material Requested. These global requests seek Defendant's financial revenue and expense information for 2002, including income from "outside service providers," including vendors, other than clients. The definition of "outside service provider" is as *globally encompassing as imaginable*: "any individual not directly employed by Defendant and any business activity that provided services to Defendant or his internet-based clientele, including the provider of any internet services, training, IT services, data services, marketing services, advertising, employment services, consultants, licensors, lessors, internet affiliates, providers of credit reports recommended by Defendant, such as bestcreditreports.com, truecredit.com, confidentialcredit.com." Motion at 12.

None of the extensive range of the requested documents has any conceivable bearing on Plaintiff's claims that the legal services Defendant provided to Plaintiff for less than two months in late 2002 violated CROA, CCCA or CUTPA. *See Schienker*. The request for income and expense information for September and October 2002 is narrower and more closely tied to the dates during which Plaintiff was a client of Defendant. However, the request still has no conceivable bearing on Plaintiff's claims that the legal services Defendant provided to Plaintiff for less than two months in late 2002 violated CROA, CCCA or CUTPA. *See Schienker*.

28

Further, Request for Production 12, for Defendant's other income outside of his law practice and some additional activities ("other income"), has no conceivable bearing on Plaintiff's claims that the legal services Defendant provided Plaintiff for less than two months in late 2002 violated CROA, CCCA or CUTPA. *See Carlson Companies, Inc. v. The Sperry and Hutchinson Company*, 374 F. Supp. 1080, 1090 (S. D. Minn. 4th Div. 1974) (revelation of the interests or acquisitions of plaintiff in discovery in antitrust action, which are unrelated to the business activities covered by the complaint, is not required under the rules of discovery).

The requested income and expense information is not even relevant to Plaintiff's punitive damages claim. Plaintiff has not yet shown that Defendant's conduct toward Plaintiff, and no one else,[9] during her less than two months as a client, demonstrates the level of malice, recklessness or egregious or outrageous conduct required to obtain punitive damages. Even if Plaintiff does show this level of misconduct, the level of harm sustained by Plaintiff is no more than $110.00. Based on the Tenth Circuit Court's decision in *Continental Trend Resources* applying a 10-to-1 ratio of punitive damages to actual damages, Plaintiff's punitive damages would be in the neighborhood of $1,000.00. 101 F.3d at 639. Plaintiff does not need to discover Defendant's financial information for purposes of measuring approximately $1,000 in punitive damages.

        ii.    Objection III – Excessive Breadth. These global requests for *all* Defendant's financial revenue and expense records for 2002-2004 are clearly too all-inclusive and thus too broad to be relevant to Plaintiff's claims that the legal services Defendant provided to Plaintiff for less than two months in late 2002 violated CROA, CCCA or CUTPA, even for punitive damages. As shown above, Plaintiff's ballpark punitive damages, if

---

[9]    *See Continental Trend Resources, Inc. v. OXY USA, Inc.*, 101 F.3d 634, 639 (10th Cir. 1996), cert. denied, 117 S. Ct. 1846 (1997) (in measuring punitive damages it is harm to the Plaintiff that is evaluated, not to the public generally or others not before the court).

any, are constitutionally limited to about $1,000. None of the requested documents is required for establishing that or even "fine tuning it." Regarding Defendant's objection to the requests for other income see *Carlson Companies*, 374 F. Supp. at 1090.

      iii. Objection IV – Irrelevant General Business Activities. These global requests seek items that pertain only to Defendant's general business activities and not to Plaintiff's claims that the legal services Defendant provided to Plaintiff for less than two months in late 2002 violated CROA, CCCA or CUTPA. *See Schienker; Carlson Companies*.

      iv. Objection V - Impermissible Purpose of Using the Answers in Proceedings Other than the Pending Suit. These global requests seek information that, while not useful to Plaintiff in proving her claims against Defendant in this case, may be useful to Ms. Faulkner's desire to share discovery information in this case with her cohorts in the other cases of *Iosello* or *D'Agostino* and the NACA list-serve website and should not be required to be produced. Mr. Edelman, Ms. Faulkner's cohort, would clearly like to have the information encompassed by this request for use in, or in strategizing, these other cases.

      v. Objection VII - Burden Unlikely to Outweigh Benefit. In that the Plaintiff seeks the records showing all of Defendant's income and expenses, it is unduly burdensome on Defendant and unlikely to produce anything of benefit to Plaintiff.

  6. Number 8: "All documents dated 1996 or thereafter showing any agreements or assignments involving Defendant, Jayson Orvis, Defendant, and Jamis Johnson."

  7. Number 9: "All Defendant's agreements with Consumer Credit Solutions in effect in 2002."

  8. Number 10: "All Defendant's agreements with any entity managed or owned by Jayson Orvis or Deon Steckling."

  9. Number 11: "All Defendant's agreements with any outside service provider in existence during 2002."

10. Number 13: "All documents reflecting agreements to do data entry for other companies."

11. Number 14: "All documents reflecting agreements to sell entered data to other companies."

    a. <u>Response</u>:

        i. Objection I – Irrelevant Dates of Material Requested. These global requests ask for documents ranging from 1996, more than six years before Plaintiff retained Defendant and then terminated her services the less than two months later, to completely *open-ended, boundless* periods of time. The requested documents have no conceivable bearing on Plaintiff's claims that the legal services Defendant provided to Plaintiff for less than two months violated CROA, CCCA or CUTPA.

        ii. Objection II – Irrelevant Contracts. These global discovery requests above seek contracts relating to Defendant spanning the time frame described immediately above. Except for Defendant, none of the persons, entities or others encompassed by the requests is a party to this suit or to any agreement with Plaintiff. Such documents have no conceivable bearing on Plaintiff's claims that the legal services Defendant provided to Plaintiff for less than two months violated CROA, CCCA or CUTPA.

        iii. Objection III – Excessive Breadth. These global requests for *all* contracts during the six-year period of time covered by the requests are clearly too all-inclusive and thus too broad to have any conceivable bearing on Plaintiff's claims that the legal services Defendant provided to Plaintiff for less than two months violated CROA, CCCA or CUTPA.

        iv. Objection IV – Irrelevant General Business Activities. These global requests seek items that pertain only to Defendant's general business activities and

31

not to Plaintiff's claims that the legal services Defendant provided to Plaintiff for less than two months violated CROA, CCCA or CUTPA.

       v. Objection V - Impermissible Purpose of Using the Answers in Proceedings Other than the Pending Suit. These global requests seek information that, while not useful to Plaintiff in proving her claims against Defendant in this case, may be useful to Ms. Faulkner's desire to share discovery information in this case with her cohorts in the other cases of *Iosello* or *D'Agostino* and the NACA list-serve website should not be required to be produced.

  I. Request for Admissions – (Dated November 19, 2004)

    1. The attached document entitled Agreement was entered into and signed by Jamis M. Johnson and Victor Lawrence on or about May 21, 1999. ("Request #1").

    2. The attached document entitled Operational Services Agreement was entered into and signed by Jayson Orvis and Victor Lawrence on behalf of Vendor and Customer on or about May 1, 2001. ("Request #2").

    3. Said Operational Services Agreement thereafter remained in effect at all times prior to February 1, 2003. ("Request #3").

    4. The attached document entitled Resolutions by Unanimous Consent was adopted by Johnson & Associates as of May 1, 1999. ("Request #4").

    a. Response

      i. The November 19 request stated in pertinent part:

"Pursuant to FRCP 36, Plaintiff requests Defendant to admit, for the purposes of this action only, the truth of the following matters and the admissibility, authenticity, existence, genuineness and due execution of the referenced documents." The November 19 request then listed three documents and one additional request for admission related to one of the documents.

32

       a.      F.R.C.P. 36(a) requires that "Each matter of which an admission is requested shall be separately set forth." Requests for admission are to be simple and direct in form. *Havenfield Corp. v. H & R Block, Inc.* (19 F.R.D. 93 (W.D. Mo. 1973). "[T]he statement of facts should be simplified by their assertion in separate and successive paragraphs, each dealing with a single fact." *SEC v. Micro-Moisture Controls, Inc.*, 21 F.R.D. 164, 166 (D.C.N.Y. 1957). Further, requests should be limited to singular relevant facts so that they may be categorically admitted or denied without explanation. *Havenfield; Pittsburgh Hotels Ass'n v. Urban Redevelopment Authority of Pittsburgh*, 29 F.R.d. 512 (W.D. Pa. 1962).

A review of the November requests demonstrates that the requests are *neither* (a) *simplified* by their assertion in *separate* and *successive* paragraphs, each dealing with a *single* fact, *nor* (b) *limited* to singular relevant facts so that they may be categorically admitted or denied without explanation. Instead, the request for admission for each of the three documents consists of multi-element and multi-compound requests that are not simple, not separately set out, not each dealing with a separate fact and not susceptible to categorical admission or denial without explanation.

In fact, the request encompasses three compound phrases and five elements: "Plaintiff requests Defendant to admit, for the purposes of this action only, the (i) truth of the following matters *and* the (ii) admissibility, (iii) authenticity, (iv) existence, (iv) genuineness *and* (v) due execution of the referenced documents."

Clearly, no "admit" or "deny" answer to this multi-element, multi-compound request can be provided without extensive qualification. Accordingly, the request violates the F.R.C.P. Rule

36(a) requirement that each request be separately set forth and susceptible of being answered without qualification.

         b. The November 19 Request failed to define the following key terms for which it requests admissions: admissibility, authenticity, genuineness and due execution of the referenced documents. In the absence of definitions of each of these terms, Defendant here objects to the Request in regard to each of these terms in that each of the terms is too vague and/or ambiguous for Defendant to reasonably be able to answer without qualification. Accordingly, Defendant objects to these requests for admission in the absence of a statement by Plaintiff of the definitions of each of these terms.

       ii. Objection I – Irrelevant Dates of Material Requested. These requests for admissions regarding documents, to which Plaintiff is not a party, and to some of which Defendant is not party, executed, on their face, between 3 ½ and 1 ½ years *before* Plaintiff received Defendant's legal services for *two months* in late 2002 have no conceivable bearing on Plaintiff's claims that the legal services Defendant provided to Plaintiff for less than two months in late 2002 violated CROA, CCCA or CUTPA.

       iii. Objection II – Irrelevant Contracts. Request #1, on its face, encompasses an agreement between Defendant and Jamis Johnson, which deals with Defendant assuming the responsibility for Jamis' law clients and trade name and vendor contracts. It was, on its face, executed on May 21, 1999. Request #2, on its face, encompasses an agreement between Defendant and a vendor, Jayson Orvis, which consists of vendor licenses of a trade name and software to Defendant and accompanying software maintenance and support and management training and consulting services.

Defendant provided to Plaintiff for less than two months in late 2002 violated CROA, CCCA or CUTPA.

                iv.    Objection V - Impermissible Purpose of Using the Answers in Proceedings Other than the Pending Suit. These global requests seek information that, while not useful to Plaintiff in proving her claims against Defendant in this case, may be useful, indeed may only conceivably be useful, to Ms. Faulkner's desire to share discovery information from this case with her cohorts in the other cases of *Iosello* or *D'Agostino* or the NACA list-serve website and should not be required to be produced.

    4.    Question 7: "Identify all Affiliates who agreed to participate in Lexington's affiliate network."

    5.    Question 8: "Identify Lexington's affiliate network manager during 2002."

        a.    <u>Response</u>: This request has no conceivable bearing on Plaintiff's claims and is therefore irrelevant. The identity of an affiliate or an affiliate network manager would have no conceivable bearing on Plaintiff's claims that the legal services Defendant provided to Plaintiff for less than two months in late 2002 violated CROA, CCCA or CUTPA.

    6.    Question 8 (sic. (the number 8 is used twice by Plaintiff)): "All documents showing incorporation, licensing or trade name status for each business in which the Defendant engages. [Supplemental response promises to provide Defendant's business license and d/b/a registration, but that has not been done]."

        a.    <u>Response</u>: This request has no conceivable bearing on Plaintiff's claims and is therefore irrelevant. These documents have no conceivable bearing on Plaintiff's claims that the legal services Defendant provided to Plaintiff for less than two months in late 2002 violated CROA, CCCA or CUTPA.

    7.    Question 9: "All balance sheets, income and expense statements, 1099's and corporate tax returns relating to credit restoration income and expenses for the past three years."

16

Request #3 relates to the duration of the document encompassed by Request #2. Because the document has no conceivable bearing on Plaintiff's claims in this case, the request for admission related to the duration of the document likewise has no conceivable bearing on this case.

Request #4, on its face, encompasses a board resolution of Johnson & Associates and was executed on May 1, 1999. This document *never* mentions Defendant nor is Defendant a signatory on the document. Accordingly, it has no conceivable bearing on whether Plaintiff's claims that the legal services Defendant provided to Plaintiff for less than two months, about 3 ½ years after this documents was executed, violated the CROA, the CCCA or the CUTPA. *See generally Food Lion, Inc.*, 103 F3d at 308 (fourth party documents which were unrelated to either party were not relevant to show whether union had specific improper intent in pursuing litigation against employer).

The documents underlying the request for admissions have no conceivable bearing on Plaintiff's claims that the legal services Defendant provided to Plaintiff for less than 2 months, 3 ½ years and1 ½ years after the documents were executed, violated the CROA, the CCCA or the CUTPA.

      iv.  Objection IV -Irrelevant General Business Activity. These requests for admissions, to the extent they include documents to which Defendant is a party, seek irrelevant general business activity of Defendant and therefore have no conceivable bearing on Plaintiff's claims that the legal services Defendant provided to Plaintiff for less than two months in late 2002, violated CROA, CCCA or CUTPA.

      v.  Objection V - Impermissible Purpose of Using the Answers in Proceedings Other than the Pending Suit. These requests seek information that, while not

35

useful to Plaintiff in proving her claims against Defendant in this case, may be useful to Ms. Faulkner's desire to share discovery information in this case with her cohorts in the other cases of *Iosello* or *D'Agostino* and the NACA list-serve website and should not be required to be produced. Mr. Edelman, Ms. Faulkner's cohort, would clearly like to have the information encompassed by this request for use in, or in strategizing, these other cases.

**VII.    Conclusion**

Plaintiff concludes by stating that "the amount of essential discovery still awaited has prevented Plaintiff from follow-up discovery, and from naming an expert witness in this matter." Motion at 15. She suggests "purposeful sluggishness"; once again nothing is farther from the truth. Plaintiff has never been precluded from seeking judicial intervention herein regarding any discovery matter.

Indeed, only after countless efforts of Defendant was a telephonic discovery conference held, which resulted in this Court's judicial fiat requiring dialogue between the adverse parties, and finally addressing a plethora of concerns of both parties.

For the reasons stated herein, Defendant respectfully requests that Plaintiff's Motion be denied.

DATED this 21st day of January, 2005.

Victor Lawrence
P.O. Box 1413
Bountiful, UT 84011-1413
Telephone 801-296-0252
Telefax 801-363-0976

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that a true and correct copy of the foregoing document was served by Federal Express and by First Class U.S. mail, postage prepaid, on this __21st__ day of January 2005, to the following:

Joanne S. Faulkner, Esq.
123 Avon Street
New Haven, CT  06511-2422