UNITED STATES DISTRICT COURT FILED
DISTRICT OF CONNECTICUT

2005 JUL 20 A 9: 11

| | |
|---|---|
| MICHELLE GOKTEPE<br>v.<br><br>VICTOR LAWRENCE d/b/a<br>    LEXINGTON LAW FIRM | DEFENDANT'S OBJECTION TO COURT<br>SPECIAL MASTER'S RECOMMENDED<br>ORDER AND REQUEST THAT THE<br>COURT REJECT, MODIFY OR<br>REMAND THE RECOMMENDED<br>ORDER<br><br>CASE NO. 3:03CV 0089 (MRK)<br><br>Judge Mark Kravitz<br>July 18, 2005 |

## INTRODUCTION

Traditional notions of fair play and substantial justice are mistakenly missing

from the June 13, 2005 Recommended Order (the "Order") in this case.    The Order

issued conclusory rulings without any statement on the record of the applicable

determinative findings of fact and conclusions of law.    The Order may be based on

findings of fact or conclusions of law *assumed* against Lawrence that are not on the

record or not accurately defined or understood.    However, because the Order does not

state the findings of fact and conclusions of law underlying its rulings, Defendant Victor

Lawrence cannot discern them and their assumptions, if any.    This denies him a fair

opportunity to meaningfully assess these assumed facts and if necessary to rebut them.

Thus, there may be embedded in the Order one or more crucial instances of a hidden, and

therefore impermissible, "irrebutable presumption." If the Order is based on such hidden

and erroneous assumptions, it unfairly denies Lawrence his due process right to a

meaningful opportunity to assess and if necessary to challenge and correct material errors

in the facts or legal conclusions underlying the Order.    It denies as well to the Court the

opportunity for a meaningful de novo review of the Order. The Order's omission of a statement on the record of findings of fact and conclusions of law should be cured before the Court considers the Order, and the underlying arguments of the parties, on the merits.

Defendant Victor Lawrence d/b/a Lexington Law Firm appreciates the Special Master's consideration of the discovery matters he has addressed to date. However, Lawrence respectfully requests that the Court reject, modify or remand the Order, and the Special Master's June 30, 2005 Response to Defendant's Request to Modify the Recommended Order, and prevent plaintiff Michelle Goktepe from propounding irrelevant, burdensome, and remote discovery requests.[1] As noted below, Defendant opposes the Order's requirement for production of irrelevant evidence. However, more importantly, Defendant opposes the Order's denial of his fairness and due process rights to be informed, *on* the record,[2] of the determinative basis *in* the record for the Order's rulings and to thereby have a fair and meaningful opportunity to challenge incorrect determinative findings of fact and conclusions of law.

### SUMMARY OF ARGUMENT[3]

---

[1]    This Objection is filed pursuant to Judge Kravitz's order allowing the parties 20 days to object to the Special Master's orders. In his objections to the Special Master's recommended order dated June 22, 2005, Defendant reserved the right to appeal the Special Master's Order to Judge Kravitz no later than 20 days form the date the final order is published.

Additionally, this Objection incorporates by reference, in their entirety, Defendant's objections to Plaintiff's discovery requests encompassed by the Order, and Defendant's objections to the recommended order dated June 13, 2005 and June 30, 2005.

[2]    Defendant has no knowledge, on the record or off the record, of the determinative basis, in terms of findings of fact and conclusions of law, for the Order's requirements that he must answer or produce objectionable discovery.

[3]    Defendant produced several items ordered to be produced in the June 13, 2005 Order but maintains and preserves his objections to those items. For example, as ordered by the Special Master, Defendant answered Plaintiff's Third Discovery Request No. 4 "with more specificity." Similarly, as requested in Plaintiff's second production request, Defendant provided a copy of the pages of the Lexington Law web site as they existed when Plaintiff entered into her retainer agreement (Defendant previously provided these documents to Goktepe several months ago). Defendant also responded to

The Order must be rejected, remanded or modified because it violates Defendant's fairness and due process rights by depriving him of a formal record of specific findings of fact, contained in the record, and conclusions of law as applied to the findings of fact to support the Order. The Order presents only conclusory statements. Because the Court's March 11, 2005 Order of Reference to Special Master requires the Order to contain specific findings of fact and conclusions of law, and because failure to include such findings makes it impossible for Defendant to fairly respond to and appeal the Order in a meaningful way, the Court should reject, remand or modify the Order.

The Order specifies what Defendant must do regarding producing discovery he has vigorously fought against. However, it omits an explanation on the record of the findings of fact and conclusion of law that determined the Order's conclusions. The information under dispute here is extremely important to Defendant. Because due process mandates that Defendant be formally put on notice as to the determinative facts and legal conclusion underlying the Order's conclusions, and because failure to do so deprives Defendant of a fair opportunity to effectively appeal the Order, the Court should reject the Order's conclusions, remand the Order, and require that it be supported by a record of specific findings of facts, as contained in the record of this case and the conclusions of law applied to the facts in the Order.

Goktepe's motion to compel ("motion") asked the Court to compel Defendant to produce an extensive amount and wide variety of information that extended substantially

Plaintiff's May 2003 Discovery Request No. 8, which asked Defendant to identify Lexington's affiliate network manager during 2002. In addition, Defendant answered Plaintiff's April 2004 interrogatory question No. 7, which asked for the identity of the person who Defendant hired to perform internet services for Lexington Law. Lastly, Defendant responded to Plaintiff's Requests for Admission Nos. 1-4.

beyond the claims asserted by Goktepe as harms committed solely against her on an individual basis in this case. For example, Goktepe seeks the names and addresses of all of Defendant's Connecticut clients, the amounts the clients paid to Defendant and all of Defendant's vendor agreements and the amounts Defendant paid to each of these vendors. Goktepe justified these extensive and expansive requests for information by arguing generally that she was acting as a private attorney general and that additionally it was justified by her claim for punitive damages.

Defendant objected to the motion. He argued with specificity in rebuttal that (i) the private attorney general concept applies not to claims for expansive discovery in a case involving the claims solely of an individual regarding private commercial damages but only to attorney's fee awards where a plaintiff has successfully asserted claims that served the public interest and would not otherwise have been brought and (ii) that the U.S. Supreme Court has clearly ruled that punitive damages apply only to harm done to an individual plaintiff and not to other alleged victims. Defendant also rebutted the individual discovery requests with specific and detailed objections tailored to each individual request.[4] Defendant's rebuttal of the attorney general and punitive damage arguments as well as his rebuttal of Goktepe's individual discovery requests were supported by citations to applicable case law.

In terms of Defendant's detailed rebuttal arguments against Goktepe's private attorney general and punitive damages arguments, and in terms of Defendant's specific and itemized objections to the overwhelming majority of the discovery requests,

---

[4] Defendant incorporates into this document by reference, in their entirety, his previously filed objections to Goktepe's motions to compel discovery.

4

Goktepe's response *on the record* ignored, and declined to refute, or even address, *any* of Defendant's objections. Indeed, as of this writing, the record still shows that Goktepe has ignored, and has not addressed or refuted, the overwhelming majority of the detailed, request-specific objections as well as the general objections to Goktepe's attorney general and punitive damage arguments. Nor has Goktepe cited to any applicable case law supporting her failure to rebut Defendant's position or give any response to Defendant's position.

### The Order

Despite these facts, the Order erroneously granted Plaintiff's motion to compel, stating that Goktepe was entitled to the aforementioned information. However, the Order stated conclusory language only and did not support the conclusions with either a statement of findings of facts or conclusions of law. The Court's March 11, 2005 *Order of Reference to Special Master,* ("Order of Reference") states that "[t]he Court shall review de novo all *legal conclusions* of the Special Master...[and] shall review the Special Master's *Findings of fact* for clear error...." p.3, ¶4 (emphasis added). Because the Order stated no findings of fact or conclusions of law, as mandated by the Order of Reference, the Court should remand the Order to the Special Master for him to issue his findings of fact and conclusions of law. Alternatively, Defendant here challenges the Order's findings of fact and "legal conclusions," although they are assumed and not specifically identified on the record, and asks the Court to review the Order's conclusions de novo.

In addition, the Order contained at least two errors. First, the Order inaccurately stated that the *only* objection Defendant made to Plaintiff's Fourth Discovery Requests

5

were *confidentiality* objections that had "been resolved by the Court's Protective Order."[5] Consequently, the Order required Defendant to respond to Plaintiff's Fourth Discovery Requests. In fact, Defendant made several, on the record, objections to Plaintiff's Fourth Discovery Requests, including a *relevancy* objection, an objection based on the requests' *excessive breadth*, and an objection alleging that Goktepe was *seeking information* requested in Plaintiff's Fourth Discovery Requests for the *sole purpose of gathering facts for an unrelated lawsuit.* Despite these additional objections, the Order only addressed Defendant's *confidentiality* objection. Because Defendant's other objections must be considered by the Court, the Order should be rejected, remanded or modified and the Court should deny Plaintiff's motion to compel.

The second error in the Order inaccurately stated that Defendant failed to respond to Plaintiff's Third Discovery Request No. 3, and ordered Defendant to respond to the Request. In fact, Defendant filed a detailed objection to Request No. 3 in his response to Plaintiff's Motion to Compel. He objected to the request by explaining that it asked for irrelevant general business activity and was therefore not discoverable. Because the Order failed to address Defendant's objection to the request, the Court should review the objection and properly determine that the request is irrelevant.

Lastly, the Order impermissibly required Defendant to make available for depositions in Connecticut, six of his former employees. The Order's conclusions were incorrectly based on Rule 30(b)(6). However, Judge Kravitz's January 27, 2005 Order ruled that "Lexington Law Firm is a sole proprietorship owned by Defendant...."[6]

---

[5]  *See* Special Master's Discovery Report and Recommended Order at p. 3, ¶D.
[6]  *See* Judge Kravitz's January 27, 2005 Order at p. 2.

Because only corporations or partnerships, not sole proprietorships, are subject to Rule 30(b)(6) depositions, the Order should be rejected as it pertains to Defendant's 30(b)(6) depositions.

Based on the inaccurate and unsupported conclusions in the Order, on June 22, 2005, Defendant filed his objection and requested that the Order be reconsidered and ultimately deny Plaintiff's motion to compel. After reviewing Defendant's objection to the Order, on June 30, 2005, the Special master issued his response, stating again in conclusory language, and without explicitly stating in the record any findings of fact or conclusions of law, that "I find no basis in fact or law to modify my original Recommended Order...."[7]  Because the June 30, 2005 response ignored Defendant's objections and was unsupported by a statement of findings of fact and conclusions of law, Defendant asks that the Court reject the Order or remand it for the addition of explicit findings of fact and conclusions of law on the record.

Accordingly, the Court should reject the Order and deny Goktepe's motion for the following reasons:  (1)  The Order ignores the due process requirement for notice of findings of fact, based on the record, and conclusions of law underlying the discovery items required in the Order; (2) Goktepe failed to articulate in her motion, or in her response to Defendant's objection to the motion how the disputed discovery requests were relevant to the claims asserted in her 2nd Amended Complaint (that defendant violated the Credit Repair Organizations Act ("CROA"), the Connecticut Credit Clinics Act ("CCCA"), and the Connecticut Unfair Trade Practices Act ("CUTPA") (collectively

---

[7]     *See* Special Master's Response to Defendant's Request for Modification to the Recommended Order.

"Claims");[8] (3) many of Goktepe's discovery requests impermissibly ask for documents and other information that arose after Goktepe filed her lawsuit and because; (3) several of Goktepe's discovery requests are aimed at providing information to plaintiffs in other lawsuits against Defendant, not to discover information relevant to her Claims.

**ARGUMENT**

**POINT I:    THE SPECIAL MASTER'S ORDER DENIES DEFENDANT'S RIGHTS TO FAIRNESS AND DUE PROCESS BY OMITTING THE FINDINGS OF FACT AND CONCUSIONS OF LAW REQUIRED BY THE JUDICIAL ORDER SPECIFYING THE SPECIAL MASTER'S DISCOVERY MANAGEMENT DUTIES**

The Order of Reference requires the Special Master to prepare findings of fact and conclusions of law when rendering orders, stating that "[t]he Court shall review de novo all legal conclusions of the Special Master. "The Court shall review the Special Master's findings of fact for clear error...."[9]  Thus, the Order of Reference confirms Defendant's rights to fairness and due process to know what facts on the record provide the factual basis for the Order and to know the conclusions of law that the Order applied to such facts.  Defendant's rights to know the facts and law supporting the Order underlie his right to be able to challenge, with specificity, the determinative factual findings and conclusions of law that he believes are incorrect and that unfairly led to an incorrect Order.  Despite these fairness and due process directives in the Order of Reference, the Order omitted them and denied Defendant's rights to fairness and due process.

In this case, the Order did not follow the Order of Reference's requirements, in that it lacked any statement on the record of findings of fact and conclusions of law, and

---

[8]    Goktepe asserts her Claims on behalf of herself only and individually and not on behalf of any other person or entity.

[9]    See Order of Reference at p. 3, ¶4.

solely relied on an off the record implicit determination of facts and unstated conclusions of law. Because this unfairly deprived Defendant of a due process opportunity to ascertain whether the Order is supported by facts in the record or accurate conclusions of law, the Court should reject or remand the Order, and require these omissions to be corrected.

## POINT II: GOKTEPE FAILED TO SHOW THAT HER DISCOVERY REQUESTS MET RULE 26's REQUIREMENT THAT THE REQUESTS BE "RELEVANT TO THE CLAIM OR DEFENSE OF ANY PARTY"

Federal Rule of Civil Procedure 26(b)(1), as amended in the year 2000, currently prohibits parties from discovering information not relevant to the *claims* or defenses of any party.[10] In addition, once a party objects to a discovery request based on relevancy, the proponent of the discovery request (in this case Goktepe) must demonstrate that the information sought is relevant to a *claim* or defense. *See Home Ins. Co. v. Ballenger Corp.*, 74 F.R.D. 93 (D. Ga. 1977) (holding that a discovery proponent's general allegation of relevancy is not sufficient to overcome an adverse party's specific objection that an item is not discoverable); *see also Black & White Cabs of St. Louis, Inc., v. Smith*, 370 S.W.2d 669 (Mo. App. 1963) (before a party may obtain sweeping discovery, it must first show in its motion to compel a reasonable ground to believe that records sought are relevant to the subject matter of the action); *Pioneer Hi-Bred Intern. Inc., v. Holden's Foundation Seeds, Inc.*, 105 F.R.D. 76 (N.D. Ind. 1985) (party moving for disclosure must make clear showing that documents are relevant to issues involved in litigation); *Chaves v. Daimler Chrysler Corp.*, 206 F.R.D. 615 (S.D. Ind. 2002) (applying 2000

---

[10]     Before the 2000 Rules' amendments narrowed the scope of Rule 26(b)(1), parties were permitted to discover any matter relevant to the subject matter involved in the action.

amendment language in holding that plaintiff's self-serving, conclusory allegations of relevancy were not enough to support discovery requests); *Surles v. Air France,* 50 Fed. R. Serv. 3d 983, 988-89 (S.D.N.Y. 2001) (applying 2000 amendment and rejecting defendant's request for peripheral personal information about plaintiff and stating that discovery requests "could not be based on pure speculation or conjecture" and that the 2000 amendment was "intended to focus the attention of both the parties and the Court on the actual claims and defenses involved in a suit"); *Thomson v. Dep't of Hous. & Urban Dev.* 199 F.R.D. 168, 173 (D. Md. 2001) (applying 2000 amendment and denying discovery request because requesting party failed "to identify which claims...will be furthered by the requested information"); *McCann v. Bayship Mgmt. Inc.,* 2000 WL 1838714 (E.D. La. 2000) (applying 2000 amendment and denying discovery because plaintiff failed to describe how the requested information would be relevant to a claim or defense.)

Like the parties in the above cases, Goktepe makes no attempt to explain how her disputed discovery requests are relevant to her Claims. Equally important, several of the above cited cases apply the prior, pre-2000 amendments, more relaxed "relevant to the subject matter" test, rather than the current, more narrow and stringent "relevant to any claim or defense" test, now mandated by the Rule 26(b)(1). Because Goktepe's memorandum in support of her motion to compel fails to explain the relevancy of any of her discovery requests she is pursuing, her motion to compel would have been denied under the more lenient "subject matter" test and must be denied under the "relevant to any claim or defense" test. *See Onwuka v. Fed. Express Corp.,* 178 F.R.D. 508 (D.Minn 1997) (using pre-2000 amendment rule and requiring at least some connection between

10

party's requested discovery and the claims in the case); *see also DIRECTV v. Trone,* 209 F.R.D. 455 (C.D. Cal. 2002) (applying post-2000 amendment rule to deny party's request for technical data and noting the request was not supported by specific reasons as to why party must have access to design information in order to prove defenses); *Mosier v. Am. Home Patient Inc.,* 203 F.R.D. 645 (N.D. Fla. 2001) (applying post-2000 amendment rule to limit discovery to claims or defenses in case).

a.     **Goktepe's Motion to Compel.**

In attempting to justify her third discovery request, Goktepe neglects to explain how the requested documents are relevant to the Claims, arguing instead and incorrectly that she was entitled to the information because "[d]efendant neither responded nor objected to parts of the third discovery request."[11]   Likewise, Goktepe fails to explain how her May 2003 requests are relevant to the Claims, instead incorrectly claiming that "it is defendant's burden to substantiate the objections [to the discovery requests]."[12] Because Goktepe's argument ignores clear post-2000 amendment law to the contrary, it must be denied. *See DIRECTV,* 209 F.R.D. at 459.

The closest Goktepe comes to articulating how her discovery requests are relevant to the Claims occurs when she argues that her April 2004 interrogatories are relevant because they request "third party documents that show whether defendant engaged in acts, practices, or courses of business which constitute or result in the commission of a deception on its customers, plaintiff, or the consumer reporting agencies....."[13]  However,

---

[11]      See Goktepe's Memorandum in support of her Motion to Compel at p. 4.  Defendant responds to Goktepe's claim that he failed to answer the requests at pp. 13-14 of this memorandum.
[12]      Id. at p. 8.
[13]      See Goktepe's Memorandum in support of her Motion to Compel at p. 9.

as Defendant explained in his objection to Goktepe's motion to compel, CROA does not allow a plaintiff to seek relief based on "Defendant's engaging in acts, practices or courses of business which constitute or result in the commission of a deception on its *customers.*"[14] Consequently, Goktepe's discovery requests fail to meet Rule 26(b)(1)'s post-2000 amendment strict and narrow relevancy requirement.

Lastly, Goktepe argues that her July 2004 discovery request, which asks for the "identity of Connecticut clients" should be answered because "[t]he best way to tell whether what happened to plaintiff is part of a business practice...is to present witnesses." Because under the 2nd Amended Complaint, Defendant can only be liable for general or punitive damages for his conduct against Goktepe alone, this request also fails the post-2000 amendment relevancy test. *Continental Trend Resources, Inc. v. OXY USA, Inc.,* 101 F.3d 634, 639 (10th Cir. 1996) (in measuring punitive damages it is harm to the Plaintiff that is evaluated, not to the public generally or others before the court).

## POINT III:   GOKTEPE'S DISCOVERY REQUESTS SHOULD BE LIMITED TO MATTERS ARISING BEFORE SHE FILED THE LAWSUIT

Goktepe's discovery requests are impermissible for another reason; many of the requests ask for information or documents that were created after Goktepe filed her lawsuit. Because discovery should be limited to information created before the lawsuit arose, Goktepe's requests must be restricted in time to before she filed the lawsuit.

For example, in *Devex Corp. v. General Motors Corp.,* 275 F.Supp. 310 (D. Del. 1967), the federal district court ruled that the scope of interrogatories directed to a defendant in a patent infringement case would be confined to the period before plaintiff

---

[14]    See Defendant's memorandum in response to Plaintiff's motion to compel at p.3,

filed the lawsuit. The Court based its decision on the fact that plaintiff failed to articulate how discovery of facts after the commencement of the lawsuit were relevant to the case. *See also Singer Mfg. Co. v. Brother Intern. Corp.,* 191 F.Supp. 322 (D.C.N.Y. 1960) (defendant not required to furnish information requested in interrogatories extending beyond the date the counterclaim was filed); *Massachusetts Bonding & Ins. Co. v. Harrisburg Trust Co.,* 2 F.R.D. 197 (D. Pa. 1941) (defendant bank not required to answer interrogatories requesting information covering period after plaintiff filed lawsuit).

As the parties in the cases cited above unsuccessfully attempted to do, Goktepe requests information and documents created after she filed her lawsuit against Defendant. Goktepe filed her suit on January 13, 2003. Nevertheless the requests in Goktepe's Fifth Document request, ask for:

1.    All documents you signed during 2004 concerning or arising out of Lexington Law Firm, including any and all assignments, agreements with or signed by Jayson Orvis, John Heath, or Lexington Law.

2.    All documents you received during 2004 concerning or arising out of Lexington Law Firm, including any and all checks, payment instruments, assignments, and agreements signed by Jayson Orvis, John Heath, or Lexington Law.

Besides the objection that these requests are not relevant to the Claims, these requests must also be denied because they concern matters which occurred a full year *after* the lawsuit was filed.   For example, the requests ask for documents defendant signed in 2004 as well as documents which defendant received in 2004.   Because these document requests ask for information and documents created over a year after Goktepe filed her January 13, 2003 lawsuit, the documents logically cannot possibly be related to the Claims and the requests must be denied.   *Singer,* 191 F.Supp. at 322. Further, the

13

above requests must be denied because Goktepe is not entitled to discover documents regarding the alleged sale of Defendant's business, which has no relation to this lawsuit. *See Katz v. Batavia Marine & Sporting Supplies Inc.,* 984 F.2d 422 (C.A. Fed.. 1993) (holding that plaintiff not entitled to documents relating to the sale of company assets and ownership or sale of patents in patent infringement case).

**POINT IV: GOKTEPE CANNOT USE THE DISCOVERY PROCESS IN ORDER TO GATHER INFORMATION FOR AN UNRELATED LAWSUIT OR TO BOOTSTRAP GOKTEPE'S INDIVIDUAL CLAIMS UP TO A CLASS ACTION LAW SUIT**

As Defendant previously made the Court aware, plaintiff's attorney, Ms. Joanne Faulkner, appears to be working with Daniel Edelman, Esq., counsel for different plaintiffs in two other cases filed against Defendant, *Iosello v. Lawrence,* Case No. 03 C 0987, filed in the Federal District Court in Chicago, and *D'Agostino v. Lawrence,* Case No. 04 C 03660, also filed in the Federal District Court in Chicago. This allegation became more apparent when Defendant's opposition to Goktepe's motion to compel alleged that many of Ms. Faulkner's discovery requests were aimed at gathering information in the Chicago cases, and Ms. Faulkner did not, on the record, rebut these allegations. In fact, her reply memorandum remained pointedly silent regarding this issue. Clearly, Ms. Faulkner is seeking discovery in Goktepe to further Mr. Edelman's lawsuits in Chicago.

The U.S. Supreme Court has unambiguously condemned the practice of gathering discovery information in one case for use in other proceedings., *See Oppenheimer Fund, Inc. v. Sanders,* 437 U.S. 340, 352 (1978) (holding that "when the purpose of a discovery request is to gather information for use in proceedings other than the pending suit,

14

discovery is properly denied"); *see also Mississippi Power Co. v. Peabody Coal Co.*, 69 F.R.D. 558 (S.D. Miss. 1976) (court must deny discovery requests aimed at getting information for use in another lawsuit); *Econo-Car Intern., Inc. v. Antilles Car Rentals, Inc.*, 61 F.R.D. 8 (V.I. 1973) *reversed on other grounds* (same).

In seeking the names and contact information of Defendant's Connecticut clients, Goktepe seeks information for use in transforming this case into a class action law suit, or generating another case to serve as a class action lawsuit. Accordingly, Ms. Faulkner's motion to compel should be denied.

If the Court does not deny the discovery requests as Defendant asks, it should insure that Goktepe's attorney does not use such information to continue her practice of providing information in this case to Mr. Edelman, the plaintiff's attorney in the Iosello and D'Agostino cases against Defendant in Chicago. That is, the Court should order Goktepe and her counsel not to disclose any of this information to Mr. Edelman or to discuss with any of the clients the idea of contacting Mr. Edelman or sharing any information with him.

**POINT V:    GOKTEPE'S DISCOVERY REQUESTS ASKING FOR AGREEMENTS WITH VENDORS, VENDOR PAYMENT INFORMATION AND CLIENT CONTACT INFORMATION ARE IRRELEVANT AND OVERBROAD**

Plaintiffs Fourth Discovery Request, dated September 17, 2004, requests documents ranging from 1099 tax forms issued to outside service providers, to invoices received from outside service providers, records showing income received from outside service providers, payments made to outside service providers, Lexington's income and expenses for September and October 2002, any agreements or assignments involving defendant, Jayson Orvis, Lexington Law, and Jamis Johnson, all agreements with

15

Consumer Credit Solutions, agreements with any entities owned or managed by Jayson Orvis or Deon Steckling, agreements with outside service providers, defendant's sources of income, agreements to perform data entry for other companies, and agreements to sell entered data to other company.

It is important to keep in mind that Goktepe made no effort to explain how any of the above requests relates to the Claims. As a result of the irrelevant and overly broad nature of the requests, defendant objected on relevancy grounds. Defendant reiterated his objection in his response to Goktepe's motion to compel, explaining that "the requested documents have no conceivable bearing on Plaintiff's claims that the legal services Defendant provided to Plaintiff for less than two months in late 2002 violated CROA, CCCA or CUTPA."[15] Defendant went on to list several other objections to the requests including the excessive breadth of the requests, the fact that the requests sought irrelevant general business activities, and that Goktepe was seeking this information to help Edelman in the Chicago lawsuits against Defendant.

Despite these objections, the Special Master's Recommended Order ruled that "[t]he original objection by the defendant was based on confidentiality: "Confidentiality has been resolved by the Court's Protective Order. "Consequently, the Defendant is ordered to produce this material...."[16] Because the Order mistakenly stated that Defendant's only objection to Goktepe's Fourth Production Request was based on confidentiality, defendant requests that the Court review all of Defendant's objections

---

[15] See Defendant's memorandum in response to Plaintiff's motion to compel at pp.26-27.
[16] See Special Master's Discovery Report and Recommended Order at p.2, ¶D.

and apply the strict and narrow post-2000 amended rule relevancy standards to Goktepe's requests.

**May 2003 Production Requests**

Defendant next requests that the Court reject the Special Master's Recommended Order regarding Plaintiff's May 2003 production request Nos. 10, 11, 12, 13, Plaintiff's April 2004 interrogatory No. 3 and production request No. 1, and Plaintiff's July 2004 discovery requests.   In these requests, Goktepe asks for the following:

No. 10.  All agreements with affiliates who have signed up for the Affiliate program.

No. 11.  All form letters and manuals used by credit repair staff for entry of data and information from consumer clients.

No. 12. All form letters and manuals used by credit repair staff for communication with credit bureaus.

No. 13.  All forms and manuals used by credit repair staff for entering and maintaining the statistical information as to success rates which appear on your website.

**April 2004 Interrogatory and Request**

No.  3.  Identify  each  licensor  of  intellectual  property  and  technology  to defendant/Lexington Law concerning its credit repair operations, and describe what products, personnel or services each provides.

No. 1.  All agreements pursuant to which defendant contends that he is bound to the confidentiality of any product or service he licenses concerning the credit repair business.

**July 2004 Discovery Requests**

No. 1.  Provide the name and address of all your Connecticut clients during the last quarter of 2002.

No. 2.  Provide the number of disputes which did not result in removal of a disputed item from a credit report during 2003.

No. 5.  Set forth the average number of letters to credit bureaus sent by Lexington weekly during the last quarter of 2002, or any recent quarter.

Production 2.  Copies of any 2002 or 2003 quarterly statistical report as to numbers of credit bureaus disputes processed by defendant.

These requests also ask for information that, under the post-2000 amendments is irrelevant to the Claims.  The documents' irrelevant nature is highlighted by Goktepe's silence on the record as to how these requests relate to the Claims, as well as her silence on the record in the face of Defendant's detailed objections, with case citations, to these requests.  Because the above documents cannot possibly help Goktepe prove her Claims, the requests must be denied.  *See McCoo v. Denny's Inc.,* 192 F.R.D. 675 (D. Kan 2000) (plaintiff claiming that restaurant chain discriminated against him would be prohibited from obtaining production of all policies, guidelines, training materials, employee hand books and supervisor handbooks.  Discovery would be related to customer service and racial discrimination involving only the restaurant at which the incident in suit took place); *see also Detweiler Bros. Inc., v. John Graham & Co.,* 412 F.Supp. 416 (D. Wash. 1976) (defendant's request was overbroad where it extended to all plaintiff's work on a construction project.  Discovery would be limited to materials related to installation of piping at issue); *United Cigar - Whelan Stores Corp. v. Philip Morris, Inc.,* 21 F.R.D. 107 (D.C.N.Y. 1957); (information about the total amount of sales by defendant and the amounts expended by defendant in various forms was completely irrelevant in an action complaining of price discrimination).

18

Additionally, Goktepe's claims for the names and addresses of Defendant's Connecticut clients may invade those clients' privacy rights as well as their attorney-client confidentiality.   Defendant asks the Court to carefully consider whether this invasion of those clients' rights is justified by Goktepe's status as an individual plaintiff seeking redress for her alleged private individual commercial harm.   Further, to insure that Goktepe's attorney does not use such information to continue her practice of providing information in this case to Mr. Edelman, the plaintiff's attorney in the Iosello and D'Agostino cases against Defendant in Chicago, the Court should order Goktepe and her counsel not to disclose any of this information to Mr. Edelman or to discuss with any of the clients the idea of contacting Mr. Edelman or sharing any information with him.

**Plaintiff's Third Discovery Request – Dated July 19, 2004**

Lastly, request No. 3 asked defendant to answer the following:   *Identify any person or entity (affiliate program described at LLF 0236 ffi) to whom payment was made due to Plaintiff's entry into a retainer after visiting a referring website.*

The Special Master's recommended Order incorrectly stated that "[a]t the present time, there is no objection or answer on file to this request [No. 3].   "It is hereby ordered that the request be answered on or before June 30, 2005."   In fact, defendant did object to Request No. 3 in his Response to Plaintiff's Motion to Compel, which he filed with the Court on January 24, 2005.   In his objection, defendant stated:

a.   <u>Response</u>: Objection IV: Irrelevant General Business Activity.  Plaintiff knows what advertising she saw at a "referring website," if any, and does not need the requested information for that purpose.  This request for the identity of anyone, involved in Lexington's advertising program that may have received a payment, if any, based on Plaintiff signing a retainer, if any, seeks irrelevant general business activity of Defendant and therefore has no conceivable bearing on Plaintiff's claims that the legal services

19

Defendant provided to Plaintiff for less than two months, thirteen months before the time period for the documents requested, violated CROA, CCCA or CUTPA. Further, independent of seeking irrelevant general business activity, this request has *no conceivable bearing on Plaintiff's claims that the legal services Defendant provided to Plaintiff for less than two months, thirteen months before the time period for the documents requested, violated CROA, CCCA or CUTPA.*[17]

Emphasis added.

Because Defendant properly objected to Request No. 3, Defendant requests that the Court reject the Order and rule that request No. 3 lacks relevancy to the lawsuit.

## POINT VI:  GOKTEPE IS NOT PERMITTED TO TAKE A 30(b)(6) DEPOSITION OF A SOLE PROPRIETORSHIP

Lastly, Defendant requests that the Court reject the Order's ruling which grants Plaintiff the right to take a Rule 30(b)(6) deposition of Defendant.  Rule 30(b)(6) only permits a party in a lawsuit to depose the corporate representative of "a public or private corporation or a partnership or association or governmental agency."  Judge Kravitz held in his Order dated January 27, 2005, denying Goktepe's motion to strike Defendant's pro se status based on the argument that Defendant was a corporation, that "Lexington Law Firm is a sole proprietorship owned by Defendant, Victor Lawrence."[18] *See also United States v. Fox,* 721 F.2d 32, 36 (2nd Cir. 1983 ("a sole proprietorship has no legal existence apart from its owner.")  Accordingly, the Court has already ruled that Defendant is a sole proprietorship and not a corporation and therefore Goktepe is not entitled to a Rule 30(b)(6) deposition of Defendant.  Consequently, to allow Goktepe to take such a deposition of Defendant would be akin to allowing Goktepe to take a 30(b)(6) deposition

---

[17]    See Defendant's Response to Plaintiff's Motion to Compel at p. 1.
[18] See Judge Kravitz's January 27, 2005 order at p.2.

of Victor Lawrence as an individual. Because Rule 30(b)(6) does not permit this type of deposition, Goktepe's 30(b)(6) deposition request must be denied.

## CONCLUSION

Based on the foregoing, Defendant respectfully requests that the Court reject the Order and deny Goktepe's motion to compel or alternatively, remand the Order for the addition of the statement of findings of fact and conclusions of law required by the Court's Order of Reference.

Victor Lawrence, Pro Se
P.O. Box 1413
Bountiful, Utah 84011
(telephone) 801-244-2515

21

## CERTIFICATE OF SERVICE

The undersigned herby certifies that a true and correct copy of the foregoing was mailed, postage prepaid, on the ___19th___ day of ___July___, 20_05_, to the following:

Joanne S. Faulkner
123 Avon Street
New Haven, CT 06511

Victor Lawrence

22